**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CELLULAR COMMUNICATIONS | § | |
| EQUIPMENT LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:14-cv-251 |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| APPLE INC., | § | |
| AT&T INC., | § | |
| AT&T MOBILITY LLC, | § | |
| VERIZON COMMUNICATIONS, INC., | § | |
| CELLCO PARTNERSHIP D/B/A VERIZON | § | |
| WIRELESS, SPRINT CORPORATION, | § | |
| SPRINT SOLUTIONS, INC., | § | |
| SPRINT SPECTRUM L.P., | § | |
| BOOST MOBILE, LLC, | § | |
| T-MOBILE USA, INC., and | § | |
| T-MOBILE US, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cellular Communications Equipment LLC files this First Amended Complaint against Apple Inc.; AT&T Inc.; AT&T Mobility LLC; Verizon Communications, Inc.; Cellco Partnership d/b/a Verizon Wireless; Sprint Corporation; Sprint Solutions, Inc.; Sprint Spectrum L.P.; Boost Mobile, LLC; T-Mobile USA, Inc.; and T-Mobile US, Inc. (collectively, the "Defendants") for infringement of U.S. Patent No. 6,377,804 ("the '804 patent"), U.S. Patent No. 6,819,923 ("the '9923 patent"), U.S. Patent No. 7,215,962 ("the '962 patent"), U.S. Patent No. 7,941,174 ("the '174 patent"), and U.S. Patent No. 8,055,820 ("the '820 patent").

1

## THE PARTIES

1.      Cellular Communications Equipment LLC ("CCE") is a Texas limited liability company with its principal place of business in Plano, Texas.

2.      Apple Inc. ("Apple") is a California corporation with its principal place of business in Cupertino, California.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

3.      AT&T Inc. is a Delaware corporation with its principal place of business in Dallas, Texas.  This Defendant may be served with process through its agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. This Defendant does business in the State of Texas and in the Eastern District of Texas.

4.      AT&T Mobility LLC (with AT&T Inc., "AT&T") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.  This Defendant may be served with process through its agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

5.      Verizon Communications, Inc. is a Delaware corporation with its principal place of business in New York, New York.  This Defendant may be served with process through its agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

6.      Cellco Partnership d/b/a Verizon Wireless (with Verizon Communications Inc., "Verizon") is a Delaware general partnership with its principal place of business in Basking Ridge, New Jersey.  This Defendant may be served with process through its agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington,

Delaware 19801.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

7.      Sprint Corporation is a Delaware corporation with its principal place of business in Overland Park, Kansas.  This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. This Defendant does business in the State of Texas and in the Eastern District of Texas.

8.      Sprint Solutions, Inc. is a Delaware corporation with its principal place of business in Reston, Virginia.  This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. This Defendant does business in the State of Texas and in the Eastern District of Texas.

9.      Sprint Spectrum L.P. is a Delaware limited partnership with its principal place of business in Overland Park, Kansas.  This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

10.     Boost Mobile, LLC (with Sprint Corporation, Sprint Solutions, Inc., and Sprint Spectrum L.P., "Sprint") is a Delaware limited liability company with its principal place of business in Irvine, California.  This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. This Defendant does business in the State of Texas and in the Eastern District of Texas.

11.     T-Mobile USA, Inc. is a Delaware corporation with a principal place of business in Bellevue, Washington.  This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. This Defendant does business in the State of Texas and in the Eastern District of Texas.

12.     T-Mobile US, Inc. (with T-Mobile USA, Inc., "T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington.  This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

## JURISDICTION AND VENUE

13.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 1367.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).  On information and belief, each Defendant is deemed to reside in this judicial district, has committed acts of infringement in this judicial district, has purposely transacted business in this judicial district, and/or has regular and established places of business in this judicial district.

