**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | § § § § | |
| **Plaintiff,** | § § | **Case No. 6:13-cv-507** |
| **v.** | § § § | **CONSOLIDATED LEAD CASE** |
| **HTC CORPORATION, ET AL.,** | § § | |
| **Defendants.** | § § | |
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | § § § § | |
| **Plaintiff,** | § § | **Case No. 6:14-cv-251** |
| **v.** | § § | |
| **APPLE INC., ET AL.,** | § § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court are Defendants' Motions to Dismiss for Failure to State a Claim (Cause No. 6:13-cv-507, Docket Nos. 109, 110, 111, 112, 113, 114; Cause No. 6:14-cv-251, Docket No. 42), Defendant Carrier-Retailers' Motion to Sever and Stay (Docket No. 233),[1] and Defendant Apple's Motion to Stay, Sever, and Transfer Venue (Cause No. 6:14-cv-251, Docket No. 56). For the reasons set forth below, Defendants' Motions to Dismiss for Failure to State a Claim are

---

[1] Unless otherwise stated, all references to the docket are to the lead case, No. 6:13-cv-507.

each **GRANTED-IN-PART** and **DENIED-IN-PART**.  The Court **GRANTS** Plaintiff leave to amend its complaint within the next **14 days**.  Defendant Carrier-Retailers' Motion to Sever and Stay is **DENIED** and Defendant Apple's Motion to Stay, Sever, and Transfer Venue is **DENIED**.  Further, because the cases involving the NEC and Blackberry Defendants have been dismissed, *see* Docket Nos. 317, 352, the Motions to Dismiss for Failure to State a Claim (Docket Nos. 107, 116) associated with those cases are **DENIED AS MOOT**.

## BACKGROUND

Plaintiff alleges that Defendants, a group of seven mobile device manufacturers and multiple mobile network carriers, infringe five of Plaintiff's patents.[2]  The patents-in-suit were acquired from Nokia Siemens Networks and generally relate to mobile communications, such as the UMTS, GSM, and LTE wireless standards.

Plaintiff originally filed complaints against six of the mobile device manufacturers[3] and the mobile carriers[4] that operate networks on which the manufacturers' accused devices allegedly function (collectively, "Original Defendants") on June 25, 2013 and August 2, 2013. The cases were consolidated into this lead case for pretrial purposes, with the exception of

---

[2] Each of the following patents are presently asserted against one or more of the consolidated defendants: U.S. Patent No. 6,819,923 ("the '9923 Patent"), U.S. Patent No. 7,941,174 ("the '174 Patent"), U.S. Patent No. 8,055,820 ("the '820 Patent"), U.S. Patent No. 7,218,923 ("the '8923 Patent"), and U.S. Patent No. 6,810,019 ("the '019 Patent").

[3] These six mobile device designers and manufacturers include HTC (HTC Corporation, HTC America, Inc., Exedea, Inc.) (6:13-cv-507); LG (LG Electronics, Inc., LG Electronics U.S.A., Inc.) (6:13-cv-508); Pantech Co., LTD (6:13-cv-509); ZTE Corporation (6:13-cv-511); Amazon.com, Inc. (6:13-cv-568); and Dell Inc. (6:13-cv-569).

[4] Each of the following mobile carriers are accused in one or more of Plaintiff's complaints: Verizon (Cellco Partnership d/b/a Verizon Wireless), Sprint (Sprint Solutions, Inc., Sprint Spectrum L.P., Boost Mobile, LLC), AT&T (AT&T Mobility LLC) and T-Mobile (T-Mobile USA, Inc., and T-Mobile US, Inc.).  Docket No. 233 at 1.  However, no mobile carrier is accused in Plaintiff's complaint against Dell.  *See* Cause No. 6:13-cv-569, Docket No. 1.

venue, on February 27, 2014.  Docket No. 72.  In April 2014, Plaintiff filed a similar complaint against Apple and the same mobile carriers already accused in this consolidated case ("Apple Defendants").  Cause No. 6:14-cv-251, Docket No. 1.  In June 2014, the Court consolidated the Apple case into this existing lead case.  Docket No. 194.

***Defendants' Motions to Dismiss for Failure to State a Claim***

Prior to the first consolidation, Original Defendants each filed a motion to dismiss for failure to state a claim.  Docket No. 147 at 2.  After the first consolidation, Plaintiff filed an Amended Complaint against all Defendants.  *Id.*  Original Defendants then filed the instant motions to dismiss the respective Amended Complaints (Docket Nos. 109, 110, 111, 112, 113, 114) and the Court denied the original motions to dismiss as moot.  *Id.* at 2–3.  The instant motions are substantially identical to each other and they share a single response, reply,[5] and surreply.  *See* Docket Nos. 146, 157, 158.  On the same date that the instant motions were filed, Plaintiff filed its initial complaint in the Apple case.  Cause No. 6:14-cv-251, Docket No. 1.  Prior to consolidation of the Apple case with this lead case, Plaintiff filed two amended complaints and then Apple Defendants filed the instant Motion to Dismiss Plaintiff's Second Amended Complaint.[6]  Cause No. 6:14-cv-251, Docket No. 42.

Defendants argue that Plaintiffs' claims of induced infringement, contributory infringement, and willful infringement should be dismissed because the complaints fail to state a

---

[5] Defendant Dell filed a separate reply.  Docket No. 155.

