IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT, LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 6:14-cv-251 |
| v. | § § | |
| APPLE INC., et al., | § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Cellular Communications Equipment LLC's ("CCE") Motion for Leave to Supplement Plaintiff's Second Supplemental Disclosure of Asserted Claims and Infringement Contentions ("the Motion"). Case No. 6:14-cv-251, Doc. No. 174; Case No. 6:13-cv-507, Doc. No. 541[1]. Having considered the Parties' arguments and for the reasons stated herein, the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

CCE filed suit against Apple, Inc. ("Apple") and the Carrier Co-Defendants AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Sprint Solutions, Inc., Sprint Spectrum L.P., Boost Mobile, LLC, T-Mobile USA, Inc., and T-Mobile US, Inc. (collectively "Defendants") on April 7, 2014 alleging infringement of multiple patents. Case No. 6:14-cv-251, Doc. No. 1. Currently, only U.S. Patent No. 8,055,820 ("the '820 Patent") remains.

CCE served its preliminary infringement contentions in July 2014. Doc. No. 551 at 5. In April 2015, CCE served Plaintiff's Second Supplemental Infringement Contentions. Doc. No.

---

[1] All citations refer to Case No. 6:13-cv-507 unless otherwise noted. This motion was originally filed in the consolidated lead case, 6:13-cv-507, which has since been dismissed. Doc. No. 633.

1

541, Ex. B at 1. The Motion requests leave to supplement Exhibit E of Plaintiff's Second Supplemental Infringement Contentions based upon review of source code. *Id.* at 2.

Apple made this source code available for inspection in November 2014, but inspection required entry of a Qualcomm Supplemental Protective Order. Doc. No. 551 at 8. The parties agreed on the terms in June 2015 and the Court entered the Qualcomm Protective Order on August 14, 2015. Doc. No. 447. The parties agreed that CCE would inspect the source code on October 5, 2015. Doc. No. 551 at 8. On September 29, 2015, CCE requested that Apple install additional software on the code review computer. Doc. No. 541, Ex. D at 7-8. Apple needed to conduct a security review before installation and thus inspection was postponed until Apple completed its review and installed the program. *Id.* at 4-6. CCE rescheduled the inspection and reviewed the source code on October 27, 2015. *Id.* at 4. CCE then notified Apple that the source code was incomplete and Apple made supplemental source code available on November 17, 2015. Doc. No. 541 at 3. CCE's expert reviewed the source code on December 1-2. *Id.*

On December 28, 2015, CCE provided Apple with the proposed source-code-level supplementation. Doc. No. 541 at 3-4. After multiple correspondences back and forth as well as meet-and-confers, Apple maintained its objection to CCE's supplementation. *Id.* This motion followed.

**LEGAL STANDARD**

Pursuant to Patent Rule 3–6(b), a party can amend its infringement contentions with leave of the court upon a showing of good cause. *Cell and Network Selection LLC v. AT&T Inc., et al.*, No. 6:13-cv-403, 2014 WL 10727108, at *2 (E.D. Tex. Nov. 10, 2014). District courts have broad discretion to determine whether "good cause" exists for amending infringement contentions, and normally consider four factors: (1) the explanation for the party's failure to meet

the deadline; (2) the importance of what the Court is excluding; (3) the potential prejudice if the Court allows the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Alexsam, Inc. v. IDT Corp.,* No. 2:07–cv–420, 2011 WL 108725, at *1 (E.D. Tex. Jan. 12, 2011)(citing *S & W Enters. L.L.C. v. Southtrust Bank of Alabama,* 315 F.3d 533, 535 (5th Cir. 2003)); *Cell and Network Selection*, 2014 WL 10727108, at *2.

## ANALYSIS

There are two types of supplementation sought by CCE in this motion: (1) addition of citations to source code that provide additional support for allegations in prior disclosures; and (2) additional language for claims 6 and 17 not present in prior disclosures. Other than arguing a lack of diligence, Apple does not specifically challenge the citations to source code. The real dispute centers over the additional language CCE seeks to add for claims 6 and 17. The newly-proposed language is, "Likewise, for 'Regular BSR' and 'Periodic BSR,' the '820 Apple Accused Products designate a Short or Truncated BSR when there are more than one LCGs with data but there is insufficient leftover grant for a Long BSR." Doc. No. 541, Ex. A at 16, 35-36. This language is identical for both claims 6 and 17 and did not appear in earlier versions of CCE's disclosures. *Id.*

CCE argues that this language is consistent with its previously-disclosed theories and does not add a new theory. Doc. No. 541 at 5. To the extent that this language does add a new theory, CCE argues that it "reflects information that could only be obtained through review of Apple source code." *Id.* Apple argues that this supplemental language adds entirely new theories of infringement that were not previously disclosed. Doc. No. 551 at 1, 2. Apple argues that CCE's new theory is not predicated upon information obtained during source code review and

CCE has not explained why it waited to assert this theory. *Id.* at 9. Apple believes that supplementation is highly prejudicial and should be denied. *Id*.

