*Exhibit C*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | |
| Plaintiff, | Civil Action No. 6:14-cv-251 |
| v. | |
| **APPLE INC., et al.,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## JOINT PROPOSED JURY INSTRUCTIONS

### 1.   Introduction[1]

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and argument of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

### 1.1   General Instruction[2]

---

[1] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

1

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.

Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## 1.2   Considering Witness Testimony[3]

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

---

[2] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

[3] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at another time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## 1.3   How to Examine the Evidence[4]

Certain testimony in this case was presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight as if the witness had been present and had testified from the witness stand in court.

---

[4] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

## 1.4  Expert witnesses[5]

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field he or she is called an expert witness is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether the witness' testimony is believable or not, whether it is supported by the evidence, and whether to rely upon

---

[5] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

it.  In deciding whether to accept or rely upon the opinion of an expert witness, you may consider

any bias of the witness.

## 2.   Summary of Contentions[6]

I will first give you a summary of each side's contentions in this case. I will then tell you

what each side must prove to win on these issues.

Recall that we refer to Apple Inc. ("Apple"), AT&T Mobility LLC ("AT&T"), Cellco

Partnership d/b/a Verizon Wireless ("Verizon"), Sprint Solutions, Inc., Sprint Spectrum L.P., and

Boost Mobile, LLC ("Sprint"), and T-Mobile USA, Inc. and T-Mobile US, Inc. ("T-Mobile")

collectively as Defendants.   Plaintiff Cellular Communications Equipment LLC ("CCE")

contends that the Defendants make, use, sell, offer to sell, or import products into the United

States — specifically cellular devices — that infringe claims 4, 6, 10, 12, 17, 20, 21, and 24 of

United States Patent No. 8,055,820 ("the '820 patent.  These claims have been referred to as the

"Asserted Claims," and the patent has been referred to as the "patent-in- suit."

CCE also contends that Defendants are inducing and contributing to direct infringement

of these claims of the patent-in-suit.  CCE is seeking damages for the alleged infringement of

Defendants.

In response to CCE's contentions, Defendants contend that neither Defendants nor their

customers have infringed the patent-in-suit. Defendants further contend that they have not

induced or contributed to direct infringement of the Asserted Claims.  Defendants also contend

that the Asserted Claims of the '820 patent are invalid because they are anticipated or rendered

---

[6] Adapted from Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012); *see also* Order, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00855, Dkt. 181 (E.D. Tex. Aug. 8, 2014); Judgment and Opinion, *VirnetX Inc. v. Apple Inc.*, No. 2013-1489, Dkt. 78 (Fed. Cir. Sep. 16, 2014).

obvious by one or more references in the prior art.  Defendants also contend that CCE is not entitled to damages for any infringement.

In response to Defendants' invalidity contentions, CCE contends that the Asserted Claims of the patent-in-suit are not invalid.

### 3.   Burdens of Proof[7]

In any legal action, facts must be proved by a required amount of evidence, known as the "burden of proof."  The burden of proof in this case is on CCE for some issues and on Defendants for other issues.  CCE has the burden of proving infringement and damages by a preponderance of the evidence. Preponderance of the evidence means the evidence that persuades you that a claim is more likely true than not true.  If the proof establishes that all parts of CCE's infringement claims are more likely true than not true, then you should find for CCE as to that claim.

Defendants have the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

In determining whether any fact has been proved by the preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the

---

[7] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

## 4.   Claims of the Patent-in-Suit[8]

The claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe products, such as machines or chemical compounds, methods, apparatuses or processes for making or using a product.

Claims are usually divided into parts or steps, called limitations or elements. For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop. The tabletop, legs, and glue are each a separate limitation of the claim.

## 4.1  Independent and Dependent Claims[9]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, for example, claims 1, 12, and 24 of the '820 patent are each independent claims.

