*Exhibit D*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | |
| Plaintiff, | Civil Action No. 6:14-cv-251 |
| v. | JURY TRIAL DEMANDED (Consolidated Lead Case) |
| APPLE INC., et al., | |
| Defendants. | |

**DEFENDANTS' PROPOSED FINAL JURY INSTRUCTIONS[1]**

---

[1] Defendants do not waive the right to request such additional or supplemental instructions as may be necessary in light of evidence and argument presented at trial as well as to address Defendant-specific issues as the case progresses.  By submitting these instructions, Defendants do not concede that there are any fact issues for the jury to resolve or that there is legally sufficient evidence to support the submission of any claims to the jury.  Defendants expressly reserve their rights to file motions seeking judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure.  Moreover, Defendants do not waive their rights to assert additional objections to the Court's instructions as provided for by Rule 51 of the Federal Rules of Civil Procedure. By offering competing instructions, Defendants note their objection to Plaintiff's proposed instructions.  Defendants will continue to meet and confer with Plaintiff as the trial progresses in an effort to address those objections, but they reserve their right to bring those objections to the Court for resolution.  Defendants respectfully reserve their right to object to any modification to their proposed instructions and expressly preserve all objections thereto.  Similarly, the Defendants respectfully reserve their right to object to the removal of any part of their proposed instructions.

1.    Introduction .......................................................................................................4

      1.1    General Instruction........................................................................5
      1.2    Considering Witness Testimony .................................................6
      1.3    How to Examine the Evidence .....................................................7
      1.4    Expert Witnesses............................................................................8
      1.5    Demonstrative Exhibits.................................................................9
      1.6    Confidential Information .............................................................10

2.    Contentions of the Parties ............................................................................11

3.    Burdens of Proof ...........................................................................................12

4.    The Claims .....................................................................................................14

      4.1    How a Patent Claim Defines What It Covers ...........................16
      4.2    Claim Interpretation...................................................................18
      4.3    Claim Interpretation: Means-Plus Function Claim .................19
      4.4    Level of Ordinary Skill ..............................................................20

5.    Infringement...................................................................................................21

      5.1    Direct Infringement.....................................................................22
      5.2    Direct Infringement of Claim 12 of the '820 Patent ...............24
      5.3    Literal Infringement....................................................................26
      5.4    Infringement of Dependent Claims............................................27
      5.5    Indirect Infringement – Active Inducement of Infringement ................28
      5.6    Indirect Infringement – Contributory Infringement.................30
      5.7    Willful Infringement ...................................................................32

6.    Invalidity ........................................................................................................34

      6.1    General Points.............................................................................35
      6.2    Anticipation.................................................................................37
      6.3    Anticipation by a Printed Publication .......................................39
      6.4    Obviousness .................................................................................41
      6.5    Improper Inventorship ................................................................44
      6.6    Derivation ...................................................................................45
      6.7    Indefiniteness ..............................................................................46

8.    Damages..........................................................................................................47

      8.1    Damages – Burden of Proof........................................................48
      8.2    Damages – Reasonable Royalty – Hypothetical Negotiation ................49

7.    51

7.1    51

7.2    51

7.3    Damages – Reasonable Royalty – Running Royalty v. Lump Sum Royalty.........51

7.4    Damages – Reasonable Royalty – Factors to Consider .......................................53

7.5    Damages – Reasonable Royalty – Fair, Reasonable, and Non-Discriminatory Terms ..........................................................................................55

9.     Instructions for Deliberations ..........................................................................................57

1.      **Introduction**[2]

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and argument of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in understanding the evidence and the parties' contentions.

---

[2]     Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

## 1.1   **General Instruction**[3]

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.

Follow the instructions in the verdict form and answer the questions based on the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.  With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[3]   Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

## 1.2    Considering Witness Testimony[4]

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.  You may give that evidence any weight you see fit.

Attorneys representing clients in courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence.  The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence.

So, you should not be influenced by an objection or by the Court's ruling on it.  If the objection is sustained, then ignore the question.  If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was discussed during such times.

In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness, the opportunity and ability of the witness to see or hear or know the things testified to; the witness's memory; the witness's manner while testifying; whether other evidence contradicted the witness's testimony; the reasonableness of the witness's testimony in light of all the evidence; and any other factors that bear on believability.

---

[4]    Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

1.3     **How to Examine the Evidence**[5]

Certain testimony in this case has been presented to you through a deposition.  This deposition testimony is entitled to the same consideration, and it is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.  Neither party is required to call every possible witness.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.  The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all the evidence, both direct and circumstantial.

---

[5]     Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

1.4     **Expert Witnesses**[6]

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he or she is called an expert witness) is permitted to state his or her opinion on those technical matters.  You are not required to accept that opinion, however.  As with any other witness, it is up to you to decide whether the witness's testimony is believable or not, whether it is supported by the evidence and whether to rely upon it.

