IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT, LLC. | § § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. 6:14-cv-251 |
| v. | § § | |
| APPLE INC. et al., | § § § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiff CCE's Motions to Preclude Defendants' experts, Dr. Anthony Acampora and Dr. Thomas Fuja from Offering Certain Opinions Regarding Invalidity.[1] (Docs. No. 117 & 118). For the reasons below, the motions are **DENIED**.

## BACKGROUND

CCE alleges that Apple, Inc. ("Apple"), and several mobile carriers[2] infringe U.S. Patent No. 8,055,820 ("the '820 Patent"). Doc No. 1[3]. The '820 Patent is directed to the process of selecting between long and short formats for buffer status reports. CCE accuses Defendants' Apple iPhone and iPad devices of infringing the '820 Patent. Defendants hired Dr. Anthony Acampora and Dr. Thomas Fuja as invalidity experts.

---

[1] This Order applies to CCE's motions to preclude certain opinions from both Dr. Acampora's (Doc. No. 151-3 (Ex. B)) ("Acampora Report") and Dr. Fuja's (Doc. No. 153-2 (Ex. 1)) ("Fuja Report") expert reports. Because both motions are similar, any analysis in this Order, unless otherwise indicated, applies to both motions.

[2] The carriers are AT&T Mobility LLC ("AT&T"), Cellco Partnership d/b/a Verizon Wireless, Sprint Solutions, Inc., Sprint Spectrum L.P., Boost Mobile, LLC, T-Mobile USA, Inc., and T-Mobile US, Inc. (collectively, "Carriers").

[3] Initially, CCE alleged infringement of multiple patents. The '820 Patent is the only one remaining.

**APPLICABLE LAW**

Under the Federal Rules of Evidence 702, an expert's testimony is admissible if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. Further, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting time; or needlessly presenting cumulative evidence. FED. R. EVID. 403. In applying these standards, district courts are charged to act as "gatekeepers" in order to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).

In *Daubert*, the Supreme Court recognized that the trial judge has a gate-keeping role to ensure that expert testimony is relevant and reliable. *Id.* at 589. The Court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93. The *Daubert* factors are not mandatory or exclusive; a court must decide whether the *Daubert* factors are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). To be admissible, an expert's opinion must be based on sufficient facts and a reliable methodology. *Id.*

**ANALYSIS**

CCE challenges Dr. Acampora's and Dr. Fuja's Invalidity Reports in three respects: (1) their reliance on claim interpretations and infringement theories with which they disagree; (2)

their opinions concerning obviousness combinations; and (3) their opinions concerning means-plus-function limitations.

### A. OPINIONS RELYING ON CLAIM INTERPRETATIONS AND INFRINGEMENT THEORIES WITH WHICH DR. ACAMPORA AND DR. FUJA DISAGREE

Plaintiff moves to preclude Dr. Acampora's and Dr. Fuja's invalidity opinions because they base them on CCE's interpretation of the term "bandwidth," with which the experts both disagree. Defendants respond that Dr. Acampora and Dr. Fuja offer alternative opinions in light of a claim scope issue regarding the term "uplink bandwidth." Both parties agreed at the hearing that once the Court resolves this claim construction dispute, this argument will be moot. The Court resolved the dispute. Doc. No. 254. Accordingly, any opinions inconsistent with the Court's construction are stricken, and this part of the Motions is **DENIED AS MOOT.**

### B. METHODOLOGY FOR OBVIOUSNESS COMBINATIONS

CCE next moves to strike Dr. Acampora's and Dr. Fuja's obviousness opinions as set forth in their Invalidity Reports, contending that the experts fail to "identify how, or why, any specific prior art references might be combined to satisfy the asserted claims." Doc. No. 117 at 5; Doc. No. 118 at 5.

Federal Rule of Civil procedure 26(a)(2)(b)(i) requires an expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." The Rule 26(a)(2) expert report requirements are designed to "give the opposing party a fair opportunity to evaluate the expert's qualifications, methodology, and conclusions and then determine how to proceed or respond." Fed. R. Civ. P. 26 Advisory Committee Note. "[A]lthough the report must state the substance of the expert's opinions and give the basis for them, the report does not need to contain each and every underlying factual detail." *Id.*

3

In the context of obviousness, generic expert testimony which is "conclusory and factually unsupported" will be insufficient under *Daubert* to reach a jury. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012). Specifically, "[t]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) (internal quotations omitted) (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)).