16.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial  and pervasive business in this State and judicial district, including: (A) at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

17.     More specifically, Defendants' substantial contacts with the forum include, but are not limited to: (i) the manufacture, marketing, sale, distribution, and use of Apple mobile devices; (ii) the marketing and sale of services for mobile device communications; (iii) the

ownership and/or operation of stores where Apple mobile devices are sold and serviced; and/or (iv) the provision of technical and customer support for Apple mobile devices and attendant mobile device communications services.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 6,377,804)

18.     CCE incorporates paragraphs 1 through 17 herein by reference.

19.     CCE is the assignee of the '804 patent, entitled "Mobile Communication Systems," with ownership of all substantial rights in the '804 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '804 patent is attached as Exhibit A.

20.     The '804 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

21.     Defendants Apple, AT&T, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '804 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 3, 4, 5, and 7, without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or use of Apple mobile devices, including, for example: the iPhone 5, the iPhone 5c, and the iPhone 5s, compatible with the AT&T cellular network and sold or otherwise distributed by or through Apple and/or AT&T (the "'804 AT&T Mobile Devices"); and the iPhone 5c and the iPhone 5s, compatible with the T-Mobile cellular network and sold or otherwise distributed by or through Apple and/or T-Mobile (the "'804 T-Mobile Mobile Devices").  These devices are collectively referred to as the "'804 Apple Devices."

5

22.     Defendants directly infringe the '804 patent by making, using, selling, offering for sale, and/or importing the '804 Apple Devices to practice the claimed methods.  Defendants are thereby liable for direct infringement.   Additionally, Defendants are liable for indirect infringement of the '804 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the '804 Apple Devices to practice the claimed methods.

23.     Each Defendant has had knowledge of the '804 patent, at least as early as service of the Original Complaint filed and served in *Cellular Comms. Equip. LLC v. Apple Inc.,* No. 6:14-cv-31 (E.D. Tex. filed Jan. 17, 2013).

24.     Despite having knowledge of the '804 patent, Defendants named in this Count have specifically intended and continue to specifically intend for persons who acquire and use the '804 Apple Devices, including Defendants' customers, to use such devices in a manner that infringes the '804 patent, including at least claims 1, 3, 4, 5, and 7.  This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the '804 Apple Devices.

25.     In particular, despite having knowledge of the '804 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available via http://support.apple.com/manuals/, for instance) that specifically teach the customers and other end users to use the '804 Apple Devices in an infringing manner.  By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

26.     Additionally, Defendants named in this Count know, and have known, that the '804 Apple Devices include proprietary hardware components and software instructions that

work in concert to perform specific, intended functions.   Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '804 patent and are not staple articles of commerce suitable for substantial non-infringing use.

27.     On information and belief, Apple and AT&T test, make, use, offer for sale, sell, and/or import the '804 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

28.     On information and belief, Apple and T-Mobile test, make, use, offer for sale, sell, and/or import the '804 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

29.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count.  Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

(INFRINGEMENT OF U.S. PATENT NO. 6,819,923)

30.     CCE incorporates paragraphs 1 through 17 herein by reference.

31.     CCE is the assignee of the '9923 patent, entitled "Method for Communication of Neighbor Cell Information," with ownership of all substantial rights in the '9923 patent,

7

including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '9923 patent is attached as Exhibit B.

32.    The '9923 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

33.    Defendants Apple, AT&T, and T-Mobile have and continue to directly infringe one or more claims of the '9923 patent in this judicial district and elsewhere in Texas and the United States, including at least claim 11, without the consent of CCE, by or through their making, having made, offering for sale, selling, importing, and/or use of Apple mobile devices, including, for example:  the iPhone 4, the iPhone 4s, the iPhone 5, the iPhone 5c, the iPhone 5s, the iPad 2, the iPad (third generation) (a/k/a "the new iPad" or "iPad 3"), the iPad (fourth generation) (a/k/a "the iPad with Retina display" or "iPad 4"), the iPad mini, the iPad mini with Retina display, and the iPad Air, compatible with the AT&T cellular network and sold or otherwise distributed by or through Apple and/or AT&T (the "'9923 AT&T Mobile Devices"); and the iPhone 4, the iPhone 5c, the iPhone 5s, the iPad mini with Retina display, and the iPad Air, compatible with the T-Mobile cellular network and sold or otherwise distributed by or through T-Mobile (the "'9923 T-Mobile Mobile Devices").   These devices are collectively referred to as the "'9923 Apple Devices."