[6] Although the Second Amended Complaint in the Apple case includes slightly more detail than the other complaints addressed in the lead case motions, the Apple Defendants' Motion addresses substantially the same issues as the other instant motions.

claim on which relief can be granted.   Docket No. 111 at 2.[7]   Plaintiff alleges indirect infringement of the '174 and '820 Patents against all Defendants.   Plaintiff alleges willful infringement of the '9923, '174, and '820 Patents against all Defendants except for Dell Inc. ("Dell"), and willful infringement of the '019 Patent against all Defendants except for Dell and Apple Defendants.   Against Original Defendants, with respect to each patent as stated above and with only insignificant variation in language, Plaintiff alleges generally:

> Defendants . . . have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the . . . patent . . . by, among other things, making, using, offering for sale, selling and/or importing [the accused products].
>
> . . . .
>
> Additionally, Defendants are liable for indirect infringement of the . . . patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the [accused products] to practice the claimed methods.
>
> On information and belief, each Defendant is a 3GPP member organization, or is affiliated with a 3GPP member organization, and has known of the . . . patent at least as early as [month and year], when it was disclosed to 3GPP via ETSI.
>
> On information and belief, despite having knowledge of the . . . patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use the [accused products], including Defendants' customers, to use such devices in a manner that infringes the . . . patent . . . . Defendants knew or should have known that their actions — including instructing customers and end users regarding use of the [accused products] — have and continue to actively induce infringement.
>
> On information and belief, Defendants named in this Count have known and know that their products accused of infringing (and/or components thereof) are a material part of the inventions of the . . . patent, are especially made and/or adapted for use in infringing the . . . patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

---

[7] For the remainder of this portion, most references to Defendants' motions will be to the HTC Defendants' Motion, Docket No. 111.  Where another motion differs substantially from the HTC Defendants' Motion, the Court will specifically reference that other motion.

> On information and belief, despite having knowledge of the . . . patent and knowledge that they are directly and/or indirectly infringing one or more claims of the . . . patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the . . . patent have been, and continue to be, willful, wanton and deliberate in disregard of [Plaintiff's] rights.

*E.g.*, Docket No. 92 at 15–16.   Plaintiff does not allege that Dell "is a 3GPP member organization or is affiliated with a 3GPP member organization."  Cause No. 6:13-cv-569, Docket No. 31.  Instead, with respect to each patent, Plaintiff alleges that "Dell has had knowledge of the . . . patent, at least as early as service of the Original Complaint in this action."  *Id.* at 6, 8.  The allegations against Apple Defendants are substantially similar to those against Original Defendants, except that the allegations against Apple Defendants provide some additional factual detail.  Finally, Plaintiff originally alleged—and Defendants disputed the pleading sufficiency of—infringement of two additional patents which, since the briefing on these motions concluded, have been dismissed from these cases.  *See* Docket Nos. 273, 335.

## APPLICABLE LAW

Regional circuit law applies to motions to dismiss for failure to state a claim.  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007).  "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  *Id.* at 1356 (internal quotations omitted); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also*

*Ashcroft v. Iqbal*, 556 U.S. 662, 679–680, 684 (2009) (discussing *Twombly* and applying

*Twombly* generally to civil actions pleaded under Rule 8).  "Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### 1.  Inducement

"Whoever actively induces infringement of a patent shall be liable as an infringer."

35 U.S.C. § 271(b).  To survive a motion to dismiss, a party's complaint must include facts that

show: (1) direct infringement by another; and (2) the defendant "specifically intended their

customers to infringe the [] patent and knew that the customer's acts constituted infringement."

*In re Bill of Lading Transmission and Processing Systems Patent Litig.*, 681 F.3d 1323, 1339

(Fed. Cir. 2012).  However, a party is not required to prove its case at the pleading stage; a

complaint is sufficient if it contains enough factual support that would allow a court "to draw [a]

reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 556).

Defendants first argue that Plaintiff "does not plead sufficient facts to support the

Defendants' specific intent for a third party to infringe" the patents.  Docket No. 111 at 6.

Plaintiff alleges that "Defendants named in this Count have and continue to specifically intend

for persons who acquire and use the [accused products], including Defendants' customers, to use

such devices in a manner that infringes the . . . patent" and that "Defendants knew or should have

known that their actions — including instructing customers and end users regarding use of the

[accused products] — have and continue to actively induce infringement." *E.g.,* Docket No. 92

at 16.  Plaintiff argues that "it is well-known that Defendants package instructional materials (e.g., user guides/owner manuals) with their products and also publish those materials online." Docket No. 146 at 7.  Plaintiff also points out that its complaints specifically identify, by name, the accused mobile device products that Defendants allegedly sell to their customers.  *Id.*

The patents named in the complaints and attached thereto indicate that the patented inventions are related to mobile device communications involving a cellular network.[8]  Taken together, Plaintiff's allegations raise a plausible inference that Defendants intend for their customers and end users to infringe the patents by using the accused mobile devices to communicate with a cellular network.

Second, Defendants contend that Plaintiff failed to allege facts sufficient to support a plausible inference that Defendants knew of the patents or their customers' allegedly infringing conduct prior to this suit.  Docket No. 111 at 8.  "Without adequately alleging why or how 3GPP member organizations—much less anyone 'affiliated' with a 3GPP member organization— necessarily receives notice of each and every patent disclosed to the European Telecommunications Standards Institute, [Plaintiff] raises nothing more than a speculative possibility that Defendants had sufficient knowledge of these particular patents . . . ."  *Id.*  Dell also argues that alleged knowledge obtained by the filing of this lawsuit is not sufficient to support an induced infringement claim.  Docket No. 109 at 5.  With respect to Defendants other than Dell, Plaintiff argues that the patents are declared essential to practicing a standard, and that "Defendants garnered pre-suit knowledge by virtue of their involvements with a standards-setting organization called the 3rd Generation Partnership Project (or '3GPP')."  Docket No. 146

---

[8] *See* Docket No. 92 at 12 (identifying the '174 patent as "Method for Multicode Transmission by a Subscriber Station"); *id.* at 14 (identifying the '820 patent as "Apparatus, System, and Method for Designating a Buffer Status Reporting Format Based on Detected Pre-Selected Buffer Conditions").

at 5.   Plaintiff contends that "Defendants (or their corporate affiliates) associate with 3GPP voluntarily and are provided notice of the patents declared essential to the standards that 3GPP publishes." *Id.*

With respect to Dell's argument, failure to allege pre-suit knowledge "is not a basis to dismiss [Plaintiff's] indirect infringement claims." *Lochner Techs., LLC v. AT Labs Inc.*, No. 2:11-cv-242, 2012 WL 2595288, at *3 (E.D. Tex. July 5, 2012) (finding allegations that knowledge of the patent existed at "the time of the filing of the Complaint" sufficient).   Because Plaintiff's claims against Dell allege knowledge of the patents as of the date of service of the Original Complaint, Plaintiff has adequately pleaded the knowledge requirement.