   1. *Diligence*

CCE first reviewed source code on October 27-29 and reviewed supplemental production of source code on December 1-2. Doc. No. 541 at 3. On December 28, 2015, CCE provided Apple with the its proposed supplements to its claim charts. *Id.* at 3-4. CCE argues that it promptly disclosed its proposed supplementation and its intention to seek leave. *Id.* at 4. Apple argues that CCE was not diligent in adding its new theory of infringement or its source code citations. Doc. No. 551 at 7.

The diligence section of Apple's response is the only area where Apple has raised an objection to CCE's addition of source code citations. Apple concludes that the four-month time lapse between entry of the Qualcomm Protective Order and CCE's supplementation indicates a lack of diligence. The parties originally agreed on a review date of October 5 which was postponed until October 27. Doc. No. 551 at 8. Thus, the delay caused by CCE, if any, is approximately three weeks. The Protective Order provides that requests for installation of additional software must be made at least ten days before the receiving party wishes the software be available. Doc. No. 310 at § 7.2.5. Because CCE requested additional software be made available six days before the inspection, outside the ten day window required by the Protective Order, some of this delay is attributed to CCE. However, the delay was relatively short and thus this factor only weighs slightly against granting CCE leave to add citations to source code.

Apple's main argument as to why CCE was not diligent goes to the allegedly new infringement theory that CCE seeks to add for claims 6 and 17. Apple argues that CCE provides no justification as to why it waited to add additional language to claims 6 and 17. Doc. No. 551

at 9. CCE's own argument is that they are not asserting anything new and thus Apple argues that CCE should have been aware of this amendment long before reviewing source code. *Id.* at 7. Thus, Apple concludes that CCE cannot claim it was diligent in waiting to add this additional language.

CCE repeatedly asserts that it is not injecting a new infringement theory into this case. Doc. No. 541 at 2, 5; Doc. No. 554 at 2. However, the language added to claims 6 and 17 differs from the rest of the proposed supplementations that merely add citations to source code as support for already-disclosed theories. Regardless of whether this language adds a new infringement theory, CCE has not explained why it could not have included this language in an earlier version of its infringement contentions. In other words, CCE has not demonstrated that source code review was necessary in order to formulate this new language. CCE has demonstrated that source code review was necessary before it could include the rest of its supplementations—as all of those supplements are merely citations to newly-reviewed source code—but CCE has not made this same showing for the new language added to claims 6 and 17. As such, CCE has not shown why it waited until December 2015 to add this language to its contentions. Therefore, this factor weighs against granting leave to supplement.

### 2. *Importance*

Apple takes no position as to the importance of CCE's supplementation. Doc. No. 551 at 10. CCE argues that while its supplementation is "modest," because it does not introduce any new theories or products, it is still important "because it clarifies and provides source code level support for CCE's infringement allegations." Doc. No. 541 at 2. Additionally, CCE argues that supplementation is important because it "provides an alternate means of proving infringement

(i.e. evidence of infringement based on source code executed by accused devices rather than LTE standards)." Doc. No. 541 at 2.

In discussing this factor, CCE makes a general argument as to why source-code-level supplementation is important. The Court agrees that citations to source code provide additional support for CCE's theories and are important. Therefore this factor weighs in favor of allowing supplementation as to the citations of source code.

However, CCE has not specifically addressed the importance of the addition of the objected-to language in claims 6 and 17. CCE assures the Court that the language only "clarifies" previously-disclosed infringement theories. Doc. No. 541 at 2, 5. But there has not been an allegation that CCE's prior infringement contentions were insufficient or in need of clarity. If this additional language does not assert a new infringement theory, but merely clarifies CCE's prior infringement theories, it is difficult to see how the proposed supplemental language could be particularly important. *See Raytheon Co. v. Indigo Systems Corp.*, No. 4:07-cv-109, 2008 WL 5378047, at *2 (E.D. Tex. Dec. 23, 2008)(Noting that when prior contentions were never alleged to be insufficient, it was difficult for the Court to understand the importance of amendments that sought only to clarify without asserting new theories of infringement). This factor weighs against granting leave to supplement.

### 3. Potential for Prejudice

Apple argues that CCE's untimely disclosure of a new theory deprived Apple of the opportunity to search for prior art with CCE's actual infringement theory in mind[2]. Doc. No. 551 at 9. CCE counters that its supplementation does not add products or new infringement theories,

---

[2] Apple's argument centers upon the prejudice that results from addition of a new theory of infringement. Apple does not specifically discuss any prejudice resulting from the addition of citations to source code. Accordingly, the Court finds that Apple will not be prejudiced if CCE is granted leave add citations to source code. This factor weighs in favor of granting leave to supplement with citations to source code.

but instead clarifies and adds source-code-level support for previously-alleged theories. Doc. No. 541 at 5. Because of this, CCE argues that Apple cannot credibly claim that its prior art search was prejudiced when the infringement theories remain the same. Doc. No. 541 at 8. CCE argues that even if this language constitutes a new theory, Apple should have been aware of the theory because it is in the '820 Patent claims and specification. Doc. No. 554 at 5.