---

[8] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

[9] Adapted from Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

The rest of the claims being asserted in this case are "dependent claims." A dependent claim refers to another claim and includes all the requirements or parts of the claims to which it refers. In this way the claim "depends" on another claim. The dependent claim then adds its own, additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. A product or method that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

## 4.2  Construction of the Claims[10]

In deciding whether or not the accused products and methods infringe an Asserted Claim, and whether or not the claim is invalid**,** the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not they are invalid.  I have interpreted the meaning of some of the language in the patent claims involved in this case.  My interpretation of those claims appears in your notebook on the last tab. The claim language I have not interpreted for you in your notebook is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

## 4.3  Open–Ended or "Comprising" Claims[11]

---

[10] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

[11] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

The beginning portion, or preamble, to some of the Asserted Claims uses the word "comprising."  "Comprising" and "comprises" mean "including but not limited to" or "containing but not limited to." Thus, if you decide that an accused product includes all the requirements in that claim, the claim is infringed. This is true even if the accused instrumentality includes components in addition to those requirements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

**5.  Infringement[12]**

Any person or business entity who makes, uses, sells, offers to sell, or imports into the United States a product or practices a method that is covered by at least one claim of a patent infringes the patent.

A patent owner has the right to stop others from making, using, selling and offering for sale, and importing into the United States the invention covered by the patent claims during the life of the patent.

In this case, there are two possible ways that a claim may be infringed. I will explain the requirements for each of these two types of infringement to you. The two types of infringement are called: (1) direct infringement; and (2) indirect infringement.  Indirect infringement can occur in one of two ways: (1) active inducement, or (2) contributory infringement.  I will discuss each of these.

---

[12] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

Only the claims of a patent can be infringed. You must compare each of the Asserted Claims, as I have defined them, to the accused acts of infringement and determine whether or not there is infringement.  You must not compare the accused products or methods with any specific example set out in the patent. The only correct comparison is with the language of the claim itself, with the meanings I have given you.

In order to prove infringement, CCE must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely true than not that all of the requirements of one or more of each of these types of infringement have been proved.

You must consider each Asserted Claim of the '820 patent individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

I will now explain each of the types of infringement in more detail.

## 5.1  Direct Infringement[13]

If any person makes, uses, or offers to sell, sells in the United States or imports into the United States what is covered by the claims of a patent without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called direct infringement. To determine direct infringement, you must compare the accused products or methods with each of the Asserted Claims, using my instructions as to the meaning of the patent claims.

---

[13] Adapted from Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

A patent claim is directly infringed only if the accused product or method includes each and every element in that patent claim. If the accused product or method does not contain one or more of the limitations recited in a claim, then that product or method does not directly infringe that claim. If you find that the accused product or method includes each element or step of the claim, then that product or method infringes the claim even if such product or use contains additional elements or steps that are not recited in the claim.  Where more than one actor is involved in practicing the steps of a method claim, direct infringement can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance.[14]

A person may directly infringe a patent even though in good faith it believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.  Direct infringement does not require proof that the person copied a product or the patent.

You must consider each of the Asserted Claims individually. You must be certain to compare the accused product or method with each claim that such product or method is alleged to infringe.  Such accused product or method should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.

Taking each Asserted Claim separately, if you find that CCE has proved by a preponderance of the evidence that each and every limitation of that claim is present in the accused product or method, then you must find that such product or method infringes that claim.

---

[14] *See Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 2015 WL 4760450, at *1 (Fed. Cir. Aug. 13, 2015).

## 5.2   Active Inducement of Infringement[15]

CCE alleges that Defendants are also liable for infringement by actively inducing others to directly infringe the Asserted Claims. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To show induced infringement, CCE must prove by a preponderance of the evidence that customers or end-users of Defendants have directly infringed the asserted patent claims, and that Defendants have actively and knowingly aided and abetted that direct infringement. A defendant is liable for active inducement of a claim only if:

(1) the defendant takes action during the time the patent is in force which encourages acts by someone else;

(2) the encouraged acts constitute direct infringement of that claim;

(3) the defendant (a) is aware of the patent, and knows that the encouraged acts constitute infringement of the patent; or (b) is willfully blind to the infringement of the patent. Willful blindness requires that the defendant subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and the defendant took deliberate actions to avoid learning of the infringement;

(4) the defendant has the intent to encourage infringement by someone else; and

(5) the encouraged acts are actually carried out by someone else.

In order to prove active inducement, CCE must prove that each of the above requirements is met by a preponderance of the evidence, i.e., that it is more likely true than not that each of the above requirements has been met.

---

[15] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

In considering whether Defendants has induced infringement by others, you may consider all the circumstances, including whether or not Defendants obtained the advice of a competent lawyer, whether or not it knew of the patent or was willfully blind to the patent when designing and manufacturing its products and whether or not it removed or diminished the allegedly infringing features. You may not assume that merely because Defendants did not obtain an opinion of counsel, the opinion would have been unfavorable.

Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use may be considered in light of all the circumstances in determining whether Defendants had specific intent to cause others to infringe. In order to establish active inducement of infringement, it is not sufficient that Defendants were aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find that Defendants specifically intended to cause the acts that constitute the direct infringement and must have known or was willfully blind that the action would cause the direct infringement. If you do not find that the accused infringer meets these specific intent requirements by a preponderance of the evidence, then you must find that the accused infringer has not actively induced the alleged infringement.

## 5.3    Contributory Infringement[16]

---

[16] Adapted from First Amended Joint Proposed Final Jury Instructions of  VirnetX and Apple, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 571 (E.D. Tex. Oct. 31, 2012); *see also* Court's Charge, *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv- 80, Dkt. 376 (E.D. Tex. Mar. 15, 2010).

CCE alleges that Defendants are liable for contributory infringement by contributing to the direct infringement of the Asserted Claims.  As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

It is not necessary to show that Defendants have directly infringed as long as you find that someone has directly infringed. If there is no direct infringement by anyone, Defendants cannot have contributed to the infringement of the patent.

If you find someone has directly infringed the Asserted Claims, then contributory infringement exists if CCE establishes by a preponderance of the evidence that:

(1)   a defendant sold, offered for sale, or imported;

(2)   a material component of the product, or material component used in practicing the patented method, which can be software, that is not a staple article of commerce; and

(3)   with knowledge or willful blindness of (1) the patent-in-suit, and (2) that the component was especially made or adapted for use in a way that infringes the claim of the patent.  Willful blindness requires that the defendant subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and the defendant took deliberate actions to avoid learning of the infringement.

A "staple article of commerce suitable for substantial non-infringing use" is something that has uses other than as a component of the product or patented method. A substantial non-infringing use is one that is not occasional, farfetched, impractical, experimental, or hypothetical.

14

In determining whether or not the component is a staple article of commerce suitable for substantial non-infringing use, you should focus on whether the component itself, not the product in which the component is embedded, is or is not suitable for substantial non-infringing use. Whether the product in which the component is embedded is or is not suitable for substantial non-infringing use is not relevant.

## 5.4    Willful Infringement[17]

CCE contends that Defendants have willfully infringed the Asserted Claims. If you find on the basis of the evidence and the law as I have explained it that Defendants directly or indirectly infringes at least one of the Asserted Claims, then you must decide whether or not its infringement was willful.

Willfulness is not relevant to your decision of whether or not there is infringement. It is relevant only to the amount of damages, if any, and may, in certain circumstances, entitle the patent owner to increased damages. But it would be my job to decide whether to award increased damages to a patent owner, after you have rendered a verdict. You should not consider willful infringement in making your damage award, if any.

To prove willful infringement of a patent, CCE must persuade you by a preponderance of the evidence that Defendants had knowledge of the '820 patent and acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the Asserted Claims.  You must base any verdict of willful infringement on the knowledge and actions of Defendants during the time that the infringement occurred.  Infringement alone is not

---

[17] Adapted from Court's Charge, *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv- 80, Dkt. 376 (E.D. Tex. Mar. 15, 2010) and Jury Instructions, *Nortek Air Solutions LLC vs. Energy Labs Inc., et al*., Civil Action No. 5:14-cv-02919, Dkt. 328 (N.D. Cal. Aug. 4, 2016).

enough to prove willfulness and mere knowledge of the '820 patent during the time that infringement occurred is not enough to prove willfulness.

In deciding whether or not the alleged infringer committed willful infringement, you must consider all of the facts, including:

(1)     Whether or not the alleged infringer possessed a reasonable basis to believe that it has a substantial defense to infringement and reasonably believed that the defense would be successful if litigated, including the defense that the patent is invalid; and

(2)     Whether or not the alleged infringer made a good faith effort to avoid infringing the patent, for example, whether the alleged infringer took remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent.

**5.5 Means-Plus-Function[18]**

Some patent claim requirements may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's say that a patent describes a table in which the legs are glued to the tabletop. One way an inventor may claim the table is to recite the tabletop, four legs, and glue between the legs and the tabletop. Another way to claim the table is to recite the tabletop and the legs, but instead of reciting the glue, the inventor recites a "means for securing the legs to the tabletop." This second type of claim requirement is called a "means-plus-function" requirement. It describes a means for

---

[18] *See* The National Jury Instruction Project: Model Patent Jury Instructions § 3.9.

performing the function of securing the legs to the tabletop, rather than expressly reciting the glue.

When a claim requirement is written in or defined to be in means-plus-function form, it covers the structures or acts described in the patent specification for performing the function stated in the claim, and also any structure or act equivalent to the described structures. In my example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure to glue that performs the function of securing the legs to the tabletop.

Claim 12 of the '820 patent includes a requirement that has been defined as a means-plus-function requirement. In the glossary in your notebooks I have instructed you of the meaning of the requirement, explaining, first, the function that the means-plus-function claim requirement performs, and second, the structure disclosed in the patent specification that corresponds to the means-plus-function requirement.

To establish literal infringement of a means-plus-function patent claim, CCE must prove two things:

(1)     that the accused device employs a structure identical or equivalent to the structure described in the patent, and

(2)     that the relevant structure  in the accused device performs the identical function specified in the claim.

Where the structure in the accused device and the structure disclosed in the patent specification are not identical, CCE has the burden of proving that it is more probable than not

17

that the relevant structure in the accused device, as I have identified it for you, is equivalent to the disclosed structure in the patent.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether people of ordinary skill in the art believed that the structure of the accused product and the structure in the patent were interchangeable at the time the patent was granted by the PTO.

## 6.  Invalidity[19]

Patent invalidity is a defense to patent infringement. Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

Defendants have challenged the validity of the Asserted Patent Claims.  Defendants must prove that a patent claim is invalid by clear and convincing evidence. Evidence of prior art which was not reviewed by the PTO may be more probative of meeting this standard, than prior art which was reviewed by the PTO. An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing a patent.  From the issuance of the patent, it is presumed that a claimed invention is novel, useful and not obvious and satisfies the other legal requirements for a valid U.S. patent.  Each claim of a patent is presumed valid independently of the validity of the other claims.  The presumption of validity remains intact and the burden of proof remains on the parties, the Defendants, who are

---

[19] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

challenging validity throughout this litigation.  In other words, the burden never shifts to CCE to prove that its patent is valid.

For a patent to be valid, the invention claimed in the patent must be new, useful, and not obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. In addition, the patent must comply with certain statutory requirements of disclosure.

I will now explain to you Defendants' ground for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

## 6.1  Anticipation[20]

Defendants contends that all of the Asserted Claims of the '820 patent are invalid because they are anticipated or rendered obvious by one or more references in the prior art.  Defendants bear the burden of establishing anticipation by clear and convincing evidence.

A patent claim is invalid if the claimed invention is not new. For a claim to be invalid on the basis of anticipation because it is not new, all of its requirements must be present in a single previous device or method, or described in a single previous publication or patent. We call these things prior art. Defendants must prove by clear and convincing evidence that an item is prior art. The description in a reference does not have to be in the same words as the claim, but all the requirements of the claim must be there, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the field of technology of the patent at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one reference would be able to make and use the claimed invention.

---

[20] Adapted from Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art and if a skilled person would understand that to be the case.  Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient. A party claiming anticipation by inherency must show that the elements of the claim are always present in the prior art or always result from the practice of the prior art. You may not combine two or more items of prior art to make out an anticipation.

## 6.2   Anticipation by a Printed Publication[21]

I will now describe the specific requirements for the prior art categories relied on by Defendants in this case.

A patent claim is invalid if the invention defined by that claim was described in a printed publication anywhere in the world before it was invented by the patent applicant, or more than one year prior to the filing date of the United States patent application. CCE contends that the priority date for the '820 patent is no later than November 5, 2007, and that the effective filing date of the '820 patent is November 5, 2007.

Printed publications may include issued patents as well as articles, treatises, and other written materials.  A printed publication or patent will not anticipate unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed

---

[21] Adapted from Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

in the printed publication or patent; (3) the presence or absence of working examples in the printed publication or patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. The date that a printed publication becomes prior art is the date that it becomes available to the public. So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

## 6.3    Corroboration of Oral Testimony[22]

Oral testimony alone is insufficient to prove prior invention or that something is prior art or that a particular event or reference occurred before the filing date of the patent-in-suit. A party must provide evidence that corroborates any oral testimony, especially where the oral testimony comes from an interested witness, or a witness testifying on behalf of an interested party. This includes any individual or company testifying that his or its invention predates the patent-in-suit, and also includes a patent owner seeking to prove an earlier date of invention than the effective filing date stated on the face of the patent. Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the testimony has been corroborated, but corroborating evidence may also consist of

---

[22] *See* First Amended Joint Proposed Final Jury Instructions of  VirnetX and Apple, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 571 (E.D. Tex. Oct. 31, 2012); *see also* Court's Charge, *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv- 80, Dkt. 376 (E.D. Tex. Mar. 15, 2010).

testimony of a witness, other than an inventor, to the actual reduction to practice or it may

consist of evidence of surrounding facts and circumstances independent of information

received from the inventor.  If you find that the party has not corroborated the oral testimony

with other evidence, you are not permitted to find that the subject of that oral testimony

qualifies as prior art or supports a prior date of invention.

## 6.4    Obviousness[23]

In this case, Defendants contend that the Asserted Claims of the patent-in-suit are invalid

as obvious.  A patent claim is invalid if the claimed invention would have been obvious to a

person of ordinary skill in the field of the invention at the time the application was filed.  This

means that, even if all the requirements of the claim cannot be found in a single prior art

reference that would anticipate the claim or constitute a statutory bar to that claim, a person of

ordinary skill in the field of the invention who knew about all of the prior art would have come

up with the claimed invention.

But a patent claim composed of several requirements is not proved obvious merely by

demonstrating that each of its requirements was independently known in the prior art.  Although

common sense directs one to look with care at a patent application that claims as innovation the

combination of known requirements according to their established functions to produce a

predictable result, it can be important to identify a reason that would have prompted a person of

ordinary skill in the relevant field to combine the requirements in the way the claimed new

invention does.  This is so because inventions in most, if not all, instances rely upon building

---

[23] *See* First Amended Joint Proposed Final Jury Instructions of  VirnetX and Apple, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 571 (E.D. Tex. Oct. 31, 2012); *see also* The National Jury Instruction Project: Model Patent Jury Instructions § 5.9.

blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.  Teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestion, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

(1) Whether Defendants have identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concept from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness;

(2) Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way; and

23

(3) Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

(1) You should consider the level of ordinary skill, the definition of which has been agreed by the parties.

(2) You should consider the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference relied upon by Defendants is pertinent, or analogous, to the claimed invention.  Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

24

(3) You should consider any difference or differences between the prior art and the claim requirements.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

A.  Factors tending to show non-obviousness:

1.  commercial success of a product due to the merits of the claimed invention;

2.  a long-felt, but unsolved, need for the solution provided by the claimed invention;

3.  unsuccessful attempts by others to find the solution provided by the claimed invention;

4.  unexpected and superior results from the claimed invention;

5.  acceptance by others of the claimed invention as shown by praise from others in the field of the invention;

6.  licenses taken by others to use the claimed invention;

7.  disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious; and

8.  other evidence tending to show non-obviousness.

You may consider the presence of any of the factors A.1-8 as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.

B.  Factors tending to show obviousness:

1. independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

2. other evidence tending to show obviousness.

You may consider the presence of any of the factors B.1 and 2 as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

If you find that a claimed invention was obvious by clear and convincing evidence as explained above, you must find that claim invalid.

## 7.   Damages[24]

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. However, for purposes of answering this question, you should assume the patent is valid.

CCE seeks patent damages in the form of a reasonable royalty. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

A damages award should put the patent owner in approximately the financial position it would have been in had the infringement not occurred. You may not add anything to the amount of damages to punish the infringer, or to set an example.

---

[24] Adapted from Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

CCE has the burden to persuade you by a preponderance of the evidence that it suffered the damages it seeks. While CCE is not required to prove damages with mathematical precision, it must prove them with reasonable certainty. The patent owner is not entitled to damages that are remote or speculative.

## 7.1   Reasonable Royalty Definition[25]

A royalty is the amount of money a licensee pays to a patent owner to make, use or sell the patented invention. A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time of the infringement for a license to make the invention. It is the royalty that would have resulted from an arms-length negotiation between a willing licensor and a willing licensee. Unlike a real world negotiation, in the hypothetical negotiation, all parties are presumed to know that the patent is infringed and valid.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

The parties agree that the earliest date of the hypothetical negotiation between Defendants and CCE would have been in 2012 for Apple, AT&T, Sprint, and Verizon, and 2013 for T-Mobile.

---

[25] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first infringed the patent and the facts that existed at that time. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity. The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.

## 7.2   Reasonable Royalty Factors[26]

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner and the alleged infringer would consider in setting the amount the alleged infringer should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. The royalties received by the patentee for licensing of the patent-in- suit, proving or tending to prove an established royalty.

2. Royalties paid for other patents comparable to the asserted patents.

3. The nature and scope of the license, as exclusive or nonexclusive; or as restricted or nonrestricted in terms of territory, or with respect to the parties to whom the product may be sold.

---

[26] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

4.     Whether or not the licensor had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5.     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business, or whether they are inventor and promoter.

6.     Whether being able to use the patented invention helps in making sales of other products or services.

7.     The duration of the patent and the term of the license.

8.     The profitability of the patented invention, and whether or not it is commercially successful or popular.

9.     The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.    The extent of the licensee's use of the patented invention and any evidence probative of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profits that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by the licensee.

14. Expert opinions as to what would be a reasonable royalty.

15. The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which an accused infringer would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a patent owner if it would have been willing to create a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.

In determining a reasonable royalty, you may also consider whether or not Defendants had a commercially acceptable non-infringing alternative to taking a license from the patent holder that was available at the time of the hypothetical negotiations and whether that would have affected the reasonable royalty the parties would have agreed upon.

## 8.   Instructions for Deliberations[27]

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

---

[27] *See* Court's Final Jury Instructions, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 597 (E.D. Tex. Nov. 6, 2012).

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during trial. After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.