---

[6]     Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

1.5     **Demonstrative Exhibits**[7]

Certain exhibits that were shown to you are illustrations.  We call these types of exhibits "demonstratives."  If a demonstrative was admitted into evidence, you may consider like any other evidence.  If a demonstrative was not admitted into evidence, but was a Party's visual depiction of what was admitted into evidence, it is the admitted evidence that ultimately controls. If your recollection of the evidence differs from the exhibit, rely on your recollection.

---

[7]     Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

1.6      **<u>Confidential Information</u>**[8]

During this trial, the attorneys have presented confidential information belonging to a person, party, or witness as evidence.  You are not to discuss or communicate any confidential evidence presented during this trial to anyone aside from the other jurors during deliberations, either during the trial or after the trial.

---

[8] Request from counsel for Nokia Corp. & Nokia Siemens Networks.

2.      **Contentions of the Parties**[9]

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on these issues.

Plaintiff Cellular Communications Equipment LLC ("CCE") contends that Defendants Apple, Inc., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Sprint Solutions, Inc., Sprint Spectrum, L.P., Boost Mobile, LLC, T-Mobile USA, Inc., and T-Mobile US, Inc. (collectively, "Defendants") infringe claims 4, 6, 10, 12, 17, 20, 21, and 24 (the "asserted claims") of U.S. Patent No. 8,055,820 ("'820 patent") by making, using, selling, and/or offering to sell in the United States Apple's iPhone 5, iPhone 5c, iPhone 5s, iPhone 6, iPhone 6 Plus, iPad 3, iPad 4, iPad Mini, iPad Mini with Retina display, and iPad Air (the "accused products" or "accused devices").  CCE also contends that each Defendant indirectly infringes the asserted claims of the '820 patent because each Defendant allegedly contributes to or induces infringement by consumers.  In addition, CCE claims that each Defendant's infringement was willful.  CCE seeks damages from Defendants for this alleged infringement.

In response to CCE's infringement allegations, Defendants contend that they do not infringe the asserted claims, either directly or indirectly.  Defendants further contend that they do not willfully infringe the asserted claims of the '820 patent.  Defendants further contend that the asserted claims are invalid as anticipated or rendered obvious by the prior art, or because the named inventors derived the inventions from others or the patent applicant omitted other inventors from the patent.  Defendants further contend that the asserted claims of the '820 patent are invalid for indefiniteness.    Defendants further contend that the '820 patent is not enforceable.  Finally, Defendants contend that CCE is not entitled to any damages.

---

[9]     Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

3.      **Burdens of Proof**[10]

In any legal action, facts must be proved by a required amount of evidence, known as the "burden of proof."   The burden of proof in this case is on CCE for some issues and on Defendants for other issues.   There are two burdens of proof in this case you will be asked to consider: preponderance of the evidence, and clear and convincing evidence.

CCE has the burden of proving infringement, willfulness, and damages by a preponderance of the evidence.   Preponderance of the evidence means the evidence persuades you that a fact is more likely true than not true.   Conversely, if you are not convinced, or if the evidence is ambiguous as to whether the fact has been established, then you must find against the party bearing the burden of proof by a preponderance of the evidence.

Defendants have the burden of proving invalidity and waiver of patent rights by clear and convincing evidence.   Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue.   Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.   If the proof establishes in your mind a firm belief or conviction, then the clear and convincing evidence standard has been met. Conversely, if you are convinced that a party's proof falls below clear and convincing, or if the evidence is ambiguous as to whether the fact has been established, then you must find against the party bearing the burden of proof of clear and convincing evidence.

---

[10]   Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016); Federal Circuit Bar Association Model Patent Jury Instructions (2012) at 57; *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1347-48 (Fed. Cir. 2011); *A.C. Auckerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992).

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

4.      **The Claims**[11]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The claims are important because the words of the claims define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

In this case, claims 4, 6, 10, 12, 17, 20, 21, and 24 are at issue.  Claims may describe apparatuses, devices, or products such as machines.  Such claims are called apparatus claims.  Claims may also describe processes or methods for making or using a product.  Those claims are called method claims.  In this case, CCE has asserted apparatus and method claims.  Specifically, asserted claims 12, 17, 20, 21 and 24 are apparatus claims, and asserted claims 4, 6 and 10 are method claims.

You will first need to understand what the claims cover in order to decide whether or not there is infringement of the claims, or whether or not the asserted claims are invalid.  If there is disagreement as to the meaning of a claim term, it is the Court's role to define the terms of the claim and it is your role to apply these definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have provided you with the definitions of certain claim terms in your jury notebook.  You must accept the definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issue of infringement.  However, as I explained

---

[11]   Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

at the start of the case, certain words or phrases in the claims have been determined to have their "plain meaning."  What that means is that for those words and phrases, you are to use the plain and ordinary meaning of the terms as understood by one of ordinary skill in the art, which is to say, in the field of technology of the '820 patent at the time of the invention.  The meaning of the words in the patent claims is the same for both the infringement and the validity determinations.

4.1     **How a Patent Claim Defines What It Covers**[12]

I will now explain how a patent claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or system satisfies each of these requirements, then it is covered by the claim.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.  Conversely, if the product, process, or system meets only some, but not all, of the claim elements or limitations, then that product or process is not covered by the claim.

---

[12]     Adapted from Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

4.2     **Claim Interpretation**[13]

I will now explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the asserted claims.  As I have previously instructed you, you must accept the definition of these words in the claim as correct. Again, however, as I have previously stated, those words and phrases identified as "plain and ordinary meaning," you are to use the plain and ordinary meaning of the terms as understood by one of ordinary skill in the art, which is to say, in the field of technology of the '820 patent at the time of the invention.

| Claim Term | Construction |
|---|---|
| "bandwidth" | [To be determined by the Court] |

For claim terms that I have not construed or defined, you are to use the plain and ordinary meaning of the terms as understood by one of ordinary skill in the art, which is to say in the field of technology of the patent at the time of the invention.

---

[13]   Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

4.3     **Claim Interpretation: Means-Plus Function Claim[14]**

Claim 12 of the '820 patent contains the phrase, "wherein the designating unit is configured to designate the long buffer status reporting format when there is sufficient uplink bandwidth to communicate using the long buffer status reporting format."  The "designating unit" is a special type of claim limitation in patent law known as a "means-plus-function" claim.

A means-plus-function element covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to at least one of the structures described in the patent for performing that function.  The issue of whether two structures are identical or equivalent is for you to decide.

I have identified the structures described in the patent that perform the functions identified in claim 12.  They are in your jury notebook.

---

[14] *See* Federal Circuit Bar Association Model Patent Jury Instructions, § 2.3(a) (2016).

4.4     **Level of Ordinary Skill**[15]

Several times in my instructions, I refer to a person of ordinary skill in the field of the invention.  In this case, a person of ordinary skill in the art of the '820 patent would be a person with a bachelor's degree in electrical or computer engineering or in computer science, and two years of direct technical experience in the design or implementation of communication networks, or equivalent experience and/or education.

---

[15]  Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

5.      **Infringement**[16]

I will now instruct you on the specific rules you must follow to determine whether CCE has proven that Defendants have infringed the asserted claims of the '820 patent.  If a person makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare the asserted patent claims, as I have defined each of them, to the accused products and determine whether or not there is infringement.  You should not compare the accused products with any specific example set out in the patent or with the prior art.  The only correct comparison is between the language of the claim itself and the accused products just as I've explained it to you.  You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by all of the parties.  The issue of infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another claim in the patent.

In this case, there are two possible ways that a claim may be infringed.  I'll explain the requirements of each of these types of infringement to you.  The two types of infringement are called direct infringement and indirect infringement.

---

[16]   Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016); Final Jury Instructions, *Core Wireless Licensing S.a.r.L v. Apple Inc.*, No. 6:12-cv-100, ECF No. 428 (April 9, 2015).

5.1   **Direct Infringement**[17]

To determine direct infringement for an apparatus claim, you must compare a Defendant's accused product with the asserted claims of the '820 patent, using my instructions as to the meaning of the patent claims.

Asserted claims 12, 17, 20, 21, and 24 are apparatus claims.  An apparatus claim is directly infringed only if the accused product includes each and every element in that patent claim, as I will instruct you shortly.  If the accused product does not contain one or more of the limitations recited in a claim, then that product does not directly infringe that claim.  If you find that the accused product includes each element or limitation of the claim, then that product infringes the claim even if such product contains additional elements that are not recited in the claim.

Asserted claims 4, 6, and 10 cover methods.  Offering a product, system, or service does not itself infringe a method claim. In order for a method claim to be directly infringed, CCE must prove that each step of the claimed method is actually performed.  The fact that a product or service is capable of an infringing use is insufficient to show infringement of a method claim.

When a claimed method is performed by computer software, CCE must show that a Defendant uses an accused device to perform each of the steps of the claimed method. Infringement requires performance of each step of the claim.  So the mere act of selling an accused device that includes software accused of performing the method claims cannot infringe those method claims, but proof of use of the software by a Defendant can infringe.  If a recited step is not performed, then the claim is not infringed.

---

[17]   Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

You must consider each of the asserted claims of the '820 patent individually to the accused product or process, and Defendant-by-Defendant.  You must compare such accused product with each claim that such product is alleged to infringe.

Taking each asserted claim separately, if you find that CCE has proved by a preponderance of the evidence that each and every element or limitation of that claim is present in the accused product or process, then you must find that such product or process infringes that claim.

5.2      **Direct Infringement of Claim 12 of the '820 Patent**[18]

As I have previously explained, claim 12 of the '820 patent contains an element that is stated in means-plus-function form.  In your jury notebook, the means-plus-function element is identified, as are the corresponding functions and structures as I have found them.

A product infringes a means-plus-function element of a claim if: (1) the product has a structure or a set of structures that performs the identical function recited in the claim; and (2) that structure or set of structures is either identical or "equivalent" to one or more of the structures I identified for you in your jury notebook as performing the function recited in this claim.

If the product does not perform the specific function recited in the claim, the "means-plus-function" element is not met, and the product does not literally infringe the claim.

In addition, if the product's structures perform the function recited in the claim but those structures are neither identical nor "equivalent" to the structures I identified for you in the jury notebook, then the product does not literally infringe the claim.

A product's structures may be found to be "equivalent" to the structures I identified for you in the jury notebook if (i) a person having ordinary skill in the field either would have considered the differences between them to be insubstantial at the time the patent issued, or (ii) if that person would have found the structures performed the function in substantially the same way to accomplish substantially the same result.  In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or

---

[18] Federal Circuit Bar Association Model Patent Jury Instructions, § 3.l(B) (2016).

sets of structures.   The interchangeability of the two structures also must have been known to persons of ordinary skill in that art at the time the patent issued.

As I instructed earlier, a person of ordinary skill in the art is a person with a level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

5.3    **Literal Infringement**[19]

The type of direct infringement alleged by CCE in this case is known as literal infringement. A claim limitation is literally met if it exists in the accused product or process just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as the language would be understood by a person of ordinary skill in the art.

---

[19]    Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

5.4      **Infringement of Dependent Claims**[20]

The '820 patent also contains independent and dependent claims.  An independent claim sets forth all the requirements that must be met in order to be covered by that claim.  It's not necessary to look at any other claim to determine what an independent claim covers.  In this case, claims 12 and 24 of the '820 patent are independent claims.

The rest of the claims are dependent claims.  Each dependent claim refers to an independent claim.  A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements.  In this case, claims 4, 6, and 10 are dependent on claim 1, and claims 17, 20, and 21 dependent on claim 12.

In order to find infringement of a dependent claim, you must first determine whether CCE has proven that a Defendant has infringed the associated independent claim or dependent claims.  If you decide that a Defendant has not infringed the independent claim, then that Defendant cannot have infringed the dependent claim.  If you decide that a Defendant has infringed the independent claim, you must then separately determine whether each additional requirement of the dependent claim has also been included in the accused product or performed in the accused process.  If CCE proves by a preponderance of the evidence that each additional requirement has been included, then that Defendant's product has infringed the dependent claim.  Conversely, if the accused product or process omits any additional requirement recited in CCE's asserted dependent claims, then the Defendant's product does not infringe that claim.

---

[20]  Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

## 5.5     Indirect Infringement – Active Inducement of Infringement[21]

CCE alleges that each separate Defendant is also liable for indirect infringement by actively inducing others to directly infringe the asserted claims of the '820 patent.  As with direct infringement, you must determine whether there has been indirect infringement by active inducement on a claim-by-claim basis and on a Defendant-by-Defendant basis.

Although CCE need not prove that a Defendant has directly infringed to prove indirect infringement, CCE must prove that someone has directly infringed. If there is no direct infringement by anyone, a Defendant cannot have actively induced the infringement of the patent. If you decide that someone directly infringes that claim, then you must further consider whether a Defendant is responsible for actively inducing that infringement.

A Defendant is liable for active inducement of a claim if CCE proves by a preponderance of the evidence that

1.    Acts are actually carried out by a Defendant's consumers using the accused products that directly infringe that claim.

2.    Defendant took action during the time the '820 patent was in force intending to cause the infringing acts by their consumers using the accused products; and

3.    Defendant was aware of or willfully blind to the patent and knew that the acts by its consumers, if taken, would constitute infringement of that patent, or that Defendant was willfully blind to the infringement of the patent.

To prove willful blindness, CCE must prove by a preponderance of the evidence that a Defendant had a subjective belief of a high probability that direct infringement exists and that the Defendant took deliberate acts to avoid learning of that direct infringement.  Negligence or even

---

[21]    *See* Amended Final Jury Instructions, *Core Wireless Licensing S.a.r.L. v. Apple Inc.*, No. 12-CV-100, 2016 WL 1752724 (E.D. Tex. Mar. 15, 2015); 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926–28 (2015); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754, 765–68 (2011).

recklessness as to the possibility of infringement on the other hand is insufficient to meet the intent requirement of inducement.  If you find that a Defendant was aware of the patent, but believed that the acts it encouraged did not infringe that patent, that Defendant cannot be liable for active inducement of infringement.  No Defendant has an affirmative duty to investigate an allegation that its consumers directly infringe the '820 patent.  If you find that a Defendant did not investigate an allegation that its consumers directly infringed the '820 patent, or "closed its eyes" or "buried its head in the sand" to such an allegation, the Defendant's failure to investigate the allegation is not sufficient for that Defendant to be liable for inducing infringement.  Rather, CCE must prove that a Defendant deliberately acted, with the subjective belief of a high probability that its consumers were directly infringing the '820 patent, to avoid learning of direct infringement by its consumers.

In order to establish active inducement of infringement, it is not sufficient that the other party or parties themselves directly infringe the claim, nor is it sufficient that a Defendant was aware of the acts by its consumers using the accused products that allegedly constitute the direct infringement.  Rather, you must find that CCE proved by a preponderance of the evidence that the Defendant specifically intended its consumers using the accused products to infringe the patent and must have known or was willfully blind that the action would cause the direct infringement.  If you do not find that the Defendant meets these specific intent requirements, then you must find that the Defendant has not actively induced the infringement.

A Defendant cannot be liable for inducing infringement if it reasonably believed that its actions or any alleged direct infringer's actions did not infringe the asserted claims.

5.6     **Indirect Infringement – Contributory Infringement**[22]

CCE alleges that each separate Defendant is also liable for indirect infringement by contributing to the direct infringement by others of the asserted claims of the '820 patent.  As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis and on a Defendant-by-Defendant basis.

Although CCE need not prove that a Defendant has directly infringed to prove contributory infringement, CCE must prove by a preponderance of the evidence that someone has directly infringed.  If there is no direct infringement by anyone, Defendants cannot have contributed to the infringement of the '820 patent.

If you find CCE has met its burden to prove that someone has directly infringed the asserted claims of the '820 patent, then contributory infringement exists if CCE establishes by a preponderance of the evidence that:

1.     the Defendant sold, offered for sale, or imported within the United States a component of the infringing product or an apparatus for use in the infringing process;

2.     the component or apparatus is not a staple article or commodity of commerce capable of substantial non-infringing use;

3.     the component or apparatus constitutes a material part of the patented invention;

4.     the Defendant had knowledge of the patent; and

5.     the Defendant knew that the component was especially made or adapted for use in an infringing product or method.

---

[22]     Adapted from First Amended Joint Proposed Final Jury Instructions of CCE and Apple, *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-00417, Dkt. 571 (E.D. Tex. Oct. 31, 2012); AIPLA Model Instructions, Patent Jury Instruction Handbook § 3.4; 35 U.S.C. § 271(c); *Commil USA, LLC v. Cisco Sys., Inc.,* 135 S. Ct. 1920, 1926–28 (2015); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754, 765–68 (2011); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 487–92 (1964).

A substantial non-infringing use is one that is not occasional, farfetched, impractical, experimental, or hypothetical.

A Defendant cannot be liable for contributory infringement if it reasonably believed that its actions or any alleged direct infringer's actions did not infringe the asserted claims.

## 5.7     **Willful Infringement**[23]

In this case, CCE argues both that each separate Defendant infringes and, further, that each separate Defendant infringed willfully the '820 patent.  If you find that a Defendant has infringed the '820 patent, you must next consider the issue of whether or not that infringement was willful.

To prove willful infringement, CCE must first prove by a preponderance of the evidence that a Defendant infringed a valid and enforceable claim of the '820 patent.  The requirements for proving such infringement were discussed in my prior instructions.

You must determine willful infringement on a Defendant-by-Defendant basis.  CCE must persuade you that a Defendant acted deliberately, willfully, wantonly, maliciously, or in bad faith.  You must base your verdict on the knowledge and actions of the Defendant at the time the infringement occurred.   Infringement alone is not enough to prove willfulness and mere knowledge of the '820 patent at the time of infringement is not enough to prove willfulness.  You should consider all of the circumstances including the motive or intent of the Defendant in developing and/or selling the accused products, whether the Defendant knew or should have known that its conduct was unreasonably risky and whether the Defendant had a reasonable

---

[23]   Adapted from the Court's Final Jury Instructions, *Nortek Air Solutions, LLC v. Energy Labs Inc.*, No. 5:14-cv-02919 (BLF), Dkt. No. 328 (N.D. Cal. Aug. 5, 2016); *see also See* 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).   Defendants contend that, under *Halo*, willfulness is an issue for this Court to decide and should not be submitted to the jury.  Therefore, Defendants do not believe that the jury instructions should address willfulness at all and that it would be prejudicial to do so in this case.  *But see WBIP, LLC v. Kohler Co.*, --- F.3d ----, 2016 WL 3902668, at *15 (Fed. Cir. July 19, 2016) ("We do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury.") (dicta).   At most, any jury instructions on willfulness should be advisory.

belief at the time of the alleged infringement that its products did not infringe any asserted claim of the '820 patent.

If you decide that any infringement was willful, that decision should not affect any damage award you give for infringement.  The Court will decide whether and how much to enhance your damages award for any willful infringement.

6.      **Invalidity**[24]

I will now instruct you on the specific rules you must follow to determine whether Defendants have proven that the asserted claims of the '820 patent are valid.

---

[24] *See* Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

6.1     **General Points**[25]

Patent invalidity is a defense to patent infringement.  Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

Defendants have challenged the validity of the claims of the '820 patent on a number of grounds.  Defendants must prove that a patent claim is invalid by clear and convincing evidence.

For a patent to be valid, the invention claimed in the patent must be new, useful, and not obvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made based on the prior art.  In addition, the patent must comply with certain statutory requirements for patentability.

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing a patent.  Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.  If a piece of prior art is not listed in the patent, then you may assume the examiner did not consider the reference during the course of examination.

The Patent Office can make mistakes and in addition, the Patent Office was not aware of all the information that was presented to you.  During this case, Defendants have submitted prior art that was not listed in the patent by the Patent Office during the prosecution of the '820 patent.  Defendants contend that such prior art invalidates certain claims of the '820 patent.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the Patent Office when it issued the patents-in-suit.  Prior art that differs from the prior art

---

[25]   Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

considered by the Patent Office may carry more weight than the prior art that was considered and may make Defendants' burden of showing that a patent claim is invalid by clear and convincing evidence easier to sustain.

I will now explain to you Defendants' grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

6.2     **Anticipation**[26]

Defendants contend that claims 4, 6, 10, 12, 17, 20, 21, and 24 of the '820 patent are anticipated by references in the prior art, including:

1.     U.S. Patent No. 8,687,565 (also referred to as "Chun"), 3GPP Proposal R2-074434, and 3GPP Proposal R2-074245;

2.     U.S. Patent No. 7,769,926 (also referred to as "Wu");

3.     U.S. Patent No. 8,031,655 (also referred to as "Ye");

4.     WO Pub. No. 2006/052086 (PCT/KR/2005/003792) ("Lee").

For a claim to be invalid because it is not new, all of its requirements must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, such previous publication or patent is called a "prior art reference."  If a patent claim is not new we say it is "anticipated" by a prior art reference. Defendants must prove a claim is anticipated by clear and convincing evidence. The disclosure in the prior art reference does not have to be in the exact same words as the claims of the patent in order to anticipate the claims.


Anticipation also occurs when the claimed invention inherently (necessarily) results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

For example, Defendants can show that a patent claim was not new if the claimed invention was already patented in another U.S. patent that was publicly available before the date of the patent holder's application filing date or the date of invention.  Defendants can also show that a patent claim was not new if the claimed invention was already described in a printed

---

[26]     Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

publication more than one year prior to the effective filing date of the patent, or if another person invented the subject matter claimed in the patent.

If a patent claim is not new as explained above, you must find that claim invalid.

6.3      **Anticipation by a Printed Publication**[27]

I will now describe the specific requirements for the prior art categories relied on by Defendants in this case.

A patent claim is invalid if the invention defined by that claim was described in a printed publication anywhere in the world before it was invented by the patent applicant, or more than one year prior to the effective filing date of the United States patent application.  The effective filing date of the application for the '820 patent is November 5, 2008.  That means a reference may be considered for purposes of anticipation if it was printed before November 5, 2007.

Printed publications may include issued patents as well as articles, treatises, and other written materials.  A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  The date that a printed publication becomes prior art is the date that it becomes available to the public.  So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

For a claim to be anticipated by a prior art publication, each of the claimed requirements must have been either (1) disclosed in a single prior art reference or (2) implicitly disclosed in a single prior art reference as viewed by one of ordinary skill in the field of the invention. The disclosure in a reference does not have to be in the same words as the claim, but all of the requirements of the claim must be described in enough detail, or necessarily implied by or

---

[27] Adapted from Court's Final Jury Instructions, *Ericsson Inc. v. D-Link Corp.*, No. 10-cv-473, 2013 WL 11578977 (E.D. Tex. June 12, 2013).

inherent in the reference, to enable someone of ordinary skill in the field of the invention looking

at the reference to make and use at least one embodiment of the claimed invention.

6.4    **Obviousness**[28]

In this case, Defendants contend that the asserted claims of the '820 patent are invalid as obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the application was filed.  This means that, even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention by, for example, combining different prior art references or by modifying a prior art reference.

A patent claim comprised of several known elements is not proved obvious merely by demonstrating that each of the elements was known.  Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, as of the priority date of the patent-in-suit, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account such facts as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements in the claimed inventions;

---

[28]  Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016); *see also* Final Jury Instructions, *Core Wireless Licensing S.a.r.L v. Apple Inc.*, No. 6:12-cv-100, ECF No. 428 (April 9, 2015); The National Jury Instruction Project:  Model Patent Jury Instructions § 5.9 *In re GPAC Inc.*, 57 F.3d 1573 (1995).

(4) whether the prior art teaches away from combining elements in the claimed invention;

(5) whether it would have been obvious to try the combination of elements, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified predictable solutions; and

(6) whether the change resulted more from the design incentives or other market forces.

In determining whether the claimed invention was obvious, consider each claim separately.  Consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that may shed light on non-obviousness, such as:

(1) whether the invention was commercially successful as a result of the merits of the claimed inventions, rather than the result of design needs or market pressure, advertising, or similar activities;

(2) whether the invention satisfied a long-felt need;

(3) whether others had tried and failed to make the invention;

(4) whether others copied the invention, understanding that there is no contention in this case that Defendants copied the patented technology;

(5) whether there were changes or related technologies or market needs contemporaneous with the invention;

(6) whether the invention achieved unexpected results;

(7) whether others in the field praised the invention;

(8) whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(9) whether others sought or obtained rights to the patent from the patent holder and a nexus exists between the merits of the invention and any licenses entered; and

42

(10) whether the inventor proceeded contrary to accepted wisdom
in the field.

In support of obviousness, you may also consider whether others independently invented the

claimed invention before or about the same time as the named inventor thought of it.

If you find that Defendants have proven obviousness by clear and convincing evidence,

then you must find that claim is invalid.

6.5     **Improper Inventorship**[29]

In this case, Defendants contend that the '820 patent is invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent.  This is known as the "inventorship" requirement.

To be an inventor, one must make a not insignificant contribution to the conception of at least one or more of the claims of the patent. Whether the contribution is not insignificant is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor.  Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.  What is required is some not insignificant contribution to the invention claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

---

[29] FCBA Model Patent Jury Instructions § B.4.3d.

6.6     **Derivation**[30]

I will now instruct you on derivation.  A person named as the inventor on a patent is not the true inventor if he "derived" the invention from others.  An invention is said to be "derived" from another person or group if that person or group conceived of the patented invention and communicated that conception to the inventor named on the patent.  To support derivation, the communication must have been sufficient to enable one of ordinary skill to make the patented invention.  If an inventor derived the patented invention from another, then the patent claims covering the invention are invalid.

In this case, Defendants contend that the asserted claims of the '820 patent are invalid because Benoist Sébire derived the invention claimed in the patent from others at the 3GPP RAN2 working group.

---

[30]   35 U.S.C. §102(f); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993).

6.7     **Indefiniteness**[31]

Patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of invention reading them is able to determine what the claims cover and what they do not cover with reasonable certainty. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the art in the field of the invention what the patent claims cover. Defendants contend that all of the asserted claims of the '820 patent are invalid because they are indefinite. If you find that Defendants have proven by clear and convincing evidence that the asserted claims are indefinite because a person or ordinary skill in the art would not understand what is, and what is not, covered by the claim with reasonable certainty, then you must find those claims invalid.

---

[31] *Accolade Sys., LLC v. Citrix Sys., Inc.*, No. 07-cv-00047, 2009 WL 1485250 (E.D. Tex. Apr. 17, 2009).

**7.     Damages**[32]

If you find that a Defendant has infringed any valid claim of the '820 patent, then you must consider what amount of damages to award to CCE.

I will now instruct you on the measure of damages.  You must determine the amount of money damages to which CCE is entitled only if you find that one or more Defendants has infringed at least one valid claim of the '820 patent.  By instructing you on damages, I do not suggest that one or the other party should prevail.  These instructions are provided to guide you on the calculation of damages in the event you find the asserted claims of the '820 patent are valid and infringed.

If, and only if, you find that a Defendant has infringed any of the asserted claims, then the damages you award must be adequate to compensate CCE for that Defendant's infringement, and it may not be less than a "reasonable royalty."  At the same time, your damages determination must not include additional sums to punish a Defendant or to set an example.  You may award damages only for the loss that CCE proved was more likely than not caused by the infringement.

---

[32] Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

**7.1     Damages – Burden of Proof[33]**

CCE has the burden to establish the amount of its damages by a preponderance of the evidence.  CCE must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, CCE is not entitled to damages that are remote or speculative.  In other words, you should award only those damages that CCE establishes that it more likely than not suffered.

---

[33]   Adapted from Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

## 7.2    Damages – Reasonable Royalty – Hypothetical Negotiation[34]

If you find that any asserted claim of the '820 patent is both valid and infringed, then CCE is entitled to damages adequate to compensate for the infringement of that patent, but not less than a reasonable royalty for any use made of the invention.  A royalty is the money a licensee pays to a patent owner to make, use or sell the patented invention.  A reasonable royalty is the amount of money a willing patent holder and a willing licensee would have agreed upon in an arms-length hypothetical negotiation for a license at the time the licensee first began infringing.

If you find that CCE met its burden on infringement as to more than one Defendant and that those Defendants began infringing at different times, each Defendant would attend a separate hypothetical negotiation with the patent holder at the time at the time it first began infringing (which could be no earlier than the date the '820 Patent issued on November 8, 2011).

[However, under the law, if an earlier hypothetical negotiation between CCE and Apple resulted in Apple acquiring a license to the '820 patent, its customers, including AT&T, Sprint,

---

[34]  Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016); Adapted from *EVM Sys. LLC v. Rex Medical L.P.*, Case No. 6:13-cv-184-RWS, Dkt. 210 (E.D. Tex. Aug. 24, 2015); *See* CAFC Model, § 6.6 (modified); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (*per curiam*); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) cert. denied, 130 S. Ct. 3324 (2010); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).; *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1360-62 (Fed. Cir. 2008); *Jacobs v. Nintendo of Am. Inc.*, 370 F.3d 1097 (Fed. Cir. 2004).

T-Mobile, and Verizon, cannot be liable for infringement and you may not award damages against them.][35]

Unlike a real world negotiation, in a hypothetical negotiation, you should assume that all parties to the hypothetical negotiation are presumed to believe that the patent is infringed and valid.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.   Evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.   You should presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation, and that the negotiated license would cover all infringement alleged by CCE.

---

[35] The bracketed language is proposed by AT&T, Sprint, T-Mobile, and Verizon.

7.3     **Damages – Reasonable Royalty – Running Royalty v. Lump Sum Royalty**[36]

A reasonable royalty can take the form of a running royalty or a fully paid-up, lump sum royalty.  A running royalty is a fee that is paid for the right to use the patent that is paid for each unit of the infringing product sold.  In other words, the licensee pays based on the volume of licensed products it sells.  By contrast, a fully paid-up, lump-sum royalty is paid by the accused infringer at the time of the hypothetical negotiation and covers all future infringement.  When a fully paid-up lump-sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.  If you find CCE is entitled to damages, you must decide whether the parties would have agreed to a running royalty or a lump sum royalty at the time of the hypothetical negotiation.

---

[36] Final Jury Instructions, *Core Wireless Licensing S.a.r.L v. Apple Inc.*, No. 6:12-cv-100, ECF No. 428 (April 9, 2015).

7.4     **Damages – Reasonable Royalty – Factors to Consider**[37]

In determining a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.   Some of the kinds of factors that you should consider in making your determination are:

(1) the royalties received by the patentee for licensing of the '820 patent proving or tending to prove an established royalty;

(2) the rates paid by a licensee for the use of other patents comparable to the '820 patent;

(3) the nature and scope of the license as exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to the parties to whom the manufactured products may be sold;

(4) the effect of selling the patented invention in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

(5) the duration of the patent and the term of the extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

(6) the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

---

[37] Final Jury Instructions, *Core Wireless Licensing S.a.r.L v. Apple Inc.*, No. 6:12-cv-100, ECF No. 428 (April 9, 2015); Model Patent Jury Instructions of the American Intellectual Property Law Association, § 11.23 (2015); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232-33 (Fed. Cir. 2014); *CSIRO v. Cisco Systems, Inc.*, Case No. 2015–1066, Slip. Op. at 15-19 (Fed. Cir. Dec. 3, 2015).

(7) the portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(8) the opinion and testimony of qualified experts; and

(9) the amount that a licensor, such as the patentee, and a licensee, such as the infringer, would have agreed upon at the time the infringement began, if both sides had been reasonably and voluntarily trying to reach an agreement – that is, the amount which a prudent licensee who desired as a business proposition to obtain a license to manufacture and/or sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider all of the evidence that has been presented to you in this case.  The framework which you should use in determining a reasonable royalty is a hypothetical negotiation between normally prudent business people.

In considering a reasonable royalty, you may also consider whether or not Defendants had a commercially acceptable non-infringing alternative to taking a license from the patent holder and whether that would have affected the reasonable royalty the parties would have agreed upon.

7.5 **Damages – Reasonable Royalty – Fair, Reasonable, and Non-Discriminatory Terms[38]**

When determining a reasonable royalty, you should consider the fact that the previous owner of the '820 patent, NSN, declared the '820 patent to be essential to the LTE standard and committed to license the patents on fair, reasonable, and non-discriminatory (also called FRAND terms) to the extent the patent is essential to the standard.  CCE assumed these obligations when it purchased the '820 patent from NSN.  The parties dispute whether or not the '820 patent is actually essential to the standard.  By referring to standard essential patents, the Court is not instructing you that the '820 patent is actually essential to any standard.  Again, it is up to you, the jury, to decide whether or not the patent is standard essential and infringed.

When dealing with standard essential patents, there are two special apportionment issues that arise.  First, the patented feature must be apportioned from all of the unpatented features reflected in the standard.  Second, the patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology.  These steps are necessary to ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology.  In other words, the patent holder should only be compensated for the approximate incremental benefit derived from his invention.

This is particularly true for standard essential patents.  When a technology is incorporated into a standard, it is typically chosen from among different options.  Once incorporated and

---

[38] Final Jury Instructions, *Core Wireless Licensing S.a.r.L v. Apple Inc.*, No. 6:12-cv-100, ECF No. 428 (April 9, 2015); Model Patent Jury Instructions of the American Intellectual Property Law Association, § 11.23 (2015); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232-33 (Fed. Cir. 2014); *CSIRO v. Cisco Systems, Inc.*, Case No. 2015–1066, Slip. Op. at 15-19 (Fed. Cir. Dec. 3, 2015).

widely adopted, that technology is not always used because it is the best or the only option; it is used because its use is necessary to comply with the standard.   In other words, widespread adoption of a standard essential technology is not entirely indicative of the added usefulness of an innovation over the prior art.

To ensure that a FRAND royalty reflects the incremental value of the patented technology, you must consider the following two factors in setting a FRAND royalty:

(1)      Any royalty for the patented technology must be apportioned from the value of the standard as a whole; and

(2)      The FRAND royalty must be based on the value of the invention, not any value added by the standardization of that invention.

In determining what amount is a FRAND royalty, you may consider any evidence of royalty stacking.

8.      **Instructions for Deliberations[39]**

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.   If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during trial.   After you have reached your verdict, your Foreperson is to fill in your answers to the questions on the verdict form.   Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  Your notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

---

[39]   Adapted from the Court's Final Jury Instructions, *Equistar Chem., LP v. Westlake Chem. Corp.*, No. 6:14-cv-68, Dkt. No. 200 (E.D. Tex. Mar. 11, 2016).

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

So **ORDERED** and **SIGNED** this __ th day of September, 2016.

_____