For example, in *ActiveVideo Networks, Inc. v. Verizon*, the Federal Circuit held that the following expert testimony on the motivation to combine was deficient as a matter of law:

> [Y]ou wanted to build something better. You wanted a system that was more efficient, cheaper, or you wanted a system that had more features, makes it more attractive to your customers, because by combining these two things you could do something new that hadn't been able to do before.

*ActiveVideo Networks,* 694 F.3d at 1328. The court noted that because the expert "failed to explain how specific references could be combined, which combination(s) of elements in specific references would yield a predictable result, or how any specific combination would operate or read on the asserted claims," the expert's testimony was conclusory and bore no relation to any specific combination of prior art elements. *Id.* at 1327.

Similarly, in *Innogenetics*, the expert's report on obviousness merely listed a number of prior art references and then concluded that "to one skilled in the art it would have been obvious to perform" the method claims of the Patent at issue. *Innogenetics*, 512 F.3d at 1373. The Federal Circuit noted that "[n]owhere does [the expert] state how or why a person ordinarily skilled in the art would have found the claims … obvious in light of some combination of those particular references," and emphasized that "[t]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Id.* at 1373 (internal quotations omitted).

Here, Dr. Acampora's and Dr. Fuja's reports sufficiently set forth the basis and reason for the conclusions that the asserted patents are obvious, such that they should go to a jury. First, the reports explain which specific combinations of prior art references support a finding of obviousness. Second, unlike the expert reports in *ActiveVideo* and *Innogenetics*, the experts proffer several reasons why a person of ordinary skill in the art would have been motivated to combine these specific references. For example, Dr. Acampora states:

> [I]t would have been obvious to combine the teachings in *Ye* and *Torsner*. Both references are directed towards developing a way to report buffer status that ensures that the necessary information regarding buffer status is communicated from a user equipment to the network to allow the network to properly allocate resources to the user equipment.

Acampora Report at 166-167. Similarly, Dr. Fuja opines:

> One of ordinary skill would have been motivated to combine the teachings of the *Lee* Application and the *Torsner* '666 Patent . . . because both references address the known problem of sending buffer status reports from a UE to the network to enable uplink scheduling in an efficient manner without wasting system resources, *i.e.*, minimizing signaling overhead for communicating such reports.

Fuja Report at 326-27.

Indeed, the Federal Circuit has held that where "references are sufficiently similar" to a problem, "there is a factual question whether a person of ordinary skill in the art would have looked to the teaching of those references" in seeking to solve that particular problem. *Commonwealth Sci. & Indus. Research Org. v. Buffalo Tech. (USA) Inc.*, 542 F.3d 1363, 1375-76 (Fed. Cir. 2008).

Overall, both Dr. Acampora's and Dr. Fuja's reports provide "some articulated reasoning with some rational underpinning" and adequately set forth the basis and reasons for their conclusions that the asserted patents are obvious. *Innogenetics*, 512 F.3d at 1373. Thus, there is a factual issue as to the motivation to combine the prior art references such that these opinions

should go to a jury. Accordingly, CCE's motions to strike the obviousness opinions of Dr. Acampora's and Dr. Fuja's invalidity reports, are **DENIED.**

### C. OPINIONS CONCERNING MEANS-PLUS-FUNCTION LIMITATIONS

CCE asks the Court to preclude Dr. Acampora and Dr. Fuja from offering opinions or testimony that asserted Claim 12 and its dependent claims are invalid because they never identify where, or how, any specific reference satisfies the structural elements of claim 12's "designating unit."

Under Federal Circuit law, where a patent challenger seeks to demonstrate that a means-plus-function limitation is present in the prior art, "a structural analysis is required when means-plus-function limitations are at issue; a functional analysis alone will not suffice." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009) (citing *CytoLogix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1178 (Fed. Cir. 2005)). The challenger "must prove that the corresponding structure—or an equivalent—was present in the prior art." *Fresenius*, 582 F.3d at 1299 (citing *In re Donaldson Co.*, 16 F.3d 1189, 1193 (Fed. Cir. 1994) (en banc)).

For instance, in *Fresenius*, the claim at issue ("means for delivering an anticoagulant to a patient") contained two corresponding structures: a microprocessor and a stepper motor. The court ruled that where *Fresenius* "failed to present any evidence that the required stepper motor structure existed in the prior art," it did not meet its burden to "clearly disclose, discuss, and identify for the jury the supporting evidence upon which it was relying to prove that the claim limitation was present in the prior art." Similarly, in *Koito Mfg. Co., Ltd. V. Turn-Key-Tech, LLC*, the Federal Circuit held that the patent challenger failed to meet its burden of proving a prior art reference anticipated the patent claims when it "failed to provide *any testimony or other*

*evidence* that would demonstrate to the jury how that reference met the limitations of the claims". *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1151 (Fed. Cir. 2004).

Plaintiff contends Dr. Fuja and Dr. Acampora do not point to any evidence that any reference discloses both the "designating unit 260" and the "uplink capacity detecting unit 240."[4] Defendants respond that Dr. Fuja's treatment of "uplink capacity detecting unit 240" and "designating unit 260" as software functions or modules (that are part of a processor that executes these functions) is sufficient to withstand exclusion as a matter of law.

Here, Dr. Acampora's and Dr. Fuja's testimony that both the "uplink capacity detecting unit 240" and "designating unit 260" structural elements are disclosed in the prior art is sufficient to withstand exclusion as a matter of law. As Defendants note, this approach is consistent with the court's construction, which allows both the "uplink capacity detecting unit 240" and the "designating unit 260" "to be implemented in hardware, or software." Doc. No. 363, at 31-32. This approach is also consistent with the '820 Patent's specification, which states that the units "may also be implemented in software for execution by various types of processors" and "need not be physically located together." Doc. No. 153-4 (Ex. 3) ("'820 Patent at 7:23-24, 7:28-29). The common thread running through *Fresenius* and *Koito* is that the challenger must present *some evidence* to show a jury that the prior art reference anticipates the patent claims, including its corresponding structural elements.

Unlike *Fresenius*, where the challenger "cited no testimony wherein any witness discussed a 'stepper motor'" (apart from a manual's brief reference to a "stepper motor," unrelated to the context of the claimed function), Dr. Fuja opines that "the references' disclosures discussed in Claim 12, Element 1 above disclose a designating unit as construed by

---

[4] Plaintiff also argues that Dr. Fuja fails to provide analysis as to how any prior art reference meets any of the algorithms set forth in the '820 Patent. Apart from this single statement, CCE does not provide any support for this assertion in its motion. As such, the statement is unpersuasive.

the Court." *Fresenius*, 582 F.3d at 1300; Fuja Report at 289.[5] Dr. Fuja further opines that "the corresponding structure to the designating unit function is 'hardware (e.g., a baseband processor) and/or software (e.g., baseband software and related drivers) configured to' perform the claimed function." *Id* at 288. Dr. Fuja also includes specific examples of references that disclose a processor, memory, and computer program code that can implement the "designating unit" of claim 12. *Id.*at 277-79.[6] It is for the jury to decide whether in fact what the experts reference is sufficient to render the claims invalid. Defendants have met their evidentiary burden under *Daubert*, such that this testimony is sufficient to go to a jury.

Accordingly, CCE's motions to strike Dr. Acampora's and Fuja's opinions on means-plus-function limitations are **DENIED.**

## CONCLUSION

CCE's Motions (Docs. No. 117 & 118) are **DENIED-IN-PART.** Any opinions inconsistent with the Court's Claim Construction are excluded. The rest of the Motions are **DENIED.**

So ORDERED and SIGNED this 30th day of August, 2016.

_K. Nicole Mitchell_
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[5] Dr. Acampora similarly opines that the Defendants' asserted prior art references contain hardware and software that can perform an algorithm capable of carrying out the function of the claimed "designating unit." Acampora Report at 128-139.

[6] Dr. Fuja states in his expert report that Chun "explicitly discloses '[a] computer program product comprising a computer readable storage structure embodying compute code thereon for execution by a computer processor, wherein said computer comprises instructions for performing [the disclosed] method." Fuja Report at 277.