34.    Defendants directly infringe the apparatus claims of the '9923 patent by making, offering to sell, selling, and/or importing the '9923 Apple Devices.  Defendants are thereby liable for direct infringement.

35.    On information and belief, each Defendant is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization.  3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the standard essential patents at issue here.  The '9923 patent is one such patent,

and Defendants have known of the '9923 patent at least as early as April 2010, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).

36.     On information and belief, despite having knowledge of the '9923 patent and knowledge that they are directly infringing one or more claims of the '9923 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '9923 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

37.     On information and belief, Apple and AT&T test, make, use, offer for sale, sell, and/or import '9923 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

38.     On information and belief, Apple and T-Mobile test, make, use, offer for sale, sell, and/or import '9923 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

39.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count.  Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

(INFRINGEMENT OF U.S. PATENT NO. 7,215,962)

40.     CCE incorporates paragraphs 1 through 17 herein by reference.

41.     CCE is the assignee of the '962 patent, entitled "Method for an Intersystem Connection Handover," with ownership of all substantial rights in the '962 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '962 patent is attached as Exhibit C.

42.     The '962 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

43.     Defendants Apple, AT&T, Verizon, Sprint, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '962 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 2, 11, 12, and 13, without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or use of Apple mobile devices, including, for example: the iPhone 4, the iPhone 4s, the iPhone 5, the iPhone 5c, the iPhone 5s, the iPad 2, the iPad (third generation) (a/k/a "the new iPad" or "iPad 3"), the iPad (fourth generation) (a/k/a "the iPad with Retina display" or "iPad 4"),  the iPad mini, the iPad mini with Retina display, and the iPad Air, compatible with the AT&T cellular network and sold or otherwise distributed by or through Apple and/or AT&T (the "'962 AT&T Mobile Devices"); the iPhone 5c, the iPhone 5s, the iPad (third generation) (a/k/a "the new iPad" or "iPad 3"), the iPad (fourth generation) (a/k/a "the iPad with Retina display" or "iPad 4"), the iPad mini, the iPad mini with Retina display, and the iPad Air, compatible with the Verizon cellular network and sold or otherwise distributed by or through Apple and/or Verizon (the "'962 Verizon Mobile Devices"); the iPhone 5, the iPhone 5c, the iPhone 5s, the iPad

10

(fourth generation) (a/k/a "the iPad with Retina display" or "iPad 4"), the iPad mini, the iPad mini with Retina display, and the iPad Air, compatible with the Sprint cellular network and sold or otherwise distributed by or through Apple and/or Sprint (the "'962 Sprint Mobile Devices"); and the iPhone 4, the iPhone 5c, the iPhone 5s, the iPad mini with Retina display, and the iPad Air, compatible with the T-Mobile cellular network and sold or otherwise distributed by or through Apple and/or T-Mobile (the "'962 T-Mobile Mobile Devices").   These devices are collectively referred to as the "'962 Apple Devices."

44.     Defendants directly infringe the apparatus claims of the '962 patent by making, offering to sell, selling, and/or importing the '962 Apple Devices.   Defendants also directly infringe the '962 patent by making, using, selling, offering for sale, and/or importing the '962 Apple Devices to practice the claimed methods.   Defendants are thereby liable for direct infringement.

45.     Additionally, Defendants are liable for indirect infringement of the '962 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the '962 Apple Devices to practice the claimed methods.

46.     Each Defendant is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization.   3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the standard essential patents at issue here.   The '962 patent is one such patent, and Defendants have known of the '962 patent at least as early as December 2010, when it was disclosed to 3GPP via ETSI.

47.     Despite having knowledge of the '962 patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use such devices, including Defendants' customers, to use such devices in a manner that infringes the '962 patent, including

at least claims 1, 2, 11, 12, and 13.  This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the '962 Apple Devices.

48.    In particular, despite having knowledge of the '962 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available via http://support.apple.com/manuals/, for instance) that specifically teach the customers and other end users to use the '962 Apple Devices in an infringing manner.  By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

49.    Additionally, Defendants named in this Count know, and have known, that the '962 Apple Devices include proprietary hardware components and software instructions that work in concert to perform specific, intended functions.  Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '962 patent and are not staple articles of commerce suitable for substantial non-infringing use.

50.    On information and belief, despite having knowledge of the '962 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '962 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '962 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

51.    On information and belief, Apple and AT&T test, make, use, offer for sale, sell, and/or import the '962 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such

devices.   Accordingly, Apple and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

52.     On information and belief, Apple and Verizon test, make, use, offer for sale, sell, and/or import the '962 Verizon Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and Verizon are jointly, severally, or alternatively liable for infringements described in this Count.

53.     On information and belief, Apple and Sprint test, make, use, offer for sale, sell, and/or import the '962 Sprint Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

54.     On information and belief, Apple and T-Mobile test, make, use, offer for sale, sell, and/or import the '962 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

55.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count.  Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 7,941,174)

56.     CCE incorporates paragraphs 1 through 17 herein by reference.

57.     CCE is the assignee of the '174 patent, entitled "Method for Multicode Transmission by a Subscriber Station," with ownership of all substantial rights in the '174 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '174 patent is attached as Exhibit D.

58.     The '174 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

59.     Defendants Apple, AT&T, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '174 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 6, 9, 14, 18, and 19, without the consent of CCE, by or through their making, having made, offering for sale, selling, importing, and/or use of Apple mobile devices, including, for example:  the iPhone 4, the iPhone 4s, the iPhone 5, the iPhone 5c, the iPhone 5s, the iPad 2, the iPad (third generation) (a/k/a "the new iPad" or "iPad 3"), the iPad (fourth generation) (a/k/a "the iPad with Retina display" or "iPad 4"),  the iPad mini, the iPad mini with Retina display, and the iPad Air, compatible with the AT&T cellular network and sold or otherwise distributed by or through Apple and/or AT&T (the "'174 AT&T Mobile Devices"); and the iPhone 4, the iPhone 5c, the iPhone 5s, the iPad mini with Retina display, and the iPad Air, compatible with the T-Mobile cellular network and sold or otherwise distributed by or through Apple and/or T-Mobile (the "'174 T-Mobile Mobile Devices").  These devices are collectively referred to as the "'174 Apple Devices."

60.     Defendants directly infringe the apparatus claims of the '174 patent by making, offering to sell, selling, and/or importing the '174 Apple Devices.  Defendants also directly infringe the '174 patent by making, using, selling, offering for sale, and/or importing the '174

Apple Devices to practice the claimed methods.  Defendants are thereby liable for direct infringement.

61.    Additionally, Defendants are liable for indirect infringement of the '174 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the '174 Apple Devices to practice the claimed methods.

62.    Each Defendant is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization.  3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the standard essential patents at issue here.  The '174 patent is one such patent, and Defendants have known of the '174 patent at least as early as August 2010, when it was disclosed to 3GPP via the European Telecommunication Standards Institute ("ETSI," an organizational member of 3GPP).

63.    Despite having knowledge of the '174 patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use such devices, including Defendants' customers, to use such devices in a manner that infringes the '174 patent, including at least claims 1, 6, 9, 14, 18, and 19.  This is evident when Defendants encourage and instruct customers and other end users in the user and operation of the '174 Apple Devices.

64.    In particular, despite having knowledge of the '174 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available via http://support.apple.com/manuals/, for instance) that specifically teach the customers and other end users to use the '174 Apple Devices in an infringing manner.  By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

65.     Additionally, Defendants named in this Count know, and have known, that the '174 Apple Devices include proprietary hardware components and software instructions that work in concert to perform specific, intended functions.   Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '174 patent and are not staple articles of commerce suitable for substantial non-infringing use.

66.     On information and belief, despite having knowledge of the '174 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '174 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '174 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

67.     On information and belief, Apple and AT&T test, make, use, offer for sale, sell, and/or import the '174 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

68.     On information and belief, Apple and T-Mobile test, make, use, offer for sale, sell, and/or import the '174 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.   Accordingly, Apple and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

69.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count.   Defendants are, thus, liable to CCE in an amount that adequately compensates CCE

for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

<b><u>COUNT V</u></b>

(INFRINGEMENT OF U.S. PATENT NO. 8,055,820)

70.     CCE incorporates paragraphs 1 through 17 herein by reference.

71.     CCE is the assignee of the '820 patent, entitled "Apparatus, System, and Method for Designating a Buffer Status Reporting Format Based on Detected Pre-Selected Buffer Conditions," with ownership of all substantial rights in the '820 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '820 patent is attached as Exhibit E.

72.     The '820 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

73.     Defendants Apple, AT&T, Verizon, Sprint, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '820 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 4, 6, 7, 8, 9, 10, 12, 15, 17, 18, 19, 20, and 21, without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or use of Apple mobile devices, including, for example: the iPhone 5, the iPhone 5c, the iPhone 5s, the iPad (third generation) (a/k/a "the new iPad" or "iPad 3"), the iPad (fourth generation) (a/k/a "the iPad with Retina display" or "iPad 4"), the iPad mini, the iPad mini with Retina display, and the iPad Air, compatible with the AT&T cellular network and sold or otherwise distributed by or through Apple and/or AT&T (the "'820 AT&T Mobile Devices"); the iPhone 5c, the iPhone 5s, the iPad (third generation) (a/k/a "the new iPad" or "iPad 3"), the iPad (third generation) (a/k/a "the new iPad" or "iPad 3"), the iPad (fourth generation) (a/k/a "the

17

iPad with Retina display" or "iPad 4"), the iPad mini, the iPad mini with Retina display, and the iPad Air, compatible with the Verizon cellular network and sold or otherwise distributed by or through Apple and/or Verizon (the "'820 Verizon Mobile Devices"); the iPhone 5, the iPhone 5c, the iPhone 5s, the iPad with Retina display, the iPad mini, the iPad mini with Retina display, and the iPad Air, compatible with the Sprint cellular network and sold or otherwise distributed by or through Apple and/or Sprint (the "'820 Sprint Mobile Devices"); and the iPhone 5c, the iPhone 5s, the iPad mini with Retina display, and the iPad Air, compatible with the T-Mobile cellular network and sold or otherwise distributed by or through Apple and/or T-Mobile (the "'820 T-Mobile Mobile Devices").   These devices are collectively referred to as the "'820 Apple Devices."

74.     Defendants directly infringe the apparatus claims of the '820 patent by making, offering to sell, selling, and/or importing the '820 Apple Devices.  Defendants also directly infringe the '820 patent by making, using, selling, offering for sale, and/or importing the '820 Apple Devices to practice the claimed methods.  Defendants are thereby liable for direct infringement.

75.     Additionally, Defendants are liable for indirect infringement of the '820 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the '820 Apple Devices to practice the claimed methods.

76.     Each Defendant is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization.  3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the standard essential patents at issue here.  The '820 patent is one such patent, and Defendants have known of the '820 patent at least as early as June 2009, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).

77.     Despite having knowledge of the '820 patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use such devices, including Defendants' customers, to use such devices in a manner that infringes the '820 patent, including at least claims 1, 4, 6, 7, 8, 9, 10, 12, 15, 17, 18, 19, 20, and 21.  This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the '820 Apple Devices.

78.     In particular, despite having knowledge of the '820 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available via http://support.apple.com/manuals/, for instance) that specifically teach the customers and other end users to use the '820 Apple Devices in an infringing manner.  By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

79.     Additionally, Defendants named in this Count know, and have known, that the '820 Apple Devices include proprietary hardware components and software instructions that work in concert to perform specific, intended functions.  Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '820 patent and are not staple articles of commerce suitable for substantial non-infringing use.

80.     On information and belief, despite having knowledge of the '820 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '820 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing

19

activities relative to the '820 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

81.    On information and belief, Apple and AT&T test, make, use, offer for sale, sell, and/or import the '820 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.    Accordingly, Apple and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

82.    On information and belief, Apple and Verizon test, make, use, offer for sale, sell, and/or import the '820 Verizon Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.    Accordingly, Apple and Verizon are jointly, severally, or alternatively liable for infringements described in this Count.

83.    On information and belief, Apple and Sprint test, make, use, offer for sale, sell, and/or import the '820 Sprint Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.    Accordingly, Apple and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

84.    On information and belief, Apple and T-Mobile test, make, use, offer for sale, sell, and/or import the '820 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices.    Accordingly, Apple and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

85.    CCE has been damaged as a result of Defendants' infringing conduct described in this Count.  Defendants are, thus, liable to CCE in an amount that adequately compensates it for

their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JOINDER OF PARTIES

86.     CCE incorporates paragraphs 1 through 85 herein by reference.

87.     On information and belief, AT&T, Verizon, Sprint, and T-Mobile have each purchased or otherwise acquired from Apple certain mobile devices for sale, resale, and/or distribution to their customers (and other end users) that are the subject of Counts I through V (or some subset thereof).  Thus, for these Counts, the right to relief against AT&T, Verizon, Sprint, and/or T-Mobile is asserted jointly and severally with Apple.

88.     The alleged infringements set forth in Counts I through V arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the testing, making, using, offering for sale, selling, and/or importing of the Apple mobile devices made the subject of Counts I through V.

89.     Questions of fact common to all Defendants will arise in this action including, for example, infringement by, or through use of, Apple mobile devices.

90.     Thus, joinder of Apple, AT&T, Verizon, Sprint, and T-Mobile is proper in this litigation pursuant to 35 U.S.C. § 299(a).

## JURY DEMAND

CCE hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

CCE requests that the Court find in its favor and against Defendants, and that the Court

grant CCE the following relief:

a.   Judgment that one or more claims of the '804, '9923, '962, '174, and '820 patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or by others whose infringements have been induced by Defendants and/or by others to whose infringements Defendants have contributed;

b.   Judgment that Defendants account for and pay to CCE all damages to and costs incurred by CCE because of Defendants' infringing activities and other conduct complained of herein;

c.   Judgment that Defendants account for and pay to CCE a reasonable, ongoing, post-judgment royalty because of Defendants' infringing activities and other conduct complained of herein;

d.   That Defendants' infringements relative to the '9923, '962, '174, and/or '820 patents be found willful from the time that Defendants became aware of the infringing nature of their products, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   That CCE be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

f.   That CCE be granted such other and further relief as the Court may deem just and proper under the circumstances.

**Dated:  April 8, 2014**                    Respectfully submitted,

*Edward R. Nelson, III by permission T. John Ward, Jr.*
Edward R. Nelson, III
enelson@nbclaw.net
Texas State Bar No. 00797142
Brent N. Bumgardner
bbumgardner@nbclaw.net
Texas State Bar No. 00795272
Barry J. Bumgardner
barry@nbclaw.net
Texas State Bar No. 00793424
S. Brannon Latimer
blatimer@nbclaw.net
Texas State Bar No. 24060137
Thomas C. Cecil
tcecil@nbclaw.net
Texas State Bar No. 24069489
NELSON BUMGARDNER CASTO, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone:  (817) 377-9111
Fax:  (817) 377-3485

T. John Ward, Jr.
Texas State Bar No. 00794818
J. Wesley Hill
Texas State Bar No. 24032294
Claire Abernathy Henry
Texas State Bar No. 24053063
WARD & SMITH LAW FIRM
P.O. Box 1231
1127 Judson Rd. Ste. 220
Longview, Texas  75606-1231
(903) 757-6400
(903) 757-2323 (fax)
jw@jwfirm.com
wh@wsfirm.com
ch@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
CELLULAR COMMUNICATIONS
EQUIPMENT LLC**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this the 8th day of April, 2014.

/s/ T. John Ward, Jr.