With respect to the other Defendants, Plaintiff has pleaded facts adequate to support a plausible inference that Defendants had pre-suit knowledge of the patents.   From Plaintiff's allegations involving 3GPP and ETSI, one can infer that the patents-in-suit are implicated in a standard.   Although Plaintiff's factual allegations are not robust, at this stage of the proceedings it plausible that Defendants that (1) associate with a standards-setting organization and that (2) make or sell products that allegedly infringe standard-implicated patents would be motivated to maintain some level of familiarity with patents declared essential to the standard.   Furthermore, it follows from Defendants' alleged knowledge of the patents that Defendants plausibly knew their customers and end users directly infringe the patented claims when they use the accused devices as expected.   However, Defendants may re-raise the issue of pre-suit knowledge in a motion for summary judgment after adequate time for discovery.

Third, Apple Defendants also challenge the direct infringement allegations underlying Plaintiff's indirect inducement claim.   Cause No. 6:14-cv-251, Docket No. 42 at 6.   Apple Defendants argue that Plaintiff "fails to allege that each step of any asserted claim is performed

by a single entity."   *Id.*   Plaintiff alleges "direct infringement of the patent by [Apple Defendants'] customers and other end users who use the [accused products] to practice the claimed methods."   Cause No. 6:14-cv-251, Docket No. 39 at 14, 18.   These allegations adequately plead direct infringement by customers and end users.   Accordingly, Plaintiff has sufficiently stated a claim of inducement.

## 2.  Contributory Infringement

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'"   *Bill of Lading*, 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)).   Therefore, to state a claim for contributory infringement, Plaintiff must identify Defendants' material or apparatus that is used in practicing the patented process and must "plead facts that allow an inference that [these] components . . . have no substantial non-infringing uses."   *Id.*

Defendants first argue that Plaintiff "fails to sufficiently allege that Defendants had knowledge of the patents."   Docket No. 111 at 9.   For the reasons set forth above, Plaintiff has adequately pleaded such knowledge.

Defendants also argue that Plaintiff "alleges no facts to support that the component has no substantial non-infringing use or that the component is a material part of the invention."   *Id.* Defendants contend that the complaints do not "identify the *particular* components allegedly used in an infringing method" and do not "allege *any* components were a material part of the inventions of the asserted patents."   *Id.* at 10.   Defendants further argue that, as a matter of

common sense, the "accused devices—like all modern smartphones and tablet computers—obviously have a wide variety of non-infringing uses." *Id.*

The complaints allege that the "products accused of infringing (and/or components thereof) are a material part of the inventions of the . . . patent, are especially made and/or adapted for use in infringing the . . . patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use." *E.g.*, Docket No. 92 at 16. Plaintiff argues that the "identified infringing products are wireless devices comprising proprietary hardware components and software instructions that work in concert to perform specific, intended functions." Docket No. 146 at 9. However, Plaintiff's complaints do not identify any components of the accused devices that are a material part of the invention. Furthermore, Plaintiff's allegations do not support a plausible inference that the accused devices or components thereof cannot be used for any other purpose than infringement. Therefore, Plaintiff's contributory infringement allegations fail to state a claim.[9] *See InMotion Imagery Technologies v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *4 (E.D. Tex. Aug. 10, 2012) (holding that the plaintiff's contributory infringement claim was insufficient because it did not identify the components used in the infringing method). Rather than dismissing Plaintiff's claims, the Court **ORDERS**

---

[9] The allegations against Apple Defendants likewise do not include any specific facts sufficient to support a contributory infringement claim. Plaintiff alleges: "Apple Devices include proprietary hardware components and software instructions that work in concert to perform specific, intended functions" and that "[s]uch specific, intended functions, carried out by these hardware and software combinations," are material and have no substantial non-infringing use. Cause No. 6:14-cv-251, Docket No. 39 at 15, 19.

Plaintiff to file an amended complaint within **14 days** from the date of this Order to comply with the pleading requirements articulated in *Twombly* and *Iqbal*.[10]

### 3. Willful Infringement

A patentee must have a good faith basis to allege willful infringement.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007).  "Willfulness does not equate to fraud, and thus, the pleading requirement for willful infringement does not rise to the stringent standard required by Rule 9(b)."  *Ferguson Beauregard/Logic Controls, Division of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003).  If a patentee asserts willful infringement in its complaint, the claim must be grounded in the accused infringer's pre-filing conduct.  *Seagate*, 497 F.3d at 1374.  To establish willful infringement, a patentee must demonstrate: (1) the accused infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent; and (2) the objectively-defined risk was either known or so obvious that it should have been known to the accused infringer.  *Id*. at 1371.

Defendants first argue that Plaintiff "fails to identify, explain, or allege any factual basis for the required 'objectively high likelihood of infringement'" prong.  Docket No. 111 at 11.  Second, Defendants contend that Plaintiff has not sufficiently alleged Defendants' pre-suit knowledge of the risk of infringement.  *Id.*  As explained above, Plaintiff has adequately alleged that Defendants were aware of the asserted patents prior to this lawsuit by virtue of their association with the standards-setting organization.  Furthermore, this allegation, combined with the allegation that Defendants continued their conduct despite their knowledge, leads to a plausible inference that there existed an objectively high likelihood of infringement.

---

[10] Apple Defendants again argue that Plaintiff has failed to allege direct infringement by a third party. Cause No. 6:14-cv-251, Docket No. 42 at 9. For the reasons set forth in connection with Plaintiff's induced infringement claims, Plaintiff has adequately pleaded direct infringement.

Accordingly, dismissal of Plaintiff's willful infringement claims is not warranted at this stage of the litigation.  However, Defendants may re-raise the issue of willfulness in a motion for summary judgment after adequate time for discovery.

Therefore, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** each of Defendants' Motions to Dismiss for Failure to State a Claim (Cause No. 6:13-cv-507, Docket Nos. 109, 110, 111, 112, 113, 114; Cause No. 6:14-cv-251, Docket No. 42).

### *Defendant Carrier-Retailers' Motion to Sever and Stay*

The mobile carrier Defendants ("Carrier-Retailers") request that claims against them be severed and stayed until Plaintiff's claims against the designer and manufacturer Defendants ("Manufacturers") are fully resolved.  Docket No. 233 at 1.  In each complaint where Plaintiff asserts claims against Carrier-Retailers, Plaintiff also alleges infringement by a Manufacturer for the same accused products.  *Id.* at 2.  Carrier-Retailers contend that "where a patentee sues both the manufacturer of the accused products and the retailers of those products in a single case, the retailer claims must be severed from the claims of the manufacturer."  *Id.* (citing *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014)).

Under Federal Rule of Civil Procedure 21, a court may "sever any claim against a party." FED. R. CIV. P. 21.  Courts exercise their discretion to sever only when three factors are met: "(1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims."  *Shifferaw v. Emson USA*, No. 2:09-CV-54, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010).  Because Carrier-Retailers do not request that the severed claims against any party be transferred to another venue, they contend that the third "factor relating to transfer of the severed claims . . . is inapplicable to this case."

Docket No. 233 at 5 n.7.  Accordingly, for purposes of this Motion, the Court will consider only the first two factors.[11]

Carrier-Retailers argue that the claims against them are peripheral because "the claims against the Manufacturers will be dispositive of [Plaintiff's] claims against Carrier-Retailers." *Id.* at 5.  Carrier-Retailers contend that Plaintiff's "allegations of infringement are based solely on the Manufacturer's products, and the only connection that [Plaintiff's] complaint identifies between the Carrier-Retailers and the allegedly infringing products is the resale of those products to consumers."  *Id.*  To further this point, Carrier-Retailers cite to Plaintiff's non-binding preliminary damages calculations, which they contend show that "recovery from the Manufacturers would fully compensate [Plaintiff] for the alleged harm."  Docket No. 279 at 2. Furthermore, according to Carrier-Retailers, only the Manufacturers develop the source code that carries out the accused functionalities, and Carrier-Retailers' alleged "testing," "development," and "activation" activities are not mentioned in Plaintiff's infringement contentions.  Docket No. 249 at 1–2.  Carrier-Retailers also point out that the "infringement contentions for the Carrier-Retailers are identical to each respective Manufacturer."  Docket No. 233 at 3.  Since the "operation of the Manufacturers' products is the central issue to be resolved," Carrier-Retailers conclude that their ability "to defend against [Plaintiff's] claims is much less than the ability of the Manufacturers to do so."  *Id.* at 5–6.

With respect to possible disposal of the severed claims, Carrier-Retailers argue that Plaintiff cannot receive recovery twice for the same sales, and therefore, the claims against Carrier-Retailers would be resolved regardless of the outcome of Plaintiff's claims against the

---

[11] Defendant Apple Inc. has filed a separate Motion in which it requests that the claims against Carrier-Retailers be severed and stayed *and* the case against Apple Inc. be transferred to the Northern District of California.  Cause No. 6:14-cv-251, Docket No. 56.  The Court will address Apple Inc.'s Motion below.

Manufacturers.  *Id.* at 6.  Even if the claims against Manufacturers do not entirely dispose of the severed claims, Carrier-Retailers argue, the major issues will have been resolved.  Docket No. 249 at 4.

Plaintiff responds that Carrier-Retailers are central to Plaintiff's infringement claims because they "play a significant role in the design, development, testing, activation, and use of the products accused of infringement."  Docket No. 244 at 1–2.  Plaintiff cites public statements made by Carrier-Retailers which purport to show their collaboration with Manufacturers in bringing new mobile devices to market.  *See id.* at 1, 4–7.  Plaintiff also contends that Carrier-Retailers are not "mere" retailers because they "subsidize and bundle the accused products with cellular service plans that must be maintained in order to use the devices."  *Id.* at 9.

Plaintiff further argues that its claims against Manufacturers would not dispose of the claims against Carrier-Retailers.  *Id.* at 10.  Plaintiff alleges that Carrier-Retailers' "unique knowledge, conduct, and intent are centrally important to [Plaintiff's] allegations" regarding direct, indirect, and willful infringement, for which Plaintiff alleges Carrier-Retailers are jointly liable with Manufacturers.  *Id.* at 11.  Plaintiff concludes that severance "would severely hinder [Plaintiff's] discovery efforts and cripple its ability to fully litigate claims against the named defendants."  *Id.*

The claims against Carrier-Retailers are not peripheral.  The circumstances in this case— particularly the collaborative relationship between Carrier-Retailers and Manufacturers involving the patented technology—are substantially different from the circumstances in other cases where courts have granted severance.  In these other cases, the severed retailers apparently lacked any meaningful connection to the manufacturer defendants other than the fact that the retailers sold or distributed the manufacturers' products to the public.  *See, e.g.*, *In re Nintendo*, 756 F.3d at

14

1365 (noting that none of the eleven retailers "had any information relating to the development or design of the accused Nintendo products"); *Ultimatepointer, L.L.C., v. Nintendo Co., LTD., et al.*, No 6:11-cv-496, Docket No. 448 at 6 (E.D. Tex. June 17, 2014) ("[Plaintiff] has not presented evidence that the Retailers had any role in the design, manufacture, or importation of the accused products."); *Shifferaw*, 2010 WL 1064380, at *3 (granting severance where the plaintiff "presented no evidence . . . that [the defendants] had any role in the design or manufacture of the accused products"); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 3:04-cv-2391, 2005 WL 2415960, at *5 (N.D. Tex. Sept. 30, 2005) ("[Plaintiff] has presented no evidence . . . that [distributor defendants] solicited orders of the accused [devices], or had any role in the design, manufacture, testing or selling of the accused devices.").

Here, the patented technology relates to the wireless standards adopted by the Carrier-Retailers.  Docket No. 244 at 2.  The patents "relate to the manner in which the wireless devices interface with [Carrier-Retailers'] cellular networks."  *Id.*  Plaintiff cites statements by AT&T to the Federal Communications Commission that it "routinely and actively works with all major manufacturers to design and deploy innovative new devices" and that "[e]ach handset sold by AT&T undergoes a rigorous testing and certification process within AT&T."  *Id.* at 4 (emphasis omitted) (quoting Docket No. 244, Ex. 9 at 2).  Plaintiff also cites statements by Verizon in its annual report that it "collaborate[s] with various device manufacturers in the development of distinctive smartphones and other wireless devices."  *Id.* at 6 (emphasis omitted and alteration in original) (quoting Docket No. 244, Ex. 13 at 7).  Likewise, Plaintiff cites Sprint's Amicus Curiae Brief to the Federal Circuit in an unrelated case for its statement that Sprint "invests heavily and devotes an extraordinary amount of resources to each smartphone that it supports."  *Id.* (emphasis omitted) (quoting Docket No. 244, Ex. 17 at 6–7).  Finally, Plaintiff cites an Amicus

Curiae Brief to the Northern District of California in another case, in which T-Mobile states that "finding an alternative supplier; developing a comparable product at the same price point; testing proposed substitutes for performance, operation, safety, and network compatibility, and ensuring appropriate supply, among other steps, would take nearly a year" if its smartphone supply were disrupted.  Docket No. 244, Ex. 18 at 5.

Although Carrier-Retailers dispute the significance of these statements, *see* Docket No. 249 at 2, the statements demonstrate the likelihood that Carrier-Retailers are more substantially implicated in allegedly infringing activities than the types of retailers severed in prior cases. Especially at this stage of the proceedings, the Court declines to resolve the factual issues[12] surrounding which entities are responsible for which aspects of the design, development, and testing of the accused products to ensure that they properly operate on Carrier-Retailers' networks.

Carrier-Retailers contend that since Plaintiff "provided a single, identical set of allegations for the Manufacturers *and* the Carrier-Retailers," Carrier-Retailers' involvement—to any extent—is irrelevant to Plaintiff's claims.  Docket No. 249 at 3.  Carrier-Retailers emphasize that Plaintiff's infringement contentions do not include "testing" or "development" performed by Carrier-Retailers.  *Id.* at 2.  Plaintiff's infringement contentions "allege that the Carriers and manufacturers infringe by making, using, selling, and offering to sell the accused products." Docket No. 254 at 3.  The Federal Circuit has recognized that severance is appropriate where

---

[12] *See, e.g.*, Docket No. 249 at 2 ("Plaintiff's arguments, based on general statements by the Carrier-Retailers, that they are 'substantially involved' in 'designing, developing, testing, activating, and using' the accused products are both factually incorrect and legally irrelevant."); Docket No. 254 at 1 ("Source code is only one facet of an extensive design and development process, and the Carriers' alleged lack of participation in that isolated aspect says nothing of their involvement elsewhere.").

manufacturer and retailer defendants share common issues of infringement and validity.[13]  *See In re Nintendo*, 756 F.3d at 1366 ("Since Nintendo's liability is predicate to recovery from any of the defendants, the case against Nintendo must proceed first, in any forum.").  However, this rule is founded on the premise that the manufacturer, rather than the retailer, is generally the "true defendant" in the dispute.  *See id.* at 1365.

At this stage of the litigation, it is less clear than in prior cases that Manufacturers alone are the "true defendants."  As set forth above, there exist unique circumstances involving alleged collaboration between mobile device Manufacturers and Carrier-Retailers, particularly where the patented technology involves the interaction between Manufacturers' devices and Carrier-Retailers' networks.  Further, unlike the mere retailers in prior cases, Carrier-Retailers are more likely to possess discoverable information relevant to the development of the accused mobile devices.  Finally, the record is unclear whether Manufacturers agree to indemnify Carrier-Retailers in this action.[14]  *See Shifferaw*, 2010 WL 1064380, at *1 (finding claims against retailers peripheral based in part on the fact that the manufacturer "has indemnified and is funding the defense of both" retailer defendants); *Ultimatepointer, L.L.C., v. Nintendo Co., LTD., et al.*, No 6:11-cv-496, Docket No. 448 at 6 (E.D. Tex. June 17, 2014).  For these reasons, the claims against Carrier-Retailers are not peripheral.

---

[13] The Federal Circuit's decision in *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014), submitted by Carrier-Retailers in a Notice of Subsequent Authority (Docket No. 271), specifically addresses a situation where Plaintiff "provided nearly identical infringement contentions to all defendants."  However, that case has limited applicability to the instant dispute because it involves a stay of phone manufacturer litigation which was already proceeding separately from litigation involving the manufacturers' software supplier in another district.  *See* 588 F. App'x at 990.

[14] In a footnote, Carrier-Retailers submit that their initial disclosures indicate that they are indemnified by suppliers.  Docket No. 249 at 4 n.18.  As Plaintiff points out, the initial disclosures appear to be ambiguous on the issues of whether or not an indemnity relationship actually exists and between whom such a relationship exists.  *See* Docket No. 254 at 3 n.7.

With respect to Carrier-Retailers' argument that severance would dispose of the claims against them, this second element only mildly supports severance.  Carrier-Retailers point out that because the accused products are the same between the Manufacturers and the Carrier-Retailers, Plaintiff may only collect damages once.  Docket No. 233 at 7.  Indeed, courts have held that where the plaintiff "is successful on the major premises being litigated in [the manufacturer litigation]," the plaintiff's prosecution of "additional issues" against retailers will be simplified "and may well be mooted if [the plaintiff] is unsuccessful."  *In re Nintendo*, 756 F.3d at 1366 (alterations in original) (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)).  However, Carrier-Retailers have not agreed to be bound by the rulings in the action against Manufacturers.  Docket No. 254 at 4.  Thus, it is unclear at this juncture that the claims against Manufacturers could dispose of the case against Carrier-Retailers, at minimum with respect to Plaintiff's willful infringement claims.  *See In re Nintendo*, 756 F.3d at 1365 ("Retailers had stipulated that they would be bound by any judgment rendered by the transferee court in the Nintendo litigation."); *Ultimatepointer, L.L.C., v. Nintendo Co., LTD., et al.*, No 6:11-cv-496, Docket No. 448 at 7 (E.D. Tex. June 17, 2014) (noting that retailers' stipulation to be bound "weighs heavily towards a finding" that disposal of retailer claims is likely); *Shifferaw*, 2010 WL 1064380, at *3 (noting that retailers had stipulated to be bound by rulings in manufacturer case and that "[a]lthough the plaintiff may have to present evidence of willful infringement against the two retailers, this is not a case where severance will create multiple lawsuits that have to be developed in their entirety.").  Therefore, severance creates the possibility of an unnecessarily duplicative lawsuit.

On balance, severance of this case would not "facilitate just, convenient, efficient, and less expensive determination" of the action.  *In re Nintendo*, 756 F.3d at 1365.  Therefore, the

Court **DENIES** Carrier-Retailers' request for severance. Finally, severance is a predicate to the requested stay of the severed claims.[15] Because the Court does not sever the claims against Carrier-Retailers, the Court need not consider whether those claims would have been stayed had they been severed. Additionally, a stay in this context would not result in judicial economy and would only complicate this litigation. Accordingly, Defendant Carrier-Retailers' Motion to Sever and Stay (Docket No. 233) is **DENIED**.[16]

***Defendant Apple's Motion to Stay, Sever, and Transfer Venue***

Defendant Apple Inc. ("Apple") requests that Plaintiff's claims against Apple's retailers ("Carrier-Retailers") be stayed and severed from Plaintiff's case against Apple, and that the Apple case then be transferred to the Northern District of California. Cause No. 6:14-cv-251, Docket No. 56 at 1.[17] With respect to the severance and stay portion of Apple's Motion, the parties dispute substantially the same facts and issues that are disputed in Carrier-Retailer's own Motion to Sever and Stay. *See id.* at 4–8; Docket No. 61 at 1–8. The Court has already addressed the competing arguments and therefore **DENIES** Apple's request that the claims against Carrier-Retailers be severed and stayed for the reasons set forth above. However, Apple further requests that in the event "the Court denies Apple's motion to stay the claims against the [Carrier-Retailers] . . . [Apple] still seeks transfer of all claims in the case to the Northern District of California." Docket No. 56 at 8 n.37. Accordingly, the Court considers whether the claims

---

[15] Carrier-Retailers "request that the Court sever [Plaintiff's] claims against Carrier-Retailers and stay the resulting actions until [Plantiff's] claims against the Manufacturers are resolved." Docket No. 233 at 8.

[16] In reaching this decision, the Court does not rely on or consider "the new point that the Carrier-Retailers have certain high-level requirements for devices used on their networks" raised in Plaintiff's Response to the Carrier-Retailers' Supplemental Brief. *See* Docket No. 366. Therefore, the Court does not need additional briefing on this matter.

[17] In the portion of this Order relating to Apple's Motion, all docket numbers will refer to the Apple member case, Cause No. 6:14-cv-251.

against both Apple and Carrier-Retailers should be transferred to the Northern District of California.

## APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for Section 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Nintendo*, 589 F.3d at 1198; *In re Volkswagen I*, 371 F.3d at 203. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Nintendo*, 589 F.3d at 1198; *In re Volkswagen I*, 371 F.3d at 203.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's

choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue.  *In re Nintendo*, 589 F.3d at 1200; *In re Volkswagen II*, 545 F.3d at 315.  Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *In re Volkswagen II*, 545 F.3d at 315.

## ANALYSIS

### A.   Threshold – Eligibility for Transfer

Apple argues that because it is headquartered in Cupertino, in the Northern District of California, venue is proper there.  Docket No. 56 at 9.  Plaintiff does not dispute that venue would be proper in the Northern District of California.  Therefore, the threshold determination is satisfied.

### B.   Private Factors

#### 1.   *Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis.  *In re Volkswagen II*, 545 F.3d at 316.  Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue.  *See id.*  This factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues.  *See, e.g.*, *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *In re Volkswagen II*, 545 F.3d at 314–15.  However, documents that have been moved to a particular venue in anticipation of litigation should not be considered.  *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir.

2009).  Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Apple argues that this factor heavily favors transfer because Apple's headquarters—where Apple keeps its "technical documents and source code that relate to the accused" functionalities—is located in the Northern District of California.  Docket No. 56 at 9.  Apple contends that documents relating to the finances and marketing of the accused products are also held at that location.  *Id.* at 10.  Apple argues that Plaintiff, which is a subsidiary of a larger California organization, is located in the Eastern District of Texas only as an "artifact of litigation" and that Plaintiff keeps no documents or witnesses in this District.  *Id.*

Plaintiff argues that this factor is neutral or weighs against transfer because Plaintiff's "employees, documents, things, and other proof related to this action are located in this District."  Docket No. 61 at 13.  Plaintiff also points out that Carrier-Retailers are headquartered across the country, "in Georgia, Kansas, Washington, and New Jersey" and "relevant witnesses, facilities, and documents are dispersed throughout at least eight states other than California," including Texas, "as well as Europe and Asia."  *Id.*

Apple and Carrier-Retailers, as the accused infringers, are likely to possess more documents relevant to this litigation than Plaintiff.  *See In re Nintendo Co.*, 589 F.3d at 1199 (Fed. Cir. 2009) ("[I]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.").  Although Apple keeps its documents in the Northern District of California, Carrier-Retailers keep their documents across the country, including in Texas.  For instance, AT&T has a "Network Ready Lab" in Austin, Texas and Verizon has a hardware compatibility lab near Dallas, Texas, both of which may contain evidence relevant to this suit.  Docket No. 61 at 4 n.19.  The Court may not ignore these potential sources of proof

that are closer to this District.  *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-11, 2014 WL 459719, at *2 (E.D. Tex. Jan. 31, 2014) ("This Court finds no Fifth Circuit authority which approves a qualitative ranking among defendants resulting in consideration of one defendant while excluding consideration of the remaining defendants and their circumstances."). However, because there are some sources of proof related to Apple in the Northern District of California and only Plaintiff's sources of proof are actually in this District, this factor slightly favors transfer.

### 2.    *Convenience of Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding."  *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial.  *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that [a] potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").  The Fifth Circuit has adopted a "100 mile rule" to analyze this factor.  *See In re Volkswagen I*, 371 F.3d at 204–05 (considering the respective distances between witnesses and the transferor and transferee venues when the venues are more than 100 miles apart).

Apple contends that this factor favors transfer because Apple's employee trial witnesses live in the Northern District of California.  Docket No. 56 at 12.  Apple notes that these employees live within 50 miles of some of the courthouses in that District and that trial in that District would not require those witnesses to be absent from work for more than a day.  *Id.*  By contrast, Apple argues, these witnesses would need to travel 1,800 miles and be absent from the

office for two days if trial were held in Tyler, Texas.  *Id.*  Apple similarly submits that engineers at Qualcomm, a third party that Apple contends provides Apple with hardware and software that performs the accused functionalities, live in San Diego, California, which is three times the distance from Tyler than from San Francisco or San Jose.  *Id.* at 11–12.  Finally, Apple argues that for all of the other potential witnesses in this case who reside in neither district, direct flights are available to all of the witnesses to San Francisco, but no direct flights are available to Tyler.  Docket No. 62 at 4.  Plaintiff responds that its employees reside in this District and AT&T and Verizon employees—who work in their respective employers' labs in Texas—live near this District.  Docket No. 61 at 10–11.  Plaintiff argues that the majority of party witnesses do not live near the West Coast, since Carrier-Retailers are headquartered in cities across the country, and that travel times for many of the potential witnesses are longer to San Francisco than to Tyler.  *Id.*  Plaintiff further contends that non-party witnesses are also geographically dispersed; for instance, prosecution counsel for the patents-in-suit live in the mid-Atlantic and Northeast regions of the United States and the inventors are located in Asia and Europe.  *Id.*

On one hand, Apple has specifically identified at least two of its employees in Northern California and one Qualcomm employee in Southern California.  On the other hand, Plaintiff has specifically identified at least one employee in this District as well as at least one employee of Carrier-Retailers who resides in Texas.  Thus, the Northern District of California would be more convenient for some parties and witnesses while this District would be more convenient for others.  With respect to the other potential witnesses for Carrier-Retailers, prosecution counsel, and inventors, who live in Connecticut, Washington D.C., New York, Virginia, Georgia, Kansas, Washington, New Jersey, Finland, Germany, and Japan, travel to San Francisco would not be clearly more convenient than travel to Tyler.  *See id.* at 11; Docket No.

56 at 12.   To the contrary, Tyler would require shorter travel for many potential domestic witnesses, including those potential witnesses who reside in Texas.   *See* Docket No. 66 at 4. However, with clear identification of only a few specific witnesses by either party, the number and location of willing witnesses is largely speculative at this point.   Accordingly, the factor is neutral.

### 3.      *Availability of Compulsory Process*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.   *See In re Volkswagen II*, 545 F.3d at 316.   This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power" and the transferor venue does not.   *Id.*   "Absolute subpoena power" is subpoena power for both depositions and trial.   *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

The amended Rule 45 provides the presiding court with the power to issue nationwide deposition subpoenas and compel testimony so long as the trial, hearing, or deposition is to take place within 100 miles of the witness's residence or regular place of business.   FED. R. CIV. P. 45(a)(2), 45(b)2, 45(c)(1)(A); *see* Committee Notes on Rules—2013 Amendment ("The [2013] amendments recognize the court where the action is pending as the issuing court, permit nationwide service of subpoena and collect in a new subdivision (c) the previously scattered provisions regarding place of compliance.").   The proffering party now has the option to depose the non-party witness near that witness's residence or regular place of business, and later present the witness's deposition testimony at trial without the involvement of a second district court. *See* FED. R. CIV. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial . . . .").

Apple identifies an engineer at Qualcomm who works in San Diego, California and who will not commit to appearing at trial in Tyler without compulsory process.  Docket No. 56 at 11.  Apple argues that since the Eastern District of Texas does not have absolute subpoena power over this witness but the Northern District of California does have such power, this factor heavily favors transfer.  *Id.*  Plaintiff responds that neither court has absolute subpoena power over all non-party witnesses, such as the inventors and prosecution counsel.  Docket No. 61 at 11–12.

The availability of absolute subpoena power for the Qualcomm employee in the Northern District of California is speculative in light of the requirement that in-state witnesses "not incur substantial expense" in attending trial.  FED. R. CIV. P. 45(c)(1)(B)(ii).  Also, neither District has absolute subpoena power over all potential witnesses.  Further, under the amended Rule 45, the Court now has power to issue nationwide service of subpoenas.  The overall effect of the amended Rule 45 is to lessen the likelihood that this factor will be determinative in the analysis.  In light of the foregoing, this factor is neutral.

### 4.    *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy.  Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor of or against transfer.  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").  Further, "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'"  *In re Vicor Corp.*, 493 Fed. App'x. 59, 61 (Fed. Cir. 2012) (quoting *In re Volkswagen III*, 566 F.3d at 1351).

Apple argues that the fact that there are other cases co-pending in this District involving the same patents should not override the other factors that favor transfer.  Docket No. 56 at 13. First, Apple contends that there is "no real connection between [Plaintiff] or its litigations and this district" and that Plaintiff's connection to the forum is an "artifact of litigation." *Id.*  Second, Apple submits that the case "is in its earliest stages, so the Court has not yet had the opportunity to gain expertise with the technologies and issues, and relatively few judicial resources have been invested in the case." *Id.*  Finally, Apple argues that it will be prejudiced by being forced to defend itself alongside its competitors, where each other defendant will generate "numerous and disparate technical issues." *Id.* at 14.  Plaintiff responds that this factor weighs strongly against transfer because transfer from the consolidated action "would create co-pending litigation and require two courts to simultaneously address overlapping issues of claim construction, infringement, and validity (among others)."  Docket No. 61 at 13 (internal quotation marks omitted).

This case is consolidated with six other actions against large mobile device manufacturers and Carrier-Retailers involving at least the same three patents related to wireless communications that are asserted in this case.[18]  At the time this Motion was filed, the Court had set the consolidated cases on a special track that involved limited early disclosures, two *Markman* hearings, and a stay of the bulk of discovery until after the first *Markman* Order. Cause No. 6:13-cv-507, Docket No. 123.

No other consolidated defendants have moved for transfer.  Even in this case against Apple, the joined Carrier-Retailers do not join in Apple's Motion to the extent that Apple

---

[18] At the time Apple filed this Motion, Plaintiff asserted two additional patents against the majority of the consolidated defendants, including Apple.  However, Plaintiff has since dropped its claims relating to those patents.  *See* Cause No. 6:13-cv-507, Docket Nos. 273, 335.

requests to transfer venue.[19]   Indeed, Carrier-Retailers would be placed in a difficult position if transfer were granted—most of the Carrier-Retailers are also defendants in many of the consolidated cases involving other device manufacturers.   Cause No. 6:13-cv-507, Docket No. 233 at 2.   Because the Carrier-Retailers are not severed from these actions, a transfer of only the Apple case would result in Carrier-Retailers' litigating the same patents and many of the same factual issues simultaneously in two different forums.

Finally, it would be highly inefficient to ask a court in the Northern District of California to oversee Plaintiff's case against Apple and the Carrier Retailers when this Court must already oversee Plaintiff's similar cases against the same Carrier-Retailers and several other defendants. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (noting that it promotes judicial economy for the same judge to hear related cases); *In re Volkswagen III*, 566 F.3d at 1351.   A transfer would result in duplicate and repetitive efforts in multiple courts, increasing the burden of time, resources, and money on the judicial system and the parties. Accordingly, this factor weighs strongly against transfer.

## C.   Public Factors

### 1.   *Local Interest*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."   *In re Volkswagen I*, 371 F.3d at 206.   This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues.   *Id.*   Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local

---

[19] In Carrier-Retailers Notice of Joinder to Apple's Motion, they submit, "[t]he Carrier-Retailers ask that the claims against them be severed and stayed. *To the extent this relief is granted*, the Carrier-Retailers do not oppose Apple's request to transfer claims against it to the Northern District of California."   Docket No. 58 at 1 (emphasis added).

interests.  *In re TS Tech*, 551 F.3d at 1321; *In re Volkswagen II*, 545 F.3d at 318 (disregarding local interest of citizens who used the widely sold product within the transferor venue in a products liability suit).  Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue.  *In re Nintendo*, 589 F.3d at 1198.

Apple argues that "the Northern District of California has significant factual connections to this case because the products at issue were developed, and decisions relating to their sale and marketing are made, at Apple's headquarters within that district."  Docket No. 56 at 14.  Further, Apple contends that there is no local interest involving Plaintiff in this District because Plaintiff's presence here is an "artifact of litigation."  *Id.*  Plaintiff responds that this factor is neutral because this case is "brought against international corporate defendants, concerning products that are developed and sold across the United States."  Docket No. 61 at 15.

Apple has substantial ties to the Northern District of California.  However, as explained above, Carrier-Retailers are tied to various locations across the country, including in Texas near this District where some Carrier-Retailers hold operations that may be relevant to this case.  Accordingly, this factor slightly favors transfer.

### 2.      *Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis.  *In re Genentech*, 566 F.3d at 1347.  This factor appears to be the most speculative, and this factor alone should not outweigh other factors.  *Id.*  Apple argues that this factor is neutral because both districts have full dockets and both are familiar with patent litigation.  Docket No. 56 at 15.  Plaintiff argues that this factor weighs against transfer because transfer would lead to delay in the resolution of this case.  Docket No. 61 at 13.  Plaintiff contends that the "median

time-to-trial in the Northern District of California is 34.2 months compared with 21.3 months in this District." *Id.* at 13–14.

This case is set for trial in April 2016, 24 months after Plaintiff filed its complaint against Apple.  *See* Docket No. 1; Cause No. 6:13-cv-507, Docket No. 123.   Because the statistics provided by Plaintiff give only a speculative insight into the relative congestion of these two districts, they are given little weight.  *See In re Genentech*, 566 F.3d at 1347.   Accordingly, this factor is neutral.

### 3.   *Remaining Public Factors*

The two remaining public factors, familiarity of forum with governing law and conflicts of law, are not disputed by the parties, and are therefore neutral in the analysis.

For the reasons explained above in connection with Carrier-Retailers' Motion to Sever and Stay, Apple has failed to show that Plaintiff's claims against Carrier-Retailers should be severed and stayed.   Furthermore, Apple has failed to show that transfer of this case to the Northern District of California would be clearly more convenient.   Although two factors— access to proof and local interest—slightly favor transfer, the practical problems regarding judicial efficiency factor weighs strongly against transfer.   All other factors are neutral.   This case involves not only Apple, but also multiple Carrier-Retailers which have no strong ties to the Northern District of California and are also defendants in the other consolidated cases involving the same patents in this District.   Accordingly, transfer would result in substantial inefficiencies in judicial economy.   Accordingly, Apple's Motion to Stay, Sever, and Transfer Venue (Cause No. 6:14-cv-251, Docket No. 56) is **DENIED**.

## CONCLUSION

Therefore, the Defendants' Motions to Dismiss for Failure to State a Claim (Cause No. 6:13-cv-507, Docket Nos. 109, 110, 111, 112, 113, 114; Cause No. 6:14-cv-251, Docket No. 42), are each **GRANTED-IN-PART** and **DENIED-IN-PART**.  Rather than dismissing Plaintiff's claims, the Court **ORDERS** Plaintiff to file an amended complaint within **14 days** from the date of this Order to comply with the pleading requirements articulated in *Twombly* and *Iqbal*. Defendant Carrier-Retailers' Motion to Sever and Stay (Docket No. 233) is **DENIED**, and Defendant Apple's Motion to Stay, Sever, and Transfer Venue (Cause No. 6:14-cv-251, Docket No. 56) is **DENIED**.  Furthermore NEC and Blackberry Defendants' Motions to Dismiss for Failure to State a Claim (Docket Nos. 107, 116) are **DENIED AS MOOT**.

**So ORDERED and SIGNED this 27th day of March, 2015.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**