CCE's argument that Defendants should have anticipated this theory based on the claims and specification of the '820 Patent misses the point. Infringement Contentions are required to provide defendants with notice of infringement "beyond that which is provided by the mere language of the patent [claims] themselves." *Connectel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005). The purpose of infringement contentions is to provide defendants with notice as to what *plaintiff's* theories of infringement are, not any possible theory of infringement that could be asserted based upon the language of the patent. *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009). Thus, injecting a new infringement theory at a late stage is prejudicial to a defendant. *Id.* at *8.

Even if CCE did not intend to inject a new infringement theory into the case, the portion that CCE seeks to add under claims 6 and 17 adds language not previously found in its contentions. Doc. No. 541, Ex. A at 16, 35-36. CCE's prior infringement contentions speak in terms of sufficiency of uplink bandwidth: when there is sufficient uplink bandwidth available for a Long BSR, the designating unit designates the Long BSR format but, if it detects that there is insufficient uplink bandwidth to use the Long BSR format, the Short or Truncated BSR format is used. *Id*. CCE's supplement to these claims would couch the contentions in terms of sufficiency of leftover grant as opposed to sufficiency of uplink bandwidth. CCE has not provided a reason for its departure from its previous language. On the one hand, CCE argues that this entirely new

term, insufficient leftover grant, communicates exactly the same theory as the term insufficient uplink bandwidth, and thus supplementation will not prejudice defendants. Doc. No. 541 at 6; Doc. No. 554 at 2. On the other hand, CCE argues that it is necessary and important for the Court to allow CCE to supplement its contentions with this new language. Doc. No. 541 at 2-3. These arguments conflict. If CCE believes that it is necessary to include this new language, then the new language must serve a purpose not served by the old language. Despite CCE's arguments to the contrary, this additional language does alter its previous infringement contentions and Apple would be prejudiced by the late addition of this language. Therefore, this factor weighs against allowing supplementation.

4. *Availability of a Continuance*

CCE does not believe that a continuance is needed. Doc. No. 541 at 9. Apple does not comment on the need for a continuance specifically. Rather, Apple argues that if the Court grants CCE leave to amend, the prejudice to Apple can be cured by allowing Apple 30 days to serve supplemental invalidity contentions in response to CCE's supplements[3]. Doc. No. 551 at 10.

The history of this case shows that a continuance is not available to cure any prejudice that would result from allowing CCE to supplement its infringement contentions with new language for claims 6 and 17[4]. This case was consolidated with Case No. 6:13-cv-507 on June 17, 2014. Doc. No. 194. The original trial date for the consolidated cases was April 4, 2016. Doc. No. 123. After Judge Davis retired, the case was reassigned to Judge Gilstrap and the trial date was moved to April 11, 2016. Doc. No. 451. Shortly thereafter, the parties requested an

---

[3] AT&T Mobility LLC filed a one paragraph opposition to the motion citing the same "reasons stated in Apple's Opposition" and requested leave to supplement its invalidity contentions, if the Court granted CCE's motion. Doc. No. 552 at 1.
[4] As stated *supra*, Apple limited its prejudice argument to the addition of a new theory of infringement. Availability of a continuance is only relevant to the extent that the continuance can cure any prejudice. If there is no prejudice, a continuance is not necessary. Because Apple is not prejudiced if CCE adds citations to source code, it is not necessary to consider the availability of a continuance in analyzing whether to grant leave as to source code citations.

extension of all deadlines in the docket control order, including the trial date. Doc. No. 455. In November 2015, the Court granted this extension and moved the trial date to June 20, 2016. Doc. Nos. 495, 511. Just one month later, the parties requested another extension. Doc. No. 518. In January 2016, the trial date was again pushed back to September 6, 2016, which is the current trial setting. Doc. No. 527. After granting the parties this additional extension, the Court made clear that this would be the last extension granted. Doc. No. 520 at 2. Therefore, a continuance is not available to cure any prejudice to defendants. This factor weighs against granting leave to supplement.

## **CONCLUSION**

Weighing all of the factors, CCE has not shown good cause for granting leave to supplement with respect to the additional language for claims 6 and 17. However, CCE has demonstrated good cause as to why it should be granted leave to supplement its infringement contentions with source code citations. It is therefore

**ORDERED** that Plaintiff's Motion for Leave to Supplement Plaintiff's Second Supplemental Disclosure of Asserted Claims and Infringement Contentions is **GRANTED-IN-PART** and **DENIED-IN-PART**.

So ORDERED and SIGNED this 10th day of August, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE