1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF TEXAS
2                             TYLER DIVISION

3
   CELLULAR COMMUNICATIONS        )
4  EQUIPMENT, LLC
                                  )   DOCKET NO. 6:14cv251
5
       -vs-                       )
6                                     Tyler, Texas
                                  )   1:48 p.m.
7  APPLE INC., ET AL                  September 13, 2016

8
                        TRANSCRIPT OF TRIAL
9                       AFTERNOON SESSION
              BEFORE THE HONORABLE K. NICOLE MITCHELL,
10                 UNITED STATES MAGISTRATE JUDGE

11                   **A P P E A R A N C E S**

12  FOR THE PLAINTIFF:

13  MR. BRADLEY W. CALDWELL
    MR. JOHN AUSTIN CURRY
14  CALDWELL CASSADY & CURRY
    2101 Cedar Springs Rd., Suite 1000
15  Dallas, Texas 75201

16  MR. EDWARD R. NELSON III
    NELSON BUMGARDNER PC
17  3131 West 7th Street, Suite 300
    Fort Worth, Texas 76107
18
    MR. J. WESLEY HILL
19  WARD, SMITH & HILL PLLC
    1507 Bill Owens Parkway
20  Longview, Texas 75604

21
    COURT REPORTER:       MS. CHRISTINA L. BICKHAM, CRR, RMR
22                        FEDERAL OFFICIAL COURT REPORTER
                          300 Willow, Ste. 221
23                        Beaumont, Texas 77701

24
    Proceedings taken by Machine Stenotype; transcript was
25  produced by a Computer.

```
 1   FOR THE DEFENDANTS:

 2
     MR. DOUGLAS E. LUMISH
 3   MR. JEFFREY G. HOMRIG
     MS. LISA K. NGUYEN
 4   MR. BRETT M. SANDFORD
     LATHAM & WATKINS LLP
 5   140 Scott Dr.
     Menlo Park, California 94025-1008
 6
 7   MR. JOSEPH H. LEE
     LATHAM & WATKINS LLP
 8   650 Town Center Drive, 20th Floor
     Costa Mesa, California 92626-1925
 9
10   MR. ERIC H. FINDLAY
     FINDLAY CRAFT PC
11   102 N. College Avenue, Suite 900
     Tyler, Texas 75702
12

13

14              ******************************

15                  P R O C E E D I N G S

16          (Jury in.)

17          THE COURT:  Mr. Homrig, you may proceed.

18          MR. HOMRIG:   Thank you, Your Honor.

19          And I apologize, but I would like to ask to seal

20   the courtroom, please, because I think -- hopefully, for me,

21   for the last time.

22          THE COURT:  All right.  We're going to seal the

23   courtroom.  If you're not under the Court's protective order,

24   please leave.  We'll let you know when you can come back.

25          MR. HOMRIG:  Thank you, Your Honor.
```

1          THE COURT:  Uh-huh.

2          (Courtroom sealed.)

3          (This portion of the transcript is sealed and filed

4          under separate cover as Sealed Portion No. 18.)

5          (Courtroom unsealed.)

6          THE COURT:  And -- well, do you think he's on his

7   way as in walking down the hall or --

8          MR. LUMISH:  I think he's in the building.  I think

9   he should be here any second.

10          THE COURT:  Okay.  We'll wait.

11          MR. LUMISH:  Here he is, my colleague is here.

12          THE COURT:  Oh, good.  Just in time.  I was going

13   to take a recess.

14          MR. HILL:  Can -- can I ask a clarification, Your

15   Honor, before we start this?

16          My understanding is, is that the Court will allow

17   us to file written Rule 50 motions as well?

18          THE COURT:  I will.

19          MR. HILL:  We're going to present to the Court a

20   very summary fashion of just our issues.  And then, of

21   course, we have one in particular we may call out in a little

22   more detail.  But we also want to take the opportunity that

23   the Court has given us to file more fulsome arguments and

24   motions, legal precedent, in -- in the written form.

25          THE COURT:  Yes.  The Court will allow that.

1    And I'm -- I'm giving you time to argue them orally.  You

2    may.  You do not have to.  I will accept them on the papers.

3              You just had indicated this morning that in

4    particular there was one that you all might want to take up,

5    and I'm happy to hear it.

6              MR. LUMISH:  I guess, Your Honor, we're going to

7    file papers as well, and we would do that today.  It might

8    make sense to argue them all at one time instead of

9    piecemeal.  I'll leave that to, Your Honor.

10             THE COURT:  All right.  Well, we can argue them

11   first thing in the morning.  You're saying do it in the

12   morning?  Is that what you're offering?

13             MR. HILL:  Your Honor, we would prefer to close in

14   the morning, get our jury deliberating, get that going.

15             Now, if the Court wants to hear argument on it,

16   provided they're filed in advance of the jury actually being

17   charged, I think we're okay from a preservation standpoint.

18   We could hear argument at any point, I believe.

19             THE COURT:  Yeah, I agree.

20             MR. LUMISH:  That's fine.

21             THE COURT:  Okay.

22             MR. LUMISH:  The only thing I would say, Your

23   Honor, they filed our papers in the middle of the night.

24   We've had them.  We've done our best to get ready for them.

25   We may not be as prepared as we would like to be.  We'd ask

 1   you to take that into account as we go.

 2             THE COURT:  No problem.

 3             Okay.  But I'm still not clear on what y'all want

 4   right now, to argue or not?

 5             MR. LUMISH:  I think they're saying they want to

 6   argue their motion.

 7             MR. HILL:  Yeah, Your Honor, with regard to the

 8   inventorship issue, we do think that that could be a material

 9   point for closing, particularly if it's going to be a JMOL

10   issue the Court entertains.  And so I do think we want to go

11   ahead and present on that.

12             THE COURT:  Okay.  Let's hear it.

13             MR. HILL:  Thank you.  Mr. McManis will address the

14   issue for Plaintiff.

15             THE COURT:  Okay.

16             MR. MCMANIS:  Good afternoon, Your Honor.

17             From opening statements in this case Apple has

18   attempted to cast a cloud over the legitimacy of Mr. Sebire's

19   inventorship of the '820 patent.  But the evidence that Apple

20   has presented on this issue is insufficient as a matter of

21   law to support any challenge to Mr. Sebire's sole

22   inventorship.

23             No reasonable jury, based on the evidence in this

24   case, would have a legally-sufficient basis to find for Apple

25   on the issues of improper inventorship and derivation.

1          Apple has not identified any individual that it

2    claims is the true inventor of any claims for the '820

3    patent, or a co-inventor of any claims for the '820 patent.

4          Apple has not identified any actual claims that it

5    contends this unknown inventor contributed to or conceived

6    of.

7          And Apple has not identified an idea that was

8    communicated to Mr. Sebire in order to create that

9    contribution.

10          So, really, this is an issue that the evidence that

11   Apple has put on, it's legally insufficient; and allowing

12   these issues to go to the jury would invite legal error.

13          Going to the first issue, the issue of no inventor,

14   we cited a case in our brief filed last night, Oasis.  And in

15   that brief Judge Mazzant had a verdict form that actually

16   required the jury to write down the name of the putative

17   inventor, or if they found the inventorship -- the improper

18   inventorship claim to be proven, to write down the name of

19   the person they found to be the true inventor or the

20   co-inventor.

21          And the reason for that is that the law requires

22   identification of an actual person to be the putative

23   inventor.  Conception is a mental act, and it requires a

24   person.  It's not something that can be put together from a

25   group of documents.  It's not something that can be

1    attributed to a company.  And that was actually ruled on by

2    Judge Davis in z4 v. Microsoft, that Microsoft itself could

3    not be the true inventor of the claims in that case.

4           The closest Apple has come in this case to

5    identifying a putative inventor is Dr. Stattin.  He took the

6    stand and was asked repeatedly, at least three or four times

7    by Mr. Caldwell, whether he was claiming to be an inventor of

8    any claims of this patent.

9           And what he said is that he doesn't know; that's

10   not his responsibility; and that he couldn't answer that

11   question because he had never actually seen the claims of the

12   patent.

13          The other name that was introduced through the

14   testimony of Dr. Stattin was Dr. Peisa, his colleague at

15   Ericsson.  Mr. Caldwell asked whether Dr. Stattin believed

16   that Dr. Peisa invented claims of the '820 patent.  And he

17   responded that he didn't know.

18          If -- if Your Honor were to submit a verdict

19   form -- if the jury were to be asked who the actual true

20   inventor was on Apple's improper inventorship or derivation

21   claims, there's literally no evidence in the record that the

22   jury could look to to answer that question.  And submitting

23   that question to the jury without answering that -- that base

24   question of who the putative inventor would be, would be

25   legal error.

1            The second problem is there's been no

2    identification of the claims that were allegedly contributed

3    to by this unknown inventor or were derived from this unknown

4    inventor.

5            If -- if you look through the record, Apple

6    compared Claim 1 to the joint proposal on cross-examination

7    of Mr. Sebire, but Apple has never contended at any point in

8    this case that the joint proposal anticipated Claim 1.  They

9    have never highlighted Claim 1 in their -- their clever

10   highlighting they've put up with the specification.

11           And -- and Dr. Acampora agreed today -- and we

12   heard from Dr. Stattin -- that Proposal 6 in the joint

13   proposal doesn't actually disclose how to select between long

14   and short.  And that, frankly, is unequivocal testimony from

15   multiple witnesses that that's not sufficient to disclose

16   Mr. Sebire's invention.

17           Dr. -- or excuse me, Mr. Sebire was asked a couple

18   of times about Claims 8 and Claims 19 related to 6-bit buffer

19   size and whether he was claiming to have invented 6-bit

20   buffer size.

21           But, once again, Apple has failed in identifying

22   that anyone gave the idea of 6-bit buffer size to Mr. Sebire.

23           And really I think it's -- most of us feel it's

24   illustrative that -- if you'll recall the cross-examination

25   of Mr. Sebire as Mr. Lumish was crossing out individual

1    elements of the claim, that Mr. Sebire's response was that

2    the invention has to be taken as a whole.  And that's true.

3            To -- to get at this issue of conception on the

4    defense of improper inventorship or derivation, you cannot be

5    the true inventor or a co-inventor by contributing something

6    that's in existence in the prior art.  So simply because

7    there's another idea that may have been added on to

8    Mr. Sebire's claims, that is not evidence of conception of

9    the whole invention.

10           So even if you were to spot Apple, the -- the issue

11   of there was another inventor who gave this idea, there is

12   still no evidence in the record that this idea wasn't known

13   in the prior art.  And we know from Federal Circuit case law

14   that that -- you have to prove that it wasn't something that

15   was already in the prior art to satisfy your clear and

16   convincing evidence burden.

17           The last point, Your Honor, is that there was no

18   idea communicated to Mr. Sebire that would qualify for a

19   contribution to a claim or from which he could have derived

20   the inventions claimed in the '820 patent.

21           The evidence that Apple showed to the jury from

22   Dr. Stattin in the Ericsson presentations, it establishes

23   nothing other than that the RAN2 Working Group was

24   collaborating on ideas, and together they had identified a

25   problem, and they were working to solve that problem.

1          And Judge Mazzant, in Oasis, was presented with a

2     very similar issue.  And looking at these documents, he noted

3     that all these documents reflected was group collaboration,

4     the identification of a problem; but they didn't have an

5     actual -- actual solution.  And without an actual solution,

6     there can be no defense of improper inventorship or

7     derivation.  It fails.

8          THE COURT:  Did he still send it to the jury,

9     though, based on your earlier comments about the verdict

10    form?

11         MR. MCMANIS:  He -- he did send it to the jury.

12    And then based on the verdict that was returned in grant --

13    or in favor of the defense, he granted JMOL for the plaintiff

14    and ordered a new trial.

15         So after submitting it to the jury on that

16    evidence, he concluded that that was legal error.  And he

17    undid that decision.

18         And, as Your Honor may recall, Dr. Stattin himself

19    admitted that there were unanswered questions left in the

20    documents.  I think the evidence is clear that there was no

21    answer.  There was no answer in Proposal 6.  The statements

22    in the Ericsson presentations were specifically called out by

23    Dr. Stattin himself as leaving unresolved questions.

24         So I think what we have here is we have -- Apple

25    has lodged these allegations.  They're vague and

1    unsubstantiated by the evidence at this point.  And it's --

2    it's an attempt to color the jury's obviousness determination

3    for the reference that they did present.

4          The proof that they have presented on these issues

5    is insufficient.  And the reason it's insufficient is because

6    there are four foundational questions that Apple cannot

7    answer by pointing to the record evidence.

8          The first of those questions is:  Who does Apple

9    actually contend should be the inventor or a co-inventor with

10   Mr. Sebire on the '820 patent because inventorship requires a

11   natural person to be the inventor?

12         The second question is:  What claims of the '820

13   patent does Apple contend this putative inventor conceived of

14   or contributed to?

15         And Apple has not answered that question.

16         The third is:  What is the idea that Apple contends

17   was communicated to Mr. Sebire?

18         And then the fourth question is:  When and how was

19   the idea communicated to Mr. Sebire?

20         And, Your Honor, unless Apple can answer these four

21   questions by pointing to record evidence that the jury can

22   consider, it cannot satisfy its clear and convincing burden;

23   and judgment as a matter of law is appropriate.

24         Thank you.

25         THE COURT:  Okay.

1          MR. HILL:  Your Honor, may I add one point before a

2   response, to Mr. McManis' comments?

3          THE COURT:  Yes.

4          MR. HILL:  And it has to do with the question the

5   Court asked about what did Judge Mazzant do in this

6   circumstance.

7          And the fact is, Judge Mazzant submitted the issue

8   and they returned -- it was a defense verdict returned.  And

9   then he granted a JMOL after the fact reversing that verdict

10   and ordering a new trial.

11          Your Honor, the reason we believe it's so important

12   that the Court take this issue up now and make a decision, if

13   you're going to grant a JMOL, do it pre-verdict, not

14   post-verdict, because it's the pragmatic point of in a motion

15   for new trial, or in a post-verdict renewal of a JMOL, all

16   the Court can do is take away.  The Court can't give back.

17          And so if what happens here is the Court submits a

18   defense that's not based in the record, and the jury were to

19   return a verdict on that defense, it's returned an improper

20   verdict.  We're going to have to retry this case, retry

21   damages, retry everything.

22          If the Court believes that issue is improperly

23   included, and you leave it out, and then the Court -- the

24   jury returns a verdict and we get a damage award in that

25   instance, you at least have something that can be dealt with

1    even if you were to make a decision post-verdict about this

2    issue.

3          You have a way to maintain a record.  It's -- it's

4    an opportunity for the Court, if you need to take away a

5    verdict, you can take away a verdict, a damages award.

6          But if you submit it on the front end, and it is --

7    it's submitted improperly, it has two potential effects:

8          One, no way to fix it and we have to retry a case

9    unnecessarily; and then number two, Your Honor, what it does

10   is submitting defenses that are not based in the record has

11   the ancillary impact, we know from jury research, of reducing

12   damages awards because it's part of the compromise process

13   that often goes on in a jury room.  Someone may get over the

14   hurdle on an improper defense, but the trade-off for getting

15   over that hurdle is a -- a insistence on a compromised damage

16   verdict.

17         And so we believe that it infects a potential jury

18   decision not just on the merits of the inventorship claim but

19   in other issues in the case if it's improperly submitted.

20         THE COURT:  Mr. McManis, where did you go?

21         Let me ask you a follow-up question.  You all then

22   sort of -- you haven't been conflating, but you've been sort

23   of using "inventorship" and "derivation."  I mean, are these

24   separate things?  Are you asking the Court to get rid of both

25   of those theories?  Are they separate?

1          MR. MCMANIS:  Your Honor, we are asking for both

2   defenses to be removed.  The key issue with respect to these

3   and the failure of Apple's proof has to do with

4   identification of an actual inventor or a co-inventor, the

5   contribution of an idea to any of the -- any of claims of --

6   of the '820 patent.  And the key issue is -- is conception

7   for both defenses.

8          So because of the proof that Apple lacks, both

9   defenses would fail in this case.

10          THE COURT:  Okay.  Response.

11          MR. BELL:  Good afternoon, Your Honor.  Gabriel

12   Bell for Apple.

13          I'd like to go directly to Your Honor's question to

14   opposing counsel; I think it is exactly the right one

15   because we saw in -- excuse me -- CCE's motion where they did

16   do that, conflating of derivation and improper inventorship;

17   and those are very distinct issues in the following respect,

18   in two ways:

19          The first, CCE says that there must be a

20   communication of an entire invention -- complete invention,

21   excuse me, on Page 7 of their motion; and that, that relates

22   to derivation, not to inventorship.

23          The case law is very clear that with respect to

24   inventorship, you do not need to contribute to the entire

25   invention.

 1          If you take, for example, the case of Ethicon --

 2   and that's at 135 F.3d 1456, in that case the Court made very

 3   clear that contribution to one claim is enough.  And not even

 4   the entire claim.  So in that case the issue was whether the

 5   contribution of a single element of one claim was enough

 6   to -- excuse me -- to sustain an inventorship defense as to

 7   all claims.  And the Court in that case said it was.

 8          THE COURT:  So do you have -- do you have evidence

 9   of -- that would support a derivation defense?  In other

10   words, of -- derivation of the entire invention or invention

11   of the entire thing claimed?

12          MR. BELL:  Right.  So we think we do, although we

13   think it's a closer question than inventorship.  We think the

14   derivation evidence, it stems from the same set of facts and

15   the same evidence.

16          It takes a little bit more inference in terms of

17   the circumstantial evidence.  You have to look at the overall

18   nature of the Ericsson initial slides, the working group that

19   happened, the product that came out of that group, and

20   ultimately, the provisional application that was filed around

21   the same time.

22          So it takes a bit more inference to get there for

23   derivation, and so that's why I say it's a closer question,

24   but we think there is sufficient evidence.

25          And so I would point Your Honor also to the Federal

1    Circuit case Fina Oil, which is at 123 F.3d 1466, which

2    further supports what we're saying.

3            Here -- here is what the Court said:  A joint

4    invention is simply the product of a collaboration between

5    two or more persons working together to solve the problem

6    addressed.  And also to be a joint inventor, an individual

7    must make a contribution to the conception of the claimed

8    invention that is not insignificant in quality when that

9    contribution is measured against the dimension of the full

10   invention.

11           So when we look at these two cases, particularly

12   Fina Oil and Ethicon, I think it's very clear that at a

13   minimum Apple has submitted unequivocal testimony by

14   Dr. Stattin that the idea of doing a long or short buffer

15   status report, based on whether there is data in one LGC or

16   multiple LGCs, was not Dr. -- excuse me -- was not

17   Mr. Sebire's idea.  It was contributed by members of

18   Ericsson, according to Dr. Stattin.

19           THE COURT:  He testified to that, that there are --

20           MR. BELL:  Yes, he did.

21           THE COURT:  Did he name them?

22           MR. BELL:  They were named elsewhere in his

23   testimony.  He talked about a Janne Peisa.  I don't know if

24   I'm pronouncing it correctly.  But that individual was an

25   Ericsson employee that was mentioned.

1          And I think what Your Honor is getting at is a

2    second item I wanted to take up with respect to their

3    proposed standard, and that is this notion that you have to

4    name an exact person.  And we would contend that that is both

5    wrong on the law and wrong on the facts here.  And if I could

6    explain those two points.

7          So the statute we're dealing with is Section

8    102(f).  That's what gives rise to both derivation and

9    inventorship.  And here is what it says.  It says:  A patent

10   is invalid if the named inventor, quote, did not himself

11   invent the subject matter sought to be patented.

12         So the focus here is on whether or not Mr. Sebire

13   is the inventor.  So we have to show by clear and convincing

14   evidence that under the statute, that he was not.  There --

15   there is nothing in that statute that says a precise person

16   must be named.

17         THE COURT:  What about the case law supporting the

18   idea of inventorship?  It hasn't required an individual be

19   named as the inventor -- the other inventor?

20         MR. BELL:  The other side has not pointed to any

21   cases that I am aware of in terms of finding case law that

22   would require it.  And we were able to come up with a couple

23   of cases that suggest to the contrary.

24         One of those is Solomon versus Kimberly Clark and

25   that's at 216 F.3d 1372.  And in that case the same argument

1    was raised in terms of requiring a specific named person.

2          Now, the Court ultimately didn't pass on that, so

3    it's not directly on point, but it gives an indication -- the

4    Court did not accept that defense.  It ruled on other

5    grounds.

6          But the easy ground in that case would have been to

7    say, well, you didn't name the specific person.  Game over.

8    It did not do that.  Instead, it ruled on other grounds.

9          And then another case I would point your Honor to

10   is Dow Chemical versus Astro-Valcour.  That's at 267 F.3d

11   1334.

12         And in that case the question was whether multiple

13   employees of a given corporation were all co-inventors.  The

14   Court didn't sit and parse out the particular employees and

15   whether they were named.  They kind of collectively -- the

16   Court collectively treated those employees in making the

17   inventorship determination.

18         So I would submit that the combination of the clear

19   language of the statute, lack of case law suggesting -- or

20   directing otherwise, and some case law suggesting that no

21   particular names are necessary, would support our position.

22         But I would like to make the point that, in any

23   event, we have the facts to show that there were, in fact,

24   people named specifically.

25         And as I mentioned just a moment ago, Dr. Stattin

1    testified both about himself and about Janne Peisa.  He said

2    both were, quote:  Personally -- both personally contributed

3    to the discussion.

4         That was his testimony.  And that, again, goes back

5    to the standard we were talking about, this collaborative

6    effort leading to a result.

7         He also testified that the ideas were consistent

8    with those by Mr. Torsner, a patent previously submitted.

9         And Mr. Sebire himself testified that a number of

10   individuals were involved in these discussions.  He testified

11   that on the morning of September 7th.  Various individuals --

12   I won't name them all -- but Anil Umesh, Ed Charbonneau,

13   various others at that point.

14        So we would submit that those -- even if Your Honor

15   believed that a specific name was required, certainly there

16   are multiple names given here.

17        And with that, unless Your Honor has additional

18   questions.

19        THE COURT:  Well, I mean, okay, you addressed point

20   No. 1 on this question, but what about 2, 3, and 4?  Are they

21   correct statements of the law?  Do you have evidence to

22   support them?

23        MR. BELL:  Sure.  So No. 1 I think we've talked

24   about.

25        THE COURT:  Right.

1           MR. BELL:  No. 2, what claims of the '820 patent

2    does Apple contend the putative inventor conceived of or

3    contributed to.  And I think that goes to what we were

4    discussing earlier, that it's not necessary that any one

5    whole claim be fully contributed to by others.  It's-- all it

6    requires is one element and --

7           THE COURT:  So what's the evidence of an element?

8           MR. BELL:  Sure.  So the evidence of an element --

9    right.  As we were noting earlier, Your Honor, the key

10   element they contributed is this notion of choosing between

11   long and short buffer status report based on the number of

12   LCGs with data, whether it's one or more than one.

13          And that's the testimony that Dr. Stattin clearly

14   gave himself.  It's the -- it's demonstrated on Slide 11 of

15   the Ericsson slide presentation that we looked at during the

16   trial, and that is what appears in all of the claims.

17          All of the claims talk about choosing between long

18   and short based on a condition corresponding to the buffers.

19   And so that's in Claim 1.

20          As a general matter in Claim 4, it specifies long

21   or short based on one or more than one having data.  And so

22   that -- that propagates through all of the claims.

23          But as we noted -- or as I noted earlier, all it

24   would take would be one element of one claim.  And that

25   against the backdrop, I think, is important of all of these

 1    events in the collaborative process.  And so we see the

 2    various events leading up to the provisional application.  We

 3    see the substantial portions taken from the Ericsson -- or

 4    the joint proposal, rather, that ultimately ended up in the

 5    provisional application, which ultimately ended up in the

 6    patent itself.

 7             So you look at all of these in totality, and I

 8    think there's certainly enough to get to a jury, and we would

 9    submit far more than that.

10             And so looking down to the next, No. 3, what is the

11    idea that Apple contends was communicated to Mr. Sebire, I

12    think we just discussed that.

13             And also, I would, again, reiterate that it does

14    not have to be the entire -- the entirety of the invention.

15             We've identified, at a minimum, one key element.

16    And I would emphasize this point to Your Honor:  That this

17    choosing between long and short is the key identified element

18    or one of the key identified elements in the purported

19    invention.  And so that -- certainly, there is evidence of

20    that being communicated.

21             And then, finally, when and how was the idea

22    communicated to Mr. Sebire?  I think I would have two points

23    on this, Your Honor.

24             One, again, it is not -- it's for us to show that

25    it wasn't Mr. Sebire's idea.  And so we, I think, have shown

1    evidence of that.  But the when and how, it goes part and

2    parcel with all of the events leading up to the provisional

3    application.  So it's not -- it's not important to pin down

4    exactly at this moment of this day.  It's enough to show that

5    it wasn't all Mr. Sebire.

6              THE COURT:  Okay.  Mr. Lumish, do you have a

7    response on this or --

8              MR. LUMISH:  If you wouldn't mind, Your Honor, I'd

9    like to adjust two points.

10             On the ideas -- excuse me -- the Ericsson

11   proposal -- the Ericsson PowerPoint slides also showed the

12   check against bandwidth.  And both Mr. Sebire and Dr. Stattin

13   testified that that bandwidth check was one that would be

14   done to determine whether a long or short buffer status

15   report could fit.

16             So if you look at these claims as having two

17   selection criteria, the pre-selected condition.  And then

18   secondly, the bandwidth check.  These PowerPoint slides

19   deliver both of them to Mr. Sebire.  They're both on Ericsson

20   logos -- letterhead, I guess is what I mean to say.  They're

21   on Ericsson PowerPoints.

22             The testimony from Mr. -- Dr. Stattin was those

23   were Ericsson ideas.  They went back as far as -- at least

24   the -- the pre-selected conditions went back as far as 2006,

25   that they wrote them down into the slides, that they

1   communicated them to the group at large, and that they, in

2   particular, communicated them to Mr. Sebire between October

3   22nd and October 23rd in Helsinki.

4       So there's extensive testimony on this.  There's --

5   I don't think it was really even contested as to whether

6   Ericsson had those ideas, Ericsson presented them to the

7   group, Ericsson presented them to Mr. Sebire.  And then you

8   see them getting moved from and morphed from PowerPoint slide

9   to proposal to patent application to the patent.

10      THE COURT:  Thank you.

11      MR. LUMISH:  Oh, one other, Your Honor.  I

12  apologize.  It's the 6-bit size of the buffer status report

13  itself was another thing that comes straight out of those

14  PowerPoints.  Mr. Sebire admittedly didn't invent it.  You

15  see that travel in the same pathway.

16      THE COURT:  Thank you.

17      MR. LUMISH:  Thank you, Your Honor.

18      THE COURT:  Mr. McManis, talk to me about this

19  point number one.  Where is the case law that says we've got

20  to specifically name an inventor?

21      MR. MCMANIS:  Your Honor, University of Utah v.

22  Max-Planck.  It's 734 F.3d 1315.  And it's cited in our brief

23  filed last night.

24      And it says unequivocally that inventors must be

25  natural persons and cannot be corporations.  And so --

1          THE COURT:  Okay.  Well, that's different than

2     we've got to come forward with -- with the name of the actual

3     person.

4          MR. MCMANIS:  Well, I think, Your Honor, what

5     you're hearing from Apple is that their argument is that

6     there -- there could be some of these people at Ericsson who

7     may have contributed these ideas as part of the group.  And

8     that runs them right into Oasis, which says that these group

9     discussions that result in a problem to be solved, or even a

10    general sense of where the invention may fit in, is

11    insufficient to satisfy the clear and convincing evidence

12    burden.

13         THE COURT:  Okay.  Any final word?

14         MR. BELL:  I think just one more quick point on

15    that, Your Honor.

16         And I would just like to direct the Court's

17    attention back to Fina Oil.  And what the Court said was a

18    joint invention is simply the product of a collaboration

19    between two or more persons working together to solve the

20    problem addressed.  And so I think that goes directly to

21    CCE's point.

22         THE COURT:  How does that square with this Oasis

23    holding that group -- group work is not enough?  I'm not

24    saying it very artfully, I'm afraid, because I don't have it

25    right in front of me; but how does that respond to

1    Mr. McManis's Oasis point?

2         MR. BELL:  Right.  So I think, at least in this

3    case, what the Court is saying is that if there's evidence

4    that this group effort led to a solution, I think maybe

5    that's where we're differing.  Just stating a problem versus

6    coming up with a solution.  We think there's certainly

7    evidence here that, ultimately, this working group did come

8    up with a solution and, therefore, the Fina Oil content

9    applies rather than Oasis.

10        MR. LUMISH:  May I be heard on this as well, your

11   Honor?

12        THE COURT:  Yes.

13        MR. LUMISH:  And just -- just, again, in case

14   Your Honor is ruling against us on that respect, the

15   testimony was pretty clear that the PowerPoints were created

16   at Ericsson.  The meeting was set up by Ericsson.  Dr. Peisa

17   put -- typed the statement into the PowerPoint at Page 11

18   about choosing formats based on the number of groups that

19   need to report data and that they communicated that to

20   Mr. Sebire.

21        So if you need an individual, Dr. Stattin and

22   Mr. -- and I think it's Dr. Peisa.  Dr. Stattin's testimony

23   is Dr. Peisa does the work.  He puts it into the slide deck

24   and the two of them communicate it both together to

25   Mr. Sebire.

1           MR. MCMANIS:  Your Honor, this is in the briefing

2    as well.  Dr. Stattin testified that he's not sure whether or

3    not these were Ericsson ideas that were even put in the

4    presentation.  There's nothing attributable definitively to

5    Dr. Stattin, Dr. Peisa, or any person at Ericsson or any

6    person other than Mr. Sebire when he submitted his R2-080015

7    proposal months after these meetings, of the ideas that are

8    claimed in the '820 patent.

9           MR. LUMISH:  That's why we have jury trials, Your

10   Honor.  Everything he just said is, is, I think, wrong in the

11   facts.  He does say it's their idea.  He says it multiple

12   times.  They, on cross-examination, got -- got some

13   admissions out of him, and the jury can weigh the two pieces

14   of testimony and come out with a decision.  They're here to

15   judge the facts.  He doesn't just get to decide what they are

16   because they like a cross-examination admission they got.

17          Dr. Stattin says multiple times it's an Ericsson

18   idea.  It goes back to 2006.  They wrote it down.  They

19   contributed it.  They communicated it to him.

20          And on this statement about the -- the proposal

21   from 2008 that Dr. -- Mr. Sebire wrote, remember, Your Honor,

22   in the courtroom Dr. Stattin's reaction when he saw that.

23   They showed it to him.  They asked him about it.  And he

24   said -- let me see if I can read it here.  He said:  If I

25   look at this, the first paragraph in Section 2 looks very

1   much like what Ericsson suggested in the joint MAC workshop.

2            So the one piece of evidence they think that nails

3   their case down, when he's presented with is, Dr. Stattin

4   says, yeah, that -- that looks like our idea.

5            THE COURT:  Okay.  I'm going to allow the issue of

6   inventorship to go to the jury but not the issue of

7   derivation.

8            I sprung the charge on you kind of late.  Do you

9   need some time to look it over?  Are you ready for the charge

10  conference?

11           MR. LUMISH:  Maybe 15 minutes, Your Honor, is all

12  we need.

13           THE COURT:  Okay.  I'll -- yeah.  Let's just take a

14  15-minute recess and -- and we'll pick it back up.

15           COURT SECURITY OFFICER:  All rise.

16           (Recess.)

17           (Jury out.)

18           THE COURT:  All right.  Let's take up the charge

19  conference.

20           Who's first?

21           MR. PUCKETT:  Good afternoon, Your Honor.  Don

22  Puckett on behalf of CCE.

23           And if you would like to provide any guidance in

24  terms of how you would like to proceed, if you want to go

25  through the charge, my instruction or --

 1            THE COURT:  Yeah, just get into your first

 2   objection, which I'm sure is not until like Page 20, right?

 3            And we'll just go one-by-one, and I'll hear

 4   argument from both sides on each objection.

 5            We'll get through Plaintiffs, and then we'll get to

 6   Defendants.

 7            MR. PUCKETT:  Okay.  Thank you, Your Honor.

 8            Proceeding through, I think I may have a couple of

 9   items that I would suggest by way of cleanup.

10            On Page 5 this is in Instruction 2, the summary of

11   the contentions.  We noticed that in the sentence, "summary

12   of CCE's contentions," that there's no mention of

13   willfulness, and so we would just like to add some reference

14   to CCE's contention that Apple has willfully infringed the

15   '820 patent.  And I'll note that Apple has provided a

16   rebuttal contention in the next paragraph.

17            THE COURT:  Okay.  So point me to exactly where you

18   would like to add something.

19            MR. PUCKETT:  So this would be at the second

20   paragraph beginning with "CCE also contends."

21            THE COURT:  Uh-huh.

22            MR. PUCKETT:  On that page.  And at the end of that

23   sentence we would like add the instruction that CCE also

24   contends that Apple's infringement of the '820 patent has

25   been willful.

1              THE COURT:  Okay.  Response.

2              MR. BELL:  Your Honor, I just only note that that

3    was not in their proposed instructions, and so we would just

4    object on that basis.

5              THE COURT:  Okay.  I'll allow it.

6              What's next?

7              MR. PUCKETT:  On Page 9, Your Honor.  And so this

8    is in Instruction 4.4, in the third paragraph that begins

9    with "I have identified the structures."

10             THE COURT:  Yes.

11             MR. PUCKETT:  And so there's a little bit of

12   ambiguous language as to whether or not it is referring to a

13   particular element of Claim -- of Claim 12 or Claim 12 as a

14   whole.

15             And as Your Honor knows, that only particular

16   elements that have been construed as means-plus-function

17   should be given a means-plus-function construction and

18   applied in that way.

19             And so we would suggest rewriting that first

20   sentence of that paragraph to say that the structure is

21   described in the patent that perform the function identified

22   in the means-plus -- means-plus-function element of Claim 12.

23             THE COURT:  Any objection?

24             MR. BELL:  No objection.

25             THE COURT:  Okay.  We'll make that change.

1      MR. PUCKETT:  Your Honor, at the -- on Page 10, at

2   the very end of Instruction 5, the reference here is what CCE

3   has to prove for infringement, and we just want to make sure

4   that the language here is not suggesting that we have to

5   prove infringement of the entire patent.

6      And so our suggested edit would be that it be

7   written to say:  In order to prove infringement for any

8   particular claim, comma, CCE must prove that the requirements

9   for either of these types of infringement are met by a

10   preponderance of the evidence.

11      And that simply makes it clear that it's judgment

12   on a claim-by-claim basis, and that it's showing that either

13   direct or indirect infringement would be sufficient for a

14   finding of infringement.

15      THE COURT:  Any objection?

16      MR. BELL:  No objection, Your Honor.

17      THE COURT:  Okay.  So I'm going to change that

18   sentence, the last sentence in Paragraph 5 -- I mean, in

19   Section 5 to read:  In order to prove infringement for any

20   particular claim, comma, CCE must prove that the requirements

21   for either of these types of infringement are met by

22   preponderance of the evidence.

23      Is that right?

24      MR. PUCKETT:  Yes, Your Honor.

25      THE COURT:  Okay.  What's next?

1          MR. PUCKETT:  Thank you.

2          On the same page, the first paragraph of

3  Instruction 5.1 for direct infringement, a similar type of

4  edit on the second line where it says:  What is covered by

5  the claims of a patent without the owner's permission.

6          We would suggest rewriting it to say:  What is

7  covered by one or more claims of a patent without the patent

8  owner's instruction.

9          Again, to reflect that the infringement is

10  addressed by a claim-by-claim basis and not the whole patent.

11          THE COURT:  Any objection?

12          MR. BELL:  No objection.

13          THE COURT:  I'll make that change.

14          MR. PUCKETT:  Okay.  Your Honor, on Page 11 -- and

15  I'm looking at the paragraph that begins with:  Asserted

16  Claims 4 and 10 cover methods.

17          THE COURT:  Okay.

18          MR. PUCKETT:  So this deals with what is required

19  in order to infringe a method claim.  I think, first of all,

20  this is the one where we're going to have a bit of a

21  substantial dispute.

22          I've prepared a notebook that I think contains all

23  of the legal authority that I might refer to today.  So with

24  Your Honor's permission I'd like to pass that up and --

25          THE COURT:  Sure.

1          MR. PUCKETT:  So, Your Honor -- and this will come

2   up, again, in some additional instructions.

3          But I think that we, perhaps, have some degree of

4   dispute with respect to what is required to infringe a method

5   claim, direct infringement of a method claim and instances

6   where you have a device that is sold to Apple's customers

7   and, perhaps, some of the steps of the method are being

8   carried out by a device that might be in the possession or

9   owned by an Apple customer at the time that it performs the

10  steps of the method.

11         In this particular instruction there is a

12  recitation of a couple of situations in which the Federal

13  Circuit in the recent Akamai case has found that the

14  performance of certain method steps can be -- by one person

15  can be attributable to another person.

16         If we want to look at the case, in which this case

17  is behind Tab 1 in the binder that I just handed you, behind

18  the first blue slip.

19         And I think as we all know, Akamai was, perhaps, a

20  significant change in the law with regards to whether method

21  claims can be infringed when you have multiple parties that

22  are performing some of the steps of the method.

23         And in that case what the Akamai court held is that

24  the touchstone of determining whether a party can be held

25  responsible for the performance of method steps by another

party, collapses into this notion of vicarious liability law;

and that it is akin to and the Court should borrow principles

from elements of common law or other elements of law that

hold parties vicariously responsible for the actions of

another.

And in the Akamai case the Court is very careful to

list specific examples of when that can occur, such as in an

agency relationship or where there is a joint enterprise or

things of that nature.  But the Court is also very careful to

say that this is not an exclusive list of this scenarios

within which the sort of attribution of the performance of

method steps can occur.

And so we had requested an instruction that

instructed the jury that it can look at the totality of the

circumstances with respect to whether this type of vicarious

liability relationship should arise.

And in particular we think that --

THE COURT:  Can you point me in the joint proposed

jury instructions where the requested instruction was?  I

thought that this paragraph that starts with asserted Claims

4 and 10, I thought that was directly from CCE's proposal.

MR. PUCKETT:  I -- I believe that the language up

to a point is straight from our proposal; but I believe, if

I'm not mistaken, just certain language was omitted.

And I apologize, Your Honor.  Give me just one

1    moment.

2            So the language that was omitted from our proposal

3    is on Page 17 of the document that was filed this morning,

4    the parties' final joint proposal.  I believe it was in

5    previous versions that were sent to the Court.

6            THE COURT:  I'll tell you, I'm working off the

7    volume that you -- is that the volume I've got in front of

8    you, Ms. Mehta?

9            LAW CLERK:  No.

10           THE COURT:  No.  I'm working on -- we did this, you

11   know, not last night, when y'all filed it, so --

12           MR. PUCKETT:  So let me see if I can point you

13   using a version that was e-mailed to the Court on Friday

14   afternoon.

15           THE COURT:  Yes.

16           MR. PUCKETT:  So, Your Honor, it's correct, the

17   language that I would refer to was added in the version that

18   was filed this morning.

19           THE COURT:  Okay.

20           MR. PUCKETT:  And so we would --

21           THE COURT:  I feel better about that.  Let me pull

22   that document up on my computer just so I can have it in

23   front of me, okay?

24           MR. PUCKETT:  Thank you, Your Honor.

25           So this is Docket No. 284 filed this morning.  And

1    the joint proposed final instructions was attached as

2    Exhibit A.

3            THE COURT:  All right.  And what you're seeking to

4    add is -- is at the top of Page 17 of this document?

5            MR. PUCKETT:  That -- that's correct, Your Honor.

6            So it's the language that starts with "in deciding

7    whether the actions of others, such as the end users of

8    Apple's products are attributable to Apple.  You should

9    consider the totality of the circumstances --

10           THE REPORTER:  I'm sorry.  Whoa, whoa.  Such as the

11   end users of Apple's?

12           MR. PUCKETT:  "Products are attributable to Apple."

13           THE REPORTER:  Thank you.

14           MR. PUCKETT:  "You should consider the totality of

15   the circumstances, including whether Apple controls a method

16   or manner in which the method steps are carried out or

17   whether Apple conditions the receipt of any benefit on the

18   end user's performance of the method step."

19           Some of that language may be deleted, Your Honor.

20   I think it's "the totality of the circumstances language"

21   that was deleted.

22           THE COURT:  Okay.  Response.

23           MR. BELL:  Thank you, Your Honor.

24           I don't believe there's any evidence in this case

25   of joint enterprise, so I'm not sure an Akamai instruction is

appropriate at all.  But to the extent it is, I think the Court's current language is -- is sufficient to convey that concept.

MR. PUCKETT:  Your Honor, apart from -- from the language, I think there -- there are two factual scenarios that are discussed and that we would propose adding as the examples -- or I should say there's one -- one that is discussed in Akamai and one that I want to propose.

The first is discussed on -- it's the second column of Page 2 on the copy of the opinion I gave you.  It's on pinpoint 1023 of the Akamai decision, 797 F.3d 1023, where the Court is making reference to the Metro-Goldwyn-Mayer Studios case.

And stating that:  An actor infringes -- and I think that that particular case is a Supreme Court case arising in the context of copyrights, but it's being decided here by the Federal Circuit in the context of patents.

And it says that:  An actor infringes vicariously by profiting from the direct infringement if that actor has the right or ability to stop or limit the infringement.

And so we think that scenario potentially could apply here where Apple sells the product and profits from the product and profits from -- or benefits from the direct infringement by its end users and has the ability to take corrected actions to prevent further patent infringement by

1    modifying its software, or what have you.  So we think that

2    that, for example, would be a scenario of --

3            THE COURT:  Okay.  Are you tendering these

4    scenarios for the first time?  I mean, you're pointing at

5    case law.  Was this not in any version of the proposed charge

6    you submitted to me?

7            MR. PUCKETT:  That's right, Your Honor.  This has

8    not been in the proposals that have come here today.  We

9    would submit it based upon the evidence, as it has been

10   presented at trial, we believe supports the instruction.  And

11   so this is our opportunity in a Rule 51 to request that

12   instruction, and so we did.

13           THE COURT:  All right.  Response.

14           MR. BELL:  Just looking at the language, Your

15   Honor, of the Akamai remand decision, and it does use various

16   different terms; but, ultimately, I think the key point is

17   that it comes back to something very clearly under Apple's

18   purview.  And I think the control language here accomplishes

19   that.  I think the attributable language accomplishes that.

20   I wouldn't want to include any particular scenarios,

21   hypotheticals, and so on.

22           But as long as it keeps the focus on, ultimately,

23   Apple being in control, subject as to my objection to

24   including an Akamai instruction at all.  That's what I

25   propose.

```
 1              THE COURT:  Okay.  I'm -- go ahead.

 2              MR. PUCKETT:  I would just say that we do object to

 3    an instruction that insinuates or states that control is a

 4    necessary requirement.  Akamai clearly says that's not the

 5    case, that vicarious liability is the touchstone.

 6              THE COURT:  All right.  I'm going to add the

 7    language that's in this Document No. 284 on the top of Page

 8    17, the "in deciding whether" sentence through the end of

 9    that paragraph.  But I'm not going to include the examples

10    from Akamai.

11              MR. PUCKETT:  Thank you, Your Honor.

12              On the same page, Page 11, same instruction, the

13    line -- Paragraph beginning, "When a claimed method is

14    performed by computer software."

15              We think that sentence is erroneous as a matter of

16    law and that, perhaps, that may have been the law under

17    Muniauction at one point in time, but that has been expressly

18    overruled by the Akamai decision.  And would be erroneous as

19    a matter of law.  We would object to that instruction.

20              THE COURT:  Okay.  The whole paragraph or this one

21    sentence?

22              MR. PUCKETT:  Well, I'm going to start with that

23    sentence, but I'm going to have more in that paragraph that I

24    may object to for other reasons.

25              THE COURT:  Okay.  Response.
```

1          MR. BELL:  Based on Your Honor's earlier ruling, I

2     would not object to the removal of the first sentence.

3          THE COURT:  Okay.  I'm going to remove that

4     sentence.

5          MR. BELL:  But I would stand on the rest.

6          THE COURT:  Okay.  What's next?

7          MR. PUCKETT:  So I -- I would not object to the

8     second sentence, which I suppose will now be the first

9     sentence of that paragraph.  However, the next sentence that

10    begins, "So the mere act of selling an accused device that

11    includes software accused of performing the method claims

12    cannot infringe those method claims, but proof of use of the

13    software by Apple can infringe."

14         And I think that goes hand in hand with the first

15    sentence that that's erroneous as a matter of law.

16         THE COURT:  Response.

17         MR. BELL:  Concerning the first -- now -- what is

18    now the first infringement requires the performance of each

19    step of the claim, I don't think that's at all controversial.

20         The next sentence, "the mere act of selling an

21    accused device that includes software accused of performing

22    the method claims cannot infringe those method claims," I

23    think up to there, that's uncontroversial.

24         And then I think the final clause, "but proof of

25    use of the software by Apple can infringe," I think that

```
 1    would be one example where it could happen, perhaps, not the
 2    only example.
 3              THE COURT:  Okay.  Well, the objection is that
 4    this -- "so the mere act of selling an accused device that
 5    includes software accused of performing the method claims
 6    cannot infringe those method claims," the objection is that
 7    is not a correct statement of the law.  Is it?
 8              MR. BELL:  I believe if Your Honor ended the second
 9    sentence at "cannot infringe those method claims," I don't
10    think there would be any concern with that.
11              THE COURT:  I'm going to remove the sentence.
12    Which just leaves us with the old second sentence and the
13    last sentence; is that right?
14              MR. PUCKETT:  I think that's right, Your Honor.
15              THE COURT:  Okay.  Does that make sense to keep
16    both of those in there?  Sometimes I get these charges done
17    at the charge conference, and I have one lone sentence that
18    no longer makes any sense.
19              MR. BELL:  I think it does, Your Honor.
20              THE COURT:  Okay.
21              MR. BELL:  Sort of gives both sides to the same.
22              THE COURT:  Okay.
23              MR. PUCKETT:  We don't -- we don't object to it.  I
24    don't think it's necessary but it is accurate so we don't
25    object to it.
```

```
 1                    THE COURT:  I'll leave it in.

 2                    What's next?

 3                    MR. PUCKETT:   On Page 12 at the end of that

 4         instruction, so this -- the last paragraph there is an

 5         instruction that we have proposed.   I would just suggest

 6         that, perhaps, it makes sense to move that up earlier in the

 7         instruction.   And we had suggested that in a document that

 8         was filed this morning.

 9                    And I would suggest moving up to the second

10         sentence of -- I'm sorry -- the second paragraph of the

11         instruction just because it goes to the very nature of what

12         it means or what it requires to infringe a patent at a high

13         level, not tied to particular types of direct infringement by

14         apparatus or method.   And so it just makes sense to sort of

15         move that up.

16                    THE COURT:   Do you have any objection to moving

17         that?

18                    MR. BELL:   I'm sorry.   If I could ask counsel which

19         one --

20                    THE COURT:   I think it would be moved to the

21         last -- to the first full paragraph on Page 11 that starts

22         with "to determine direct infringement."   It would be moved

23         and attached to that paragraph.

24                    Is that right?

25                    MR. PUCKETT:   Yes.   That would be fine.
```

1          MR. BELL:  No objection, Your Honor.

2          THE COURT:  Okay.

3          MR. PUCKETT:  On Page 12, Your Honor --

4          THE COURT:  Hold on.  Hold on.  I'm making notes.

5          MR. PUCKETT:  Okay.

6          THE COURT:  Okay.

7          MR. PUCKETT:  On Page 12, Your Honor, there's just

8   a typo.  There is two number blocks there that both have a 1.

9          So I would point that out for the Court.

10          THE COURT:  Yeah.  We'll fix that.

11          MR. PUCKETT:  And now I'm in Instruction 5.3, Your

12   Honor, and on Paragraph 14.

13          We object -- and there are a couple of references

14   here in this instruction.  I'll point you to the first

15   instance.  But in the numbered list of the elements for

16   indirect infringement, there's reference to this notion of

17   specific intent to encourage infringement by someone else.

18          There may be some old cases that use the -- this

19   phrase, "specific intent."  Counsel will correct me if I'm

20   wrong, but I'm not aware of cases post Global-Tech that use

21   this idea of specific intent, and it seems to be inconsistent

22   with the core holding of Global-Tech and subsequent cases.

23          THE COURT:  I -- I think it's your tendered

24   instruction, as I'm looking through -- I mean, am I wrong

25   about that?

1          MR. PUCKETT:  On -- on the specific intent

2     instruction, Your Honor?

3          THE COURT:  Yeah.

4          MR. PUCKETT:  I mean, I'm sorry, the -- the

5     indirect infringement instruction, Your Honor?

6          MR. BELL:  I believe it was in the one submitted on

7     Friday as joint.

8          THE COURT:  Yeah.

9          MR. PUCKETT:  So I believe that is correct.  And we

10    cleaned that up.  And it's not in the proposal that we filed

11    with the Court this morning.

12         THE COURT:  Okay.  Hold on.  Let me get to the new

13    proposal.

14         In the old proposal, I think it was unobjected to,

15    and we put it in exactly as submitted.  I see in the new

16    proposal there are two versions of these factors.  Is there a

17    material dispute as to the versions?

18         MR. PUCKETT:  I think the -- the material dispute

19    just goes to the use of this phrase "specific intent" and

20    whether that is appropriate in light of the holding in

21    Global-Tech that willful blindness is sufficient.

22         THE COURT:  Okay.  Response.

23         MR. BELL:  So, Your Honor, in the version that was

24    submitted Friday night, you're correct, it was unobjected to,

25    it was a joint proposal.  Apple hasn't changed its position.

1    I guess CCE decided to remove that in the latest version.

2         And I think the current case law -- I'm not aware

3    of case law that says it's no longer a valid element.  I

4    think Global-Tech still supports that element.  There's a DSU

5    case in the Federal Circuit that was pre Global-Tech, which

6    has been cited post Global-Tech for the inducement standard,

7    and I think that supports the specific intent.

8         THE COURT:  Any response to that?

9         MR. PUCKETT:  Well, I know that the Global-Tech

10   case itself that does not use the phrase "specific intent."

11   We all know that it kind of rewrote the standard,

12   essentially.

13        And to the extent that phrase is out there, I think

14   it is language that's being picked up, and I don't -- just at

15   a conceptual level, I think it's misleading to the jury and

16   inconsistent with the notion that willful blindness can be

17   sufficient and potentially erroneous.

18        MR. BELL:  If I could have one last word on that,

19   Your Honor.

20        THE COURT:  Yes.

21        MR. BELL:  Global-Tech was about willful blindness,

22   I don't believe it was about the specific intent requirement,

23   it was just about what can constitute willful blindness of

24   the patent infringement activities.  Specific intent, I

25   think, goes to the inducement of the actions of the other

1   party, which I don't think was affected by Global-Tech.

2             THE COURT:  I'm going to leave it as it is.

3             What's next?

4             MR. PUCKETT:  Your Honor, on the same page in the

5   paragraph that begins, "In considering whether Apple,"

6   there's a sentence -- or actually two sentences in the middle

7   of that paragraph that deal with opinion of counsel.  I will

8   note that this has been part of a joint proposal.

9             We've been waiting to see what kind of evidence was

10  going to come out on this.  As Your Honor knows, there are

11  some careful issues there that have been subjects of motions

12  in limine that potentially indicate privilege issues and all

13  sorts of things.

14            I say all that because that's my justification for

15  now needing to object to some things that were in the

16  previous agreed proposal.

17            We think that this language is potentially

18  misleading in light of the facts, both the facts that are in

19  evidence and, perhaps, facts that the Court is aware of but

20  that the jury has not been made aware of.

21            The way that the instruction is written, it says

22  that you may not assume because Apple did not obtain an

23  opinion of counsel.  And I think that's inconsistent with

24  even the testimony that is in front of the jury.  And so it

25  seems to resolve facts in a direction that are inconsistent

1    with the evidence.

2          And so we, I think, would object and propose

3    striking both of those sentences that deal with opinions of

4    counsel.

5          THE COURT:  Response.

6          MR. BELL:  Thank you, Your Honor.  A couple of

7    points.

8          One, as counsel pointed out, it was in the joint

9    proposal, and I think for that reason alone there aren't new

10   things that are really developed that would warrant an

11   objection now.

12         Number two, there are facts, I believe, in evidence

13   going to Apple's reliance on counsel in terms of the initial

14   allegations of infringement that Ms. Mewes testified about

15   or, rather, the standard-essentiality of the patent and who

16   she relied on within Apple to determine that it was not.

17         THE COURT:  Are you-all going to put into issue the

18   fact that they did not obtain an opinion of counsel?

19         MR. PUCKETT:  I'm -- I'm seeing heads shaking no,

20   so I'm going to say that we're not.

21         THE COURT:  I mean, I guess my question is then, I

22   mean, this instruction says, "You may not assume that merely

23   because Apple did not obtain an opinion of counsel, the --

24   the opinion would have been unfavorable."  I mean, if they're

25   not putting the issue to the jury that you did not obtain an

1    opinion of counsel, how is it relevant or necessary?

2            MR. BELL:  At the end of the day, Your Honor, it's

3    probably right that we can leave it out.

4            THE COURT:  Okay.  Then I'm going to remove these

5    two sentences.  Let's just make sure we're all on the same

6    page.  Literally.  I'm on Page 14.  The paragraph that begins

7    with, "In considering whether Apple," I'm going to remove the

8    following sentences:  "You may not assume that merely because

9    Apple did not obtain an opinion of counsel, the opinion would

10   have been unfavorable.  Apple does not have an affirmative

11   duty to seek an opinion of counsel regarding infringement."

12           Okay?

13           MR. BELL:  Thank you, Your Honor.  If I could just

14   add one to that?

15           THE COURT:  Yes.

16           MR. BELL:  If we could have assurance that they're

17   going to make no reference to that in closing or throughout

18   the rest of the --

19           THE COURT:  Yeah, yeah.  They will make no

20   reference of it.

21           MR. PUCKETT:  Your Honor, in the same instruction,

22   I know that you've already ruled on these, but just for

23   purposes of preserving my objections, we do object to the

24   reference to specific -- "specifically intended to cause the

25   acts that constitute direct infringement," at the bottom of

1    Page 14.

2              And, again, on the top of Page 15 where it says,

3    "If you do not find that the accused infringer meets these

4    specific intent requirements."  The same objections as

5    before.  I know your Honor has already ruled.

6              THE COURT:  Okay.  Thank you.  Overruled.

7              What's next?

8              MR. PUCKETT:  On Page 15 in the Instruction 5.4, in

9    the second sentence of that instruction there's reference

10   to -- it's the third line, "that Apple infringed a valid and

11   enforceable claim of the '820 patent."  And again, this was

12   in agreed language.  It's really just something that we've

13   just caught, but there has been no testimony or assertion

14   that -- of any basis for unenforceability of the patents.

15             There's no instructions for the jury, and I think

16   it may be just extraneous and confusing to insert

17   enforceability in this one straight reference in the

18   instructions.

19             THE COURT:  You have evidence that Apple infringed

20   a valid claim of the '820 patent?

21             MR. PUCKETT:  Yes, that we would not object to

22   that.  We would only object to the words "in enforceable" --

23   I'm sorry, the words "and enforceable."

24             THE COURT:  Yeah, okay.

25             Response.

1        MR. BELL:  I think that's correct, Your Honor.  No

2   objection.

3        THE COURT:  Okay.  I'll remove "and enforceable"

4   from that sentence.

5        MR. PUCKETT:  Just give me one second so I can look

6   at my list, Your Honor.

7        Okay.  Your Honor, in Instruction 6.1, which is on

8   Page 16, we object -- I think we object -- or I should say

9   that we do.  I will come back and perhaps -- we object to the

10  entirety of the second paragraph and believe that it contains

11  several misstatements of law.

12       THE COURT:  All right.

13       MR. PUCKETT:  Not -- not the first sentence.

14       THE COURT:  I was going to say, well, wait a

15  minute.  Okay.  So the sentence starting, "If a piece of

16  prior art" --

17       MR. PUCKETT:  So let's start with the second.  And

18  so the discussion here will largely center on the i4i case.

19  This is behind Tab 4 of the binder that I gave you.

20       And a few things here, Your Honor.  First of all,

21  the i4i Court expressly disclaimed the idea that just because

22  a reference is not listed on a patent, that it was not

23  considered by the examiner.

24       And I would point the Court to Footnote 10 of that

25  decision.  It's 564 U.S. 91.  The pinpoint is Page 145 at

1    Footnote 10.

2            Where the Court discusses that often it will be in

3    dispute as to whether or not an examiner actually considered

4    a reference even if it was not listed on the face of the

5    patent.

6            And so we think that it is erroneous to instruct

7    the jury that if a piece of prior art is not listed on the

8    patent then they may assume that the examiner did not

9    consider the reference during the course of the examination.

10           THE COURT:  Let me get a response to that sentence.

11           MR. BELL:  One moment, please, Your Honor.

12           THE COURT:  Sure.

13           MR. BELL:  I think, Your Honor, perhaps, one way to

14   address that would be to say something to the effect of you

15   may consider whether the reference was considered by the

16   examiner in the course of examination, or something to that

17   effect.

18           THE COURT:  Okay.  Well, I'm going to strike this

19   sentence.  Would you like to offer a replacement that's not

20   something like that?

21           Ms. LaHatte, I don't mind if you chime in.  All

22   hands on deck.

23           MS. LAHATTE:  Your Honor, I prefer Mr. Bell handle

24   it.  Thanks.

25           MR. BELL:  Perhaps, Your Honor, the way to resolve

1    it would be to go to the language of i4i itself.  We cited

2    that in a footnote of the joint proposal, which I believe was

3    just part of an Apple-only proposal, so I'm not attributing

4    that to CCE; but it was on Page 31, I believe, of the Friday

5    version.

6            MR. PUCKETT:  And, Your Honor, if I may, there's

7    kind of another layer to this argument, if you will.  And I

8    think that if you'll allow me, then it might facilitate this

9    discussion.

10           THE COURT:  Okay.

11           MR. PUCKETT:  So the next case in this same tab

12   that I gave you is the Abbvie Deutschland GMBH case, 759 F.3d

13   1285.

14           And in this case, opposed to i4i in the Federal

15   Circuit, considered what -- first of all, who has -- who

16   bears the burden of showing whether a reference was before

17   the examiner or was considered by the examiner or not.  And

18   found that a party challenging a patent bears the burden to

19   lay a factual predicate before being able to make the

20   argument at all that a certain reference was not before the

21   examiner.

22           And in particular on Page 13 of that case on the

23   second column -- let me make sure I'm pointing to the right

24   language here.  So the Court approves the jury instruction

25   and cites another case, which is here, which states that this

1    is an accurate statement of the law -- is that the burden on

2    the party who seeks to argue that a certain reference was not

3    considered by the examiner and, therefore, carries some

4    special weight, has a burden to show materiality, and that

5    that materiality burden requires a showing that there is a

6    substantial likelihood that a reasonable patent examiner

7    would consider it important in deciding whether to allow the

8    application to issue as a patent.

9           And this case here cites back to the American Hoist

10   case, which is the next case that I provided to Your Honor.

11   This case goes back a ways.  It's a 1984 case, so it's prior

12   to i4i.  But it very expressly deals with this issue of jury

13   instructions in this particular context.  It has been

14   reaffirmed by the Federal Circuit post i4i.

15          And in particular, if we look on Page 5 of that

16   decision, the citation here is 730 F.2d 1452.  And the

17   pinpoint is at Pages 1459 to 1460.  The Court says that:  The

18   touchstone is whether the uncited art is sufficiently more

19   relevant than that cited to serve as evidence of obviousness.

20          And so that's what they have a burden to prove.

21          We -- Your Honor hasn't seen all of our Rule 50

22   motions that we will be filing a Rule 50 motion on this, that

23   they have not presented any evidence that would support a

24   finding certainly by clear and convincing evidence.  And if

25   Your Honor looks at the cases, they say this is a very high

1  burden, even in this context, to show that the alleged

2  unconsidered art is more material than anything that the

3  examiner considered.  This is something that they did not

4  attempt to put on as part of their proof.

5        And so we think that this is the subject of JMOL.

6  And so we would object to any instruction that doesn't

7  instruct on the burden of proof and the predicate that they

8  have to lay before the jury can take any consideration -- any

9  special effect of whether a reference was not considered by

10 the examiner.

11        THE COURT:  Okay.  Response.

12        MR. BELL:  I think we would be open to modifying

13 the language, Your Honor, if counsel has a particular

14 suggestion.

15        MR. PUCKETT:  I do have a proposed instruction.

16        And if I could read it into the record.

17        Our proposed instruction would be that:  In

18 deciding the issue of invalidity based on the prior art

19 reference, you may take into account whether the prior art

20 was, or was not, previously considered by the Patent Office

21 when it examined the '820 patent.  You may decide how much

22 weight to assign to this fact based on the totality of the

23 evidence and circumstances.

24        As the party challenging the validity of patent

25 claims, Apple must show by clear and convincing evidence that

1    the prior art was not considered by the Patent Office.  To

2    meet that burden, Apple must show that the prior art not

3    considered by the Patent Office is more relevant than art

4    that was considered by the Patent Office.

5            MR. BELL:  I think maybe one -- just one

6    modification to that, your Honor.  If we could -- it might

7    make sense to generalize from prior art to information or

8    evidence.  That's consistent with i4i.  It talks about new

9    evidence before the Patent Office.  With that, we would

10   accept the instruction.

11           MR. PUCKETT:  My understanding of i4i has always

12   been talking about references.  And in particular, it's

13   talking about references that are considered on the face or

14   not considered on the face.  And then others that may or may

15   not have turned up in a search.

16           So without a pinpoint citation or seeing some

17   language to that effect, I think we would object.

18           MR. BELL:  I think -- one more point, Your Honor.

19   I think the Abbvie case that counsel cited to involved

20   indefiniteness, and so it involved an instruction in that

21   context, which was not -- obviously only not prior art.

22           THE COURT:  Is there anything about that argument

23   that you have in mind?

24           MR. PUCKETT:  I mean, if -- if it will be an agreed

25   proposal using the instruction that I just read into the

1    record, but expanding it so that it covers not just prior art

2    but new information, we would agree to that proposal.

3            THE COURT:  Read it into the record one more time

4    with that modification just so we can have it cleanly tonight

5    when we're fixing this document.

6            MR. PUCKETT:  Sure.  Did Your Honor request me --

7    that I read with modification?

8            THE COURT:  Yeah, as agreed, if you can do it.

9            MR. PUCKETT:  Sure.  I'm going to do my best.  Let

10   me mark it up.

11           THE COURT:  All right.

12           MR. PUCKETT:  Okay.  Your Honor, the proposed

13   instruction then would -- would read as follows:

14           In deciding the issue of invalidity based on a

15   prior art reference or other information, you may take into

16   account whether the prior art or other information was, or

17   was not, previously considered by the Patent Office when it

18   examined the '820 patent.  You may decide how much weight to

19   assign to this fact based on the totality of the evidence and

20   circumstances.

21           As the party challenging the validity of the patent

22   claims, Apple must show by clear and convincing evidence that

23   the prior art or other information was not considered by the

24   Patent Office.

25           To meet that burden, Apple must show that the prior

art or other information not considered by the Patent Office

is more relevant than art that was considered by the Patent

Office.

THE COURT:  Okay.

MR. BELL:  If I may have a moment, Your Honor.

THE COURT:  Sure.

MR. BELL:  Your Honor, I think that's largely

unobjectionable.  I would object, though, to the last two

sentences where it discusses the burden to show that the

prior art was not before the Patent Office.

I think we can show invalidity based on whether the

prior art was or wasn't before the Patent Office, and we

wouldn't want to leave the jury with the impression that we

had to show something was not in front of the Patent Office.

Otherwise, we have no objection.

THE COURT:  Read the last part of that again.

MR. PUCKETT:  Sure.

The last two sentences say:  As the party

challenging the validity of the patent claims, Apple must

show by clear and convincing evidence that the prior art or

other information was not considered by the Patent Office.

To meet that burden, Apple must show that the prior

art or other information not considered by the Patent Office

is more relevant than art that was considered by the Patent

Office.

```
 1              THE COURT:  I can see where that might be a little
 2   bit misleading.  I think it would be helpful for you two to
 3   have about five minutes together looking at the written
 4   document and see if you can work it out.  I think you're
 5   close.  We're going to take a brief recess.
 6              MR. BELL:  Certainly.  Thank you.
 7              COURT SECURITY OFFICER:  All rise.
 8              (Recess.)
 9              COURT SECURITY OFFICER:  All rise.
10              THE COURT:  Be seated.
11              All right.  Where are we?
12              MR. PUCKETT:  Your Honor, with respect to the
13   instruction that we were discussing just before the break, we
14   got a lot closer during the break, and people are running
15   things up the flagpole and that sort of thing.  So we would
16   ask permission if we could just table that discussion just
17   for a moment; and, perhaps, by the time that we get to the
18   end of this we may have some agreement, or at least be
19   substantially closer.
20              THE COURT:  Sounds good to me.
21              MR. PUCKETT:  Okay.
22              THE COURT:  What's next?
23              MR. PUCKETT:  Okay.  So I'm on Page 17 of the
24   Court's document, Section 6.2 discussing obviousness.  That
25   first comment is more by way of cleanup.
```

1          In the first paragraph there is a reference there

2    that says that this is -- this is the very end of that

3    paragraph -- "cannot be found in a single prior art reference

4    that would anticipate the claim."

5          Since the jury is not being instructed on

6    anticipation, we would suggest striking all of the language

7    after "a single prior art reference."

8          THE COURT:  Yes.  Any objection to that?

9          MR. BELL:  No objection, Your Honor.

10         MR. PUCKETT:  In the fourth paragraph of that

11   instruction that begins, "In determining whether a claimed

12   invention is obvious," we would suggest at the end of this

13   paragraph -- really it's just one sentence.  So at the end of

14   this sentence, adding a clause saying "along with any

15   objective indicators of non-obviousness or secondary

16   considerations."

17         And we think that that should be there because

18   that's consistent with the way that the Graham factors are

19   stated and the, sort of, wealth of Federal Circuit authority

20   saying that you don't look at the art and the elements and

21   the scope of the content in the differences first and then

22   as, you know, a second step, you look at the secondary

23   considerations.

24         The law is pretty clear that in determining

25   obviousness, you are supposed to look at it all together.

And so we think that it makes sense there to instruct the

jury as a general matter that you look at all four of the

Graham factors in combination before they are given further

instructions about the specific factors.

THE COURT:  So, tell me how that sentence would

read.

MR. PUCKETT:  So, just adding onto the end of what

is there now.  So at the end of that sentence now, it says

"and any differences between the prior art and the claimed

invention."  And then we would suggest, comma, "along with

any objective evidence or secondary considerations that shed

light on the obviousness or not of the claimed invention."

MR. BELL:  Your Honor, I think in this case there

hasn't been any evidence to support that instruction, a shred

of evidence regarding secondary consideration, certainly not

secondary consideration with a nexus to the invention claimed

here.

MR. PUCKETT:  So we can have the discussion when we

get to the list just a little bit later on, about which of

those are supported or not.  I think that we would disagree

that there hasn't been any evidence with respect to any of

them.

In particular, I think we would point to failure of

others, particularly with others in the standards committee

that were essentially looking at the same problem at the same

1   time but did not arrive at the same invention.

2         One of the secondary considerations is invention --

3   contemporaneous invention by others.  The flip side of that

4   would be lack of contemporaneous invention by others.  And,

5   so, at a minimum that would be one.

6         We can talk about others when we get to the list;

7   but for purposes of the paragraph that we're talking about

8   now, we think that sort of reference to the objective

9   evidence and the notion that it should be considered along

10   with the other Graham factors at the same time, would be

11   appropriate.

12         THE COURT:  Okay.  I'll allow this sentence.

13         What's next?

14         MR. PUCKETT:  With respect to the next paragraph

15   that starts on the bottom of Page 17, I would say that we

16   would like to propose some additional instructions with

17   respect to this paragraph, particularly that was triggered by

18   testimony that we heard in court today.

19         Essentially, we think that the instruction here

20   does not sufficiently capture the seriousness of the proof

21   requirement with respect to the motivation to combine in the

22   case law such as the In re Kahn case and other more recent

23   cases.

24         THE COURT:  I mean, this is straight from the model

25   charge.  Your proposals seem to be ships passing in the

1  night.  The Court put them both aside and put in the model

2  order, so I'd like to hear some authority on why we should

3  add to the model order.

4        MR. PUCKETT:  Sure.  So, first of all, if I may

5  ask, it is the Federal Circuit Bar model order?

6        THE COURT:  It is.

7        MR. PUCKETT:  Okay.  So, your Honor in cases -- I'm

8  going to cite In re Kahn as an example, KSR, and other more

9  recent cases.  It is repeatedly emphasized in the case law

10  that, perhaps, the most important aspect of obviousness, 103,

11  is avoiding hindsight bias.

12        And one of the primary ways that the law requires

13  that decisionmakers avoid hindsight bias is by requiring an

14  explicit rational underpinning for this motivation to combine

15  that is based upon specific and tangible evidence and not

16  general and vague claims of a motivation or reason to

17  combine.

18        And in particular, we were very troubled by

19  testimony that we heard from Dr. Acampora today where he

20  stated that he used the claims of the patent as a roadmap to

21  go and search for prior art that he could then put together

22  which, in the case law, is per se impermissible.

23        And, so, in combination with the importance of this

24  requirement in the case law for avoiding hindsight bias and

25  in combination with testimony that we heard from Dr. Acampora

1  today that he has used the patent as a roadmap, then we

2  believe that his testimony is infected with hindsight bias.

3          And so we would propose an instruction that

4  instructs the jury both on the importance of this requirement

5  and also that they should be wary of testimony that they

6  suspect is tainted with hindsight bias.

7          I have a proposed instruction that, if the Court

8  will permit me, I would like to read into the record.

9          THE COURT:  Okay.

10         MR. PUCKETT:  So CCE's proposed instruction that

11 would be inserted in the current Instruction 6.2 for

12 obviousness would state as follows:

13         In determining whether a person of ordinary skill

14 would combine the prior art references in the combinations

15 that Apple has suggested, it is extremely important to avoid

16 hindsight bias.

17         Whether a patent claim is invalid as obvious must

18 be determined by considering whether a person of ordinary

19 skill in the art would have been motivated to combine the

20 references at the time of the priority date of the invention.

21         To avoid hindsight bias, it is impermissible to use

22 the patent claims or specification itself as a roadmap for

23 reconstructing the claimed invention from elements found in

24 various prior art references because a person of ordinary

25 skill at the time would not have had access to the patent or

1   its disclosures at the time of the priority date of the

2   patent.

3          You should disregard any testimony on the issue of

4   obviousness if you believe the testimony is infected with

5   hindsight bias.

6          THE COURT:  And what is your authority for that

7   proposed instruction?

8          MR. PUCKETT:  So, for the substantive components in

9   the importance of hindsight bias, I would cite In re Kahn.

10  I'll give your Honor a specific -- pardon me, your Honor.  I

11  don't have the specific citation in front of me, but I will

12  have it for you in just a moment.

13         Also we cite, of course, KSR versus Teleflex, 550

14  U.S. 398.  And I would just say, your Honor, that there are

15  literally hundreds of cases that essentially talk about how

16  avoiding hindsight bias is the most important task in the

17  obviousness determination.

18         And then I don't have a specific cite offhand -- I

19  could find one very, very quickly -- on the impermissibility

20  of using the patent as a roadmap.  That's just really a

21  statement of black letter law.  I wasn't in here to hear his

22  testimony today, so I don't have a citation in hand.  But we

23  are happy to provide that to your Honor if you would like.

24         THE COURT:  Okay.  Response?

25         MR. BELL:  Just a few points, your Honor.

1          Number one, I think all of this language that you

2    heard was not in any proposal prior to now.  I'm looking back

3    at what I believe is the prior proposal by CCE.  It is a much

4    more limited instruction.

5          It just says:  "You must be careful not to

6    determine obviousness using hindsight.  Combining two

7    inventions can seem obvious after the fact."

8          And I think the Court's proposed instruction as it

9    currently stands, already adequately addresses hindsight.  It

10   says:  "Do not use hindsight; i.e., consider only what was

11   known at the time of the invention."

12         And, ultimately, it is a factual question for the

13   jury whether there was sufficient motivation to combine.  I

14   think the jury can look at all of the evidence and reach and

15   appropriate conclusion.

16         MR. PUCKETT:  We think the instruction is

17   necessitated -- some instruction was warranted, and we

18   requested some instruction on hindsight bias.  But given the

19   testimony of Dr. Acampora today, we think that particular

20   instructions are important here both on the reports of the

21   requirement and more specifically on how particular testimony

22   cannot be infected with hindsight bias.

23         THE COURT:  Read me the first part of your proposed

24   instruction again.

25         MR. PUCKETT:  Yes, your Honor.  The proposed

1  instruction begins:

2          In determining whether a person of ordinary skill

3  would combine the prior art references in the combinations

4  that Apple has suggested, it is extremely important to avoid

5  hindsight bias.

6          Whether a patent claim is invalid as obvious, must

7  be determined by considering whether a person of ordinary

8  skill in the art would have been motivated to combine the

9  references at the time of the priority date of the invention.

10          That's the first part of the instruction.

11          THE COURT:  I'll allow that through that part.  I'm

12  not going to include the part about the roadmap.  I guess

13  that's the second part of your instruction.

14          Is that where you're going next?

15          MR. PUCKETT:  Yes.

16          THE COURT:  Okay.  I'm not going to include that

17  part, but I will include this first part that you've just

18  tendered to the Court.

19          And, you know, on page --

20          MR. BELL:  Your Honor, if I can make one point?

21          THE COURT:  Sure.

22          MR. BELL:  If your Honor is inclined to adopt that,

23  we would request to remove the word "extremely."  That is

24  fairly inflammatory.

25          THE COURT:   Okay.  Yes.  I will remove the word

1   "extremely."

2           On Page 18 I say:  "Do not use hindsight; i.e.,

3   consider only what was known at the time of the invention."

4           So, what I don't want to do is insert this on 17

5   and then say it again on 18.  Do we need to strike this

6   sentence on 18, or is this the more appropriate place to put

7   your proposed instruction?

8           MR. PUCKETT:  So, we think that the instruction

9   that we have proposed is just two sentences; but we think

10  that it is a stronger statement of the importance even if the

11  word "extremely" is omitted.  And so we would prefer to use

12  the instruction that we proposed.

13          MR. FINDLAY:  Your Honor, may we make an alternate

14  suggestion?

15          THE COURT:  Yes.

16          MR. FINDLAY:  I think you've correctly pointed out

17  several times it is already here on Page 18.  We don't think

18  there is any reason to emphasize it more; but if you are

19  inclined to do that to some extent, we could just put:  "It

20  is important not to use hindsight," just add that.

21          We don't think we need it.  We would object.  We

22  think the model order is sufficient.  We think what you have

23  here is perfectly in line with the law, so that would be our

24  first proposal.  But if you are inclined to give them

25  something, I think that takes -- that would be as much as we

1   should do.

2            MR. PUCKETT:  We don't think this should be a weak

3   instruction, given the importance that this is given in the

4   law of obviousness.  I mean, all of the obviousness cases

5   start with the idea that you can go and scour prior art and

6   you can find all of the elements for almost everything.

7            THE COURT:  Okay.  We're going to insert the first

8   part of your proposed instruction minus the "extremely."  My

9   question is, where are we going to put it?  If we're

10  inserting it in this last paragraph on Page 17, where?

11           MR. PUCKETT:  I have no objection to inserting it

12  on 18 where the Court currently has a reference to hindsight.

13           THE COURT:  Okay.  And, so, we're going to replace

14  this sentence that says, "Do not use hindsight" with this

15  proposed instruction.  It seems awfully redundant to have

16  them both in there.  Is that right?

17           MR. PUCKETT:  Yes.  We would suggest replacing it,

18  yes.

19           THE COURT:  All right.

20           MR. PUCKETT:  And your Honor ruled on what was the

21  next sentence in my proposed instruction, which is the

22  roadmap.  You're not going to include that.

23           THE COURT:  Right.

24           MR. PUCKETT:  We did have a sentence at the end

25  that said:  "You should disregard any testimony on the issue

1  of obviousness if you believe the testimony is infected with

2  hindsight bias."

3  THE COURT:  I'm not going to include that, either.

4  What's next?

5  MR. PUCKETT:  So, your Honor, on 18 there is a list

6  of factors or ways in which a party can show a motivation to

7  combine.  And we don't have objection sort of as a matter of

8  law to any of these, so they haven't been objected to.  But

9  we don't think that most or perhaps any of them fit the facts

10 in terms of what has been actually offered into evidence by

11 Apple in this case.

12 I'm going to be corrected if I'm wrong; but I don't

13 recall testimony from Dr. Acampora, for example, talking

14 about predictable results and known elements in the prior

15 art.  We can kind of go through them one by one if you want

16 to kind of get a response; but, for example, I don't think

17 that one is supported by the facts in evidence.

18 THE COURT:  Response?

19 MR. BELL:  I think a general instruction and the

20 proposition of just sticking with the Court's instruction

21 based on the model rule.  We think the jury can decide

22 whether such factors as the following are relevant.

23 THE COURT:  All right.  I'm going to leave that as

24 it is.

25 What is next?

1          MR. PUCKETT:  Okay.  Your Honor, we're -- I'm at

2     Section 6.3 now, Improper Inventorship.  And the first thing

3     that I'll note is that the Court did not include our proposed

4     instruction with respect to corroboration.  It was Section

5     6.2, I believe, of the document that was filed this morning.

6          And so we would renew our request for the

7     Instruction 6.2 that is on Page 27 of the Docket No. 284-1

8     that was filed this morning.

9          Given the importance of the corroboration

10     requirement in the law of misjoinder or improper

11     inventorship, we think that it is very important to instruct

12     the jury on this concept.

13          The cases are pretty clear that you first have to

14     have some evidence, typically direct testimony from an

15     inventor who claims to be an inventor; and then that person's

16     testimony must be corroborated by clear and convincing

17     evidence.  This is a very strict requirement.  It requires

18     corroboration of a contribution to the complete conception of

19     at least one claim of the patent.

20          And, frankly, in most of the cases that are out

21     there in this area of law, the finding is that the proof

22     failed to meet the corroboration requirement; and, so, for

23     that reason we think it is particularly important that the

24     jury receive a corroboration instruction.

25          THE COURT:  All right.  Response?

1          MR. BELL:    Thank you, your Honor.   A couple of

2    things.   We think this is pretty important.   The

3    corroboration requirement is two-way.   It's not one-way.   And

4    the instruction as proposed now just suggests that Apple has

5    the burden to show corroboration for any oral testimony that

6    it is trying to use to invalidate the patent, and that is not

7    consistent with the law.   The law is such -- and one of the

8    cases I would point Your Honor to is the Colorado University

9    case where a named inventor's testimony was required to be

10   corroborated in a case challenging that named inventor as a

11   true inventor.

12          So we think our instruction and the Court's

13   proposed construction is consistent with that.   It is

14   included in line in the inventorship instruction itself, and

15   it fully takes into account the required corroboration.   And

16   it makes clear that it can take many forms, including, for

17   example, contemporaneous documents, circumstantial evidence,

18   and so on.

19          MR. PUCKETT:   Just very quickly, Your Honor, on the

20   issue of it being bilateral.   I think the law here is that

21   regardless of who the party is, if you are trying to claim

22   conception of an invention, that requires corroboration.

23          So that is true in the context of where someone is

24   trying to prove up an earlier priority date to a patent

25   application through proof of conception and diligent

1    reduction to practice.

2          And we wouldn't oppose that construction if we were

3    trying to do that in this case, but we're not.  And so the

4    reason that it is a bilateral -- I mean, that it is a

5    unilateral, one-way instruction here dealing with Apple's

6    proof is because Apple is the only one in this case that is

7    trying to prove up some element of conception on behalf of

8    some inventor, which we think the cases say always requires

9    corroboration.

10          MR. BELL:  Your Honor, one more word, if I may.

11          THE COURT:  Yes.

12          MR. BELL:  The Colorado University case is pretty

13   close and on point here, and it is a situation where other

14   parties -- two other parties were claiming to be

15   co-inventors.

16          There was a named inventor and the Court required

17   corroboration for that named inventor's oral testimony in

18   very similar circumstances that we have here, and ultimately

19   the Court found it was instantiated.  So we think the

20   corroboration requirement is very clearly bilateral even in

21   the present circumstances.

22          The question Apple is looking -- is whether

23   Mr. Sebire is the true inventor, which requires you look at

24   conception; and that ultimately if they are relying on only

25   uncorroborated testimony by Mr. Sebire, then that is not

1    sufficient.

2         MR. PUCKETT:  Well, the difference here is that

3    he's the named inventor, and it has been examined and issued

4    by the Patent Office, and so there is a presumption that the

5    named inventors have been named properly.

6         And so we're not trying to disturb, essentially,

7    the face of the patent through oral testimony, so I think

8    that -- I don't have the Colorado case in front of me; but it

9    sounds like from that description, that it is consistent with

10   what our understanding of the law is, which is when anyone

11   tries to prove up conception in a situation where they are

12   required to prove it up beyond the presumption that that was

13   issued with the proper inventorship, then corroboration is

14   required.  And it is a very, very important and a very strict

15   requirement.

16        THE COURT:  Go ahead.

17        MR. BELL:  And I would just say that that is

18   exactly what we have here is what happened in Colorado, so

19   very similar circumstances.  The Court required corroboration

20   even though it was the named inventor and even though it was

21   other parties challenging that named inventor to effectively

22   kick that named inventor off.

23        The Court still required corroboration, and the

24   proposed -- excuse me -- freestanding corroboration

25   instruction that we have here does not account for both

1    sides; whereas, I think the Court's proposed instruction in

2    line with the inventorship instruction itself exactly has the

3    bilateral nature appropriately.

4         THE COURT:   I'm looking at this proposed

5    instruction for the first time; so, bear with me.   Just let

6    me look at it.

7         To the extent that there really is a dispute that

8    needs to be corroborated with regard to Mr. Sebire's

9    testimony, I mean, could we not change the Plaintiff's

10   proposed instruction to:  "Oral testimony alone is

11   insufficient to prove inventorship by clear and convincing

12   evidence"?  That takes out Apple's inventorship.  We're

13   getting rid of derivation, so that's not going to be in there

14   anyway.

15        MR. PUCKETT:  So I don't think we have a burden to

16   prove anything on inventorship.  I mean, we have a

17   presumption, and this is their defense, and so they bear the

18   entire burden on this.  And so we don't think that it would

19   be appropriate to say that that testimony needs to be

20   corroborated.

21        It is presumed -- he is presumed to be the

22   accurately named inventor.  The presumption of validity

23   attaches in this context just like in any other validity

24   challenge, and so we don't think that we are trying to prove

25   up anything with -- and just to be clear, this requirement of

1   corroboration doesn't attach to an inventor or even alleged

2   inventor's testimony on everything that's involved in the

3   case, only specifically with respect to --

4           THE COURT:  Okay.  I'm going to insert this

5   instruction.  We're going to remove the "or derivation" from

6   the first sentence.  So it would just say:  "Oral testimony

7   alone is insufficient to prove Apple's inventorship defense

8   by clear and convincing evidence."

9           And I guess we're going to put that in place of

10  this sentence at the bottom of Page 20 where it says:  "Oral

11  testimony regarding inventorship."

12          MR. BELL:  Your Honor, if I may make one request?

13          THE COURT:  Sure.

14          MR. BELL:  If Your Honor is inclined to do that --

15  and it sounds like you are -- we would suggest that it remain

16  as a freestanding instruction rather than, in fact, in our

17  view the inventorship requirement.

18          THE COURT:  Okay.

19          MR. BELL:  So that we keep the sentence in there

20  that very clearly still requires corroboration in that

21  context as well.

22          THE COURT:  Well, okay.  Do you have any objection

23  to that?

24          MR. PUCKETT:  I actually don't, Your Honor.  I

25  think it would be appropriate to have the -- to introduce the

1    concept of corroboration requirement here at the end of this

2    instruction, and I think it would be appropriate for it to be

3    the next instruction.

4         THE COURT:  Okay.  So we are leaving 6.3 as it is.

5    And then the new 6.4, where derivation used to be, will be

6    this proposed 6.2 from your Document 284 at Page 27 with the

7    changes that I just indicated.  All right?

8         MR. PUCKETT:  Thank you, Your Honor.

9         THE COURT:  I'm doing that for the benefit of my

10   poor law clerk who has to fix all of this tonight.

11        What's next?

12        MR. PUCKETT:  Your Honor, I think that you've

13   largely adopted what we've requested in terms of the

14   instruction on inventorship, but one concept was omitted.

15   I'm going to look to find the specific language, but it

16   essentially goes to this idea that there is a presumption

17   that the inventorship had been named correctly.

18        And so I'm looking at the proposal, Docket

19   No. 284-1.  This is on Page 35, the last paragraph -- I'm

20   sorry -- the first sentence of that last paragraph of our

21   proposal:  "After a patent is examined and allowed by the

22   USPTO, it is presumed that the inventors have been correctly

23   named on the patent.  To prevail on its inventorship defense,

24   Apple must prove by clear and convincing that a natural

25   person."

1           So --

2                   THE REPORTER:  I'm sorry.  I'm sorry.

3                   MR. PUCKETT:  I'm sorry.

4                   THE REPORTER:  When you're reading, if you could

5       just read a little slower.

6                   MR. PUCKETT:  I will.

7                   THE REPORTER:  Thank you.

8                   MR. PUCKETT:  My apologies.

9                   THE REPORTER:  That's fine.

10                  MR. PUCKETT:  So a couple of concepts here, then.

11          First of all, the idea of the presumption and the

12      burden of proof.  And then also, there's some discussion

13      about this with respect to the Rule 50 motion, but we would

14      want to add in the instructions that only a natural person

15      can be an inventor and not a corporation.

16          We think that that concept is very important in

17      this case, given the testimony and this joint proposal that

18      has been referred to repeatedly as an Ericsson proposal in

19      testimony regarding what certain companies may or may not

20      have contributed to the invention.

21          We think that the case law is very clear on this.

22      There's a quote that's out there from the Federal Circuit.  I

23      don't have the case in the binder because it's 20 years old

24      or something; but, you know, very plainly the Federal Circuit

25      has said people invent -- corporations don't invent, people

do.   And the cases that we have cited that are more recent stand for the same proposition.

This is a -- it's actually a -- I believe it's been referred to as a constitutional matter because the U.S. Constitution authorizes that Congress to award the rights to patents to inventors which has been read to be natural persons.   And so this is black-letter law.   And we think that they cannot meet their burden of proof with evidence showing that a company essentially contributes to an invention because a company cannot be an inventor as a matter of law.

THE COURT:   This is, just for the record, another instance where what I used was the model order on inventorship from the Bar, so they don't include anything about a natural person.   But I am familiar with the case law that you're citing.

What -- is there an objection to that?

MR. BELL:   I apologize, Your Honor.   If counsel could point me to where that's in the last joint proposal. I'm just having trouble finding that language.

MR. PUCKETT:   Sure.   It is on Page 33, I believe -- I'm sorry -- 35.   So the joint proposal, Document 284-1, that was filed this morning.   It's on Page 35.   It's the last full paragraph of our proposal beginning, "After a patent examined and allowed by the USPTO."

So we would request insertion of the entirety of

1    that paragraph.

2           And I should say -- my apologies -- there is some

3    language in here that would be duplicative of what is already

4    in the instruction with respect to corroboration.  So our

5    request at this time is for insertion of the first three

6    sentences of that paragraph.  That would end with "that led

7    to one or more of the claims of the '820 patent."

8           MR. BELL:  If I could have just a moment, Your

9    Honor?

10          THE COURT:  Sure.

11          MR. BELL:  Okay.  A couple thoughts, Your Honor.

12          Thank you.

13          So I think our position would be we would object to

14   any changes, and we would prefer to go with the model rule.

15          To the extent Your Honor is inclined to do

16   otherwise, then we certainly must change the language that

17   says "a natural person other than."  The case law is clear

18   that it can be a group of people.  There is no requirement

19   that it be one.

20          And we would also suggest that it say "made a not

21   insignificant contribution" consistent with the Court's other

22   language.

23          And then if we're going to add this instruction, we

24   would also add -- request to add an instruction that says

25   "any single claim or element of a claim is sufficient to show

1   the inventorship," or something to that effect.  But I think

2   our preference would be just to stay as it is.

3              MR. PUCKETT:  So a couple things there.

4   The one thing that I want to object to would be language that

5   suggests that the contribution of an individual can be with

6   respect to less than all of the elements of a claim.  And my

7   understanding of this law -- I've been studying it very

8   carefully -- is that while a co-inventor does not have to him

9   or herself conceive of an entire -- an entire claim, that the

10  person must contribute to a joint effort that arrives at the

11  conception of an entire claim.

12             And so particularly if there were a suggestion that

13  contributing to an element --

14             THE COURT:  I'm going to stop you right there.  I'm

15  not including that because I already have language on Page 20

16  to that effect where it says:  "Persons may be joint or

17  co-inventors even if they do not alone conceive of the entire

18  invention, even if they do not make the same type or amount

19  of contribution, and even if they do not contribute to the

20  subject matter of each claim of the patent."

21             So let's -- let's focus on the disputed language

22  here so we can move this along.

23             MR. PUCKETT:  Okay.  Okay, Your Honor, in 7

24  point --

25             THE COURT:  No, wait.  What about this notion that

1    the objection to "that a natural person" needs to be -- can

2    be more than one?

3              MR. PUCKETT:  Yes.  So we don't -- if the request

4    is that -- that it has to be one or more natural persons that

5    are unnamed, we -- that's accurate.

6              THE COURT:  Is "one or more" fine with you?  If I'm

7    going to put this in here as "one or more" --

8              MR. BELL:  Yes, Your Honor.  We still have the

9    objection, but "one or more" would be appropriate.

10             THE COURT:  All right.  Let me see if I can read

11   this into the record.  We're going to add in:

12             After a patent is examined and allowed by the

13   United States Patent and Trademark Office, it is presumed

14   that the inventors have been correctly named on the patent.

15             To prevail on its inventorship defense, Apple must

16   prove by clear and convincing evidence that one or more

17   natural persons other than Benoist Sebire made a...

18             Do we have any objection to "a not insignificant

19   contribution"?  I think that was another point of contention.

20             MR. PUCKETT:  So I would -- I mean, I prefer to

21   avoid double negatives, so I think "a significant

22   contribution" is correct.  The fact is you can find cases

23   that state it both ways, to be fair.  So I just think it's

24   best to avoid double negatives, and I prefer "significant

25   contribution."

```
 1              THE COURT:  Is it a material difference for you?
 2              MR. BELL:  I think -- I think counsel is right.
 3   There are cases going both ways.  I think it's just what the
 4   Court's -- I believe the initial usage here was not
 5   insignificant, just for --
 6              THE COURT:  Okay.  So we'll keep it:  "Sebire made
 7   a significant contribution to the conception of the invention
 8   that led to one or more of the claims of the '820 patent."
 9              And we're going to add that where?
10              MR. PUCKETT:  I think we would be okay with just
11   adding it to the end of the current instruction, 6.3.
12              THE COURT:  All right.  What's next?
13              MR. PUCKETT:  And so my understanding is 6.4,
14   "derivation" will be coming out?
15              THE COURT:  Yes.  And we'll be adding the
16   corroboration language here.
17              MR. PUCKETT:  So, Your Honor, I'm at 7.4 now,
18   Page 23.  And the last full paragraph that begins, "A
19   reasonable royalty award must be based on the incremental
20   value."
21              And in the second sentence there it says:  "In
22   determining a reasonable royalty, you should consider all the
23   facts known and available to the parties at the time of the
24   infringement."
25              There were some competing instructions, perhaps, in
```

1   the old versions, and I think maybe all of this has sort of

2   fallen out, but it's this idea of whether and to what extent

3   the jurors can consider after-arising facts.  I think that

4   there are facts in evidence that are not controversial that

5   they are entitled to rely upon.

6          I don't like this phrase, but the cases talk about

7   this Book of Wisdom.  So the parties at the hypothetical

8   negotiation know about things that are going to happen in the

9   future such as, for example, the number of units that

10  ultimately become sold over the infringing period, licenses

11  that occur after the date of the hypothetical negotiation,

12  things like that.

13         And so we would propose just putting a sentence at

14  the end here that says that -- the -- that you may also

15  consider facts arising after the date of the hypothetical

16  negotiation to the extent they are of assistance in

17  determining the amount of a reasonable royalty.

18         THE COURT:  Response.

19         MR. BELL:  No objection.

20         THE COURT:  Okay.

21         MR. PUCKETT:  Your Honor, on Page 25 we object to

22  the inclusion of the paragraph at the bottom regarding the

23  LTE standard.  This, I believe, may be the subject of one of

24  our Rule 50 motions.  But under the case law, particularly

25  the Ericsson versus D-Link case, it imposes -- so, first of

1   all, I want to differentiate and want to address separately

2   the standard whether -- standard essential patents versus

3   FRAND obligations.

4           And so -- but in either of those contexts we

5   believe that D-Link very clearly says that it is Apple's

6   burden to establish the existence of a standard essential

7   patent, and we don't think that there has been evidence

8   presented in this case to support this instruction, and we'll

9   be presenting that in a Rule 50 motion.

10          In particular in this context, the Court in the

11  D-Link case was very careful and very explicit to point out

12  that they -- allegations that there are standard essential

13  patents that are out there, that that is insufficient to

14  support a finding -- an instruction or a finding that a

15  patent is standard essential.  And so we think that -- that

16  Apple just hasn't met its burden of proof on this.

17          THE COURT:  Response.

18          MR. BELL:  A couple things, Your Honor.  This

19  language, I think, is taken verbatim from their proposal.

20          And so on that basis alone I would object to

21  changing it.

22          And also, I would note that there is testimony

23  here.  Mr. Sebire testified that the claimed invention was in

24  the standard.  And so I think that instruction is fully

25  supported in the law and the facts.

 1          THE COURT:  I do believe you proposed this and --

 2          MR. PUCKETT:  Well, your Honor, we've -- there was

 3  a detailed FRAND instruction that was proposed.  We didn't

 4  put it in the instructions because the evidence and the proof

 5  was evolving; but now that we are at the close of the

 6  evidence the -- and as I mentioned I believe that we're going

 7  to submit a Rule 50 motion on this, but we believe that Apple

 8  just simply did not carry its burden on this point.

 9          THE COURT:  Okay.  So let me hear the remainder of

10  your objection besides they want to --

11          MR. BELL:  Yes, Your Honor.

12          There was testimony earlier in the case before they

13  made a proposal before today.  Mr. Sebire testified that the

14  claimed invention was incorporated into the standard.  I

15  think there is sufficient evidence for the jury to consider

16  that.  And my colleague would like to add --

17          THE COURT:  That's fine.  You can jump in,

18  Mr. Findlay, if you have something.

19          MR. FINDLAY:  Okay.  Just that he went so far I

20  think as to admit that he believed on -- that question was on

21  counsel that every phone or device in the world that

22  practiced LTE was infringing his patent and that made him

23  feel good about it.

24          So that's -- there's no question that in the record

25  there is ample evidence that the Plaintiffs believe that this

1   patent is essential to LTE.

2            THE COURT:   Response.

3            MR. PUCKETT:   There has been testimony around the

4   edges.   We think that language from the Ericsson versus

5   D-Link case imposes a higher standard than just some vague

6   allegations that, perhaps, something is standard essential.

7            We'll raise this as a Rule 50 motion and want to

8   preserve error by objecting to the instruction.

9            THE COURT:   Okay.   That's overruled.   We'll keep it

10  in there.

11           What's next?

12           MR. PUCKETT:   Your Honor, on the top of Page 26,

13  the instruction with respect to non-infringing alternatives.

14           First of all, we object to the inclusion of any

15  instructions on this because we don't believe that Apple has

16  met its burden to establish the existence of an alternative

17  that is non-infringing and was available at the relevant time

18  of the hypothetical negotiation and also acceptable because

19  it would achieve the technical benefits of the claimed

20  invention.

21           So as an initial matter, we object to any inclusion

22  of an instruction in this regard.   And to the extent that the

23  Court overrules our objection, is inclined to include the

24  instruction that then we would have suggested modifications.

25           THE COURT:   Okay.   Response.

1              MR. BELL:  One moment, Your Honor.

2              Your Honor, I believe there was testimony about the

3    ex-ante situation before the standard was adopted.  I believe

4    there was testimony from --

5              MR. FINDLAY:  There was testimony from Mr. Bakewell

6    about ex-ante and the proposal to do always a long BSR.  And

7    his discussions with Mr. Frappier, and I think, perhaps,

8    others.  So there definitely was testimony of that in the

9    record.

10             MR. PUCKETT:  And then the response there, Your

11   Honor, is that that proof would fail to meet Apple's burden

12   to show that the proposed non-infringing alternative was

13   acceptable in the sense that it achieved technical benefits

14   that are achieved by the claimed invention.

15             MR. BELL:  Your Honor -- I'm sorry.

16             THE COURT:  Go ahead.

17             MR. BELL:  I was going to say I believe Mr. Stattin

18   also testified as to the process of developing this standard

19   that there were multiple decision points that they could have

20   gone down, including on one of the slides -- I believe it was

21   Slide 11 of the presentation -- where there were two

22   alternatives for the BSR selection process.  One, which was

23   ultimately adopted, which was select long or short based on

24   the number of buffers; and the other one I believe was select

25   based on the amount of data in the buffers or meeting some

1     threshold, or something to that effect.

2            But, in any event, he definitely testified that

3     there were multiple paths they could have gone down.

4            THE COURT:  What's your proposed tendered

5     alternative instruction?

6            MR. PUCKETT:  So just to be clear for the record,

7     I'm tendering this instruction as an alternative but

8     preserving our objection that there should be no instruction

9     on -- on alternatives.

10           Our proposed instruction, if the Court is inclined

11    to submit one, is as follows:

12           In determining the amount of reasonable royalty

13    damages, you may consider whether acceptable non-infringing

14    alternatives to the patented -- patented invention were

15    available to Apple at the time of the hypothetical

16    negotiation.

17           Apple bears the burden of proof to show by a

18    preponderance of the evidence that the alleged alternative

19    was; one, non-infringing; two, available to Apple at the time

20    of the hypothetical negotiation; and, three, acceptable.

21           To be available, the alleged non-infringing

22    alternative must have been feasible and capable of being

23    implemented by Apple at the time of the hypothetical

24    negotiation.  To be acceptable, the alleged non-infringing

25    alternative must have been able to achieve the advantages of

1   the patented invention.

2           MR. BELL:  Your Honor, I would object to that

3   instruction.  I don't think it accounts for the ex-ante

4   situation we're talking about.  It talks about what was

5   available to Apple at the time of the alleged infringement;

6   whereas, a proper analysis also incorporates, as we talked

7   about, that earlier decision point where you could have

8   branched two different ways, back when the standard was

9   adopted in 2008 or 2009.

10          THE COURT:  Okay.  I'm going to leave the

11  instructions as they are.

12          What's next?

13          MR. PUCKETT:  Your Honor, I'm getting very close to

14  the end here.

15          So on the same page, 26, Instruction 7.5, this sort

16  of goes hand-in-hand with the argument that they did not

17  prove that these were standard essential patents.  But here

18  the -- we think that the Ericsson versus D-Link case imposes

19  a very strict requirement that they haven't met.

20          In particular, what Ericsson versus D-Link says is

21  that if there are FRAND obligations -- if the Court finds

22  that there are and the jury should be instructed that there

23  are, that the Court is supposed to instruct the jury on the

24  precise FRAND obligation that arise in the context of the

25  facts of this case.

1          So, for example, by virtue of contract or

2     participation in a standard setting body, an agreement to

3     abide by certain IPR contribution policies, we don't think

4     that a general instruction that merely encourages the jury to

5     consider FRAND obligations would be sufficient to meet the

6     requirements of Ericsson versus D-Link.

7          And what it highlights is the fact that Apple has

8     not offered proof that CCE, in particular, who, by the way,

9     did not participate in any standard setting body.  That was a

10    prior owner of the patent, and Apple has not offered proof or

11    argument that -- that CCE assumed any FRAND obligations, if

12    they existed at all.

13         And, certainly, Apple has not shown the particular

14    obligations that would arise under FRAND in the context of

15    this case and given the IPR policies of 3GPP at issue in this

16    case.

17         THE COURT:  Response.

18         MR. BELL:  Your Honor, I would just -- this is sort

19    of wrapped up, I think, with one of our few objections to the

20    jury instructions.  We would take the position that we would

21    prefer the entire proposed FRAND instructions, which also in

22    particular includes instructions on portioning between the

23    standard essential parts.

24         And the rest of the standard, we think that's a

25    fairly important part of the calculation that the jury is

1   required to only calculate the damages based on value of the

2   technology in the patent itself, not the broader standard or

3   anything else.

4          And so for that reason we would object to changing

5   from the larger one.

6          But to go to counsel's point, I think we did see

7   some testimony here, including from CCE's expert, on FRAND

8   calculations.  And so we think it makes sense to allow the

9   jury to weigh in on that.

10         THE COURT:  I'm looking at Apple's proposal in

11  Document 284, which is 7.5 on Page 48.  I'd be interested in

12  hearing your objections to this proposal.  I don't see a

13  counter-proposal from you-all, obviously because you don't

14  want to have one.  But what specifically about this proposed

15  instruction is objectionable?

16         MR. PUCKETT:  So a couple things, Your Honor.  And

17  I think in the way that this proposed instruction is written

18  is that it conflates the idea of a standards essential patent

19  versus a RAND or a FRAND patent.  The Ericsson versus D-Link

20  case very importantly treats them differently.

21         And, Your Honor, I believe, chose to leave in the

22  instruction that is on the bottom of Page 25 of the Court's

23  proposal regarding standard essential patents.  And that

24  the -- that the value of the invention versus the value of

25  being in the standard must be apportioned.  So that's in

1     there.  Okay?

2              So this additional instruction, 7.5 -- and I'm

3     sorry.  I'm going to answer Your Honor's question about their

4     proposed instruction.  Okay?  So our first is that it's

5     conflated, two issues.  But particularly with respect to just

6     the portions that deal with FRAND obligations, the objection

7     would be that they have not tailored the instruction to any

8     particular FRAND obligations that they have proven up, given

9     the facts of this case.

10             Ericsson versus D-Link is very clear about this:

11    In deciding whether to instruct the jury on -- I'm sorry.

12    That's the wrong...

13             Sorry.  Just give me one moment.

14             I don't want to hold up the Court, but I'm looking

15    for a pinpoint cite.  But, essentially, the Ericsson versus

16    D-Link case says that if you're going to do a FRAND

17    instruction, it has to be specifically tailored to the exact

18    requirements that are part of the IPR policy or whatever it

19    is that gives rise to these FRAND obligations.

20             Ericsson versus D-Link talks about how, you know,

21    every FRAND obligation is not the same.  You could -- there

22    could be a whole spectrum of, you know, contribute everything

23    that you have for free versus put it in a pool and get a lot

24    of royalties or -- I mean, FRAND and RAND obligations are all

25    over the map.  And -- and so the instruction has to be

 1    tailored to the facts of the case.

 2            And it's those details -- well, it's the existence

 3    of FRAND obligations and lack of proof on the details of what

 4    those obligations would be.  That is why we don't believe

 5    that any instruction is warranted at all.

 6            So just -- and here's my pinpoint.  So this is from

 7    the Ericsson versus D-Link case:  Rather than instruct the

 8    jury to consider, quote, Ericsson's obligation to license its

 9    technology on RAND terms, the Trial Court should have

10    instructed the jury about Ericsson's actual RAND obligations.

11            RAND terms vary from case to case.  A RAND

12    commitment limits the market value to what the patent owner

13    can reasonably charge for use of it, of the patented

14    technology.  The Court, therefore, must inform the jury what

15    commitments have been made and of its obligation, not just

16    option, to take those commitments into account when

17    determining a royalty award.

18            That's what's required.  And that level of detail

19    is not in the proposed instruction or the Court's instruction

20    because it hasn't been proven by Apple.

21            THE COURT:  Response.

22            MR. BELL:  Your Honor, Ms. LaHatte would like to

23    speak now.

24            THE COURT:  Okay.

25            MS. LaHATTE:  Good afternoon, Your Honor.

1              Just for a little context, I think it would be

2    helpful.   Our proposed instructions is almost verbatim for

3    the instruction that was given by Judge Gilstrap in the

4    recent Core Wireless case.

5              And in that case it involved the same ETSI IPR

6    policy.   And we've heard evidence from both damages experts

7    and Ms. Mewes about the considerations that would happen in

8    the licensing agreements; and, for example, the FRAND terms.

9    And we believe that this would be an appropriate instruction.

10             And Judge Gilstrap, he also was very wise.   He

11   actually quoted Ericsson verbatim throughout the instruction,

12   and I can give Your Honor pin cites if she would prefer.   But

13   the legal section is straight from Ericsson, so I --

14             THE COURT:   The legal section you proposed here?

15             MS. LaHATTE:   Yes, Your Honor.

16             MR. PUCKETT:   And obviously, I don't know anything

17   about what the facts of that case were.   I didn't participate

18   in that trial, and so I don't know what evidence came in.

19             And I would even suggest, perhaps, that where the

20   Federal Circuit is saying that you must tailor the

21   instruction to the specific facts of a particular case, that

22   that suggests that it's inappropriate to borrow an

23   instruction from another case that was developed on different

24   facts.

25             And so we maintain our objection that -- that Apple

1     has simply failed to meet its burden of proof and is not

2     entitled to any instruction on this issue.

3              THE COURT:  And it's your representation that the

4     facts in Judge Gilstrap's case involved the same standard and

5     standard setting body that is at issue in this case?

6              MS. LaHATTE:  Yes, Your Honor.

7              THE COURT:  All right.  I'm going to replace my

8     Section 7.5 with Apple's proposed Section 7.5 on Page 48 of

9     Docket No. 284.

10             What's next?

11             MR. PUCKETT:  Your Honor, with respect to your last

12    order incorporating 7.5, we would renew our objections as

13    previously stated, particularly with respect to the inclusion

14    of any language in here conflating the issues of FRAND

15    obligations with standard essential patents.

16             THE COURT:  Thank you.  Your objection is

17    overruled.

18             What's next?

19             We've got to move it along, guys.  We've been at

20    this a while.

21             MR. PUCKETT:  So, Your Honor, I think that's all

22    that I have with respect to the instructions.  I have just a

23    couple of quick comments on the verdict form if you want to

24    look at those now.

25             THE COURT:  Sure.

1          MR. PUCKETT:  So with respect to -- so, first of

2     all, we have no objection to the first question.

3          With regards to the second question, Your Honor

4     has -- has collapsed the invalidity questions into a single

5     question.  So we would make two requested modifications.

6          One is that we propose separating out the

7     inventorship issue into a separate question.

8          And -- and we also would urge the Court to include

9     a second question or a sub question, if you will, that is

10    similar to what Judge Mazzant requested in the Oasis case,

11    which is if the jury does find that there was a failure to

12    name a person who should have been named, that the jury state

13    who that person is.  And that's consistent with the

14    requirement that there must be a finding that a natural

15    person is -- would be a named inventor and -- and not a

16    corporation.

17         On the facts of that Oasis case, that was actually

18    very helpful to helping the Judge resolve the -- the

19    post-trial motions because it exposed some inconsistencies

20    in -- in the verdict that led them to ultimately set aside

21    the jury's verdict on that issue.

22         So we would request those two modifications to

23    Question 2.

24         THE COURT:  What's the legal basis for your request

25    for separate questions on the issues?

1             MR. PUCKETT:  So my -- is your question with

2     respect to separating out obviousness versus inventorship?

3             THE COURT:  Yes.

4             MR. PUCKETT:  So as you heard Apple say a moment

5     ago -- and I don't think we disagree -- is that whereas

6     obviousness is determined on a claim-by-claim basis, the

7     issue of inventorship is determined with respect to the

8     entirety of the patent.

9             And so we -- I want to specify that we're sort of

10    making these two requests hand-in-hand, right, separating it

11    out and then asking for the inventor.

12            If Your Honor is not inclined to give us the

13    sub-instruction, we're okay with collapsing these into a

14    single question and think that this could be handled,

15    perhaps, with an instruction.

16            But my legal basis for it is the first point would

17    be what I just stated, that there is a little bit of a

18    different -- of a difference in the way that the jury

19    determines claim-by-claim versus patent as a whole.

20            And then the other basis for it would be the Oasis

21    case where separating it out and asking the additional

22    question with respect to naming the inventor was very helpful

23    to the Court on resolving post-trial motions in that case.

24            THE COURT:  Okay.  I'll get a response on that in a

25    minute.

1            Do you have any other issues with respect to the

2   verdict form?

3            MR. PUCKETT:  So I think just one other, Your

4   Honor.  On the damages question, or Question 3, we think that

5   it is very important to include a date somewhere in one of

6   these two questions that reflects the cutoff of proof in

7   March of 2016.

8            And so we would propose inserting that in

9   Question B.  So the jury would first answer an amount in

10  dollars for damages.

11           And then Question B would state, "Was this monetary

12  award a running royalty," and we would propose inserting "for

13  Apple's infringement through March, 2016, or a lump sum," to

14  make it very clear that the jury's resolution of this issue

15  only adjudicates infringement up through that date for which

16  there was proof offered at trial.

17           THE COURT:  Any objection to that on the damages?

18           MR. BELL:  If Your Honor want to take that first or

19  the --

20           THE COURT:  Yeah.

21           MR. BELL:  I think we would object to that.

22           (Counsel confer.)

23           MR. BELL:  Sorry.  Thank you, your Honor.  I

24  apologize.

25           I think in principle we agree, with the following

```
1   caveat.  We would agree to put in the date as proposed so it

2   would read, "Was this monetary award a running royalty as

3   of" -- the date -- "or a lump sum."

4           And we would also ask to add the date to the next

5   part where it says "running royalty," colon.  It would say

6   "running royalty," and the date there as well, on the first

7   line.  And then leave the second line "lump sum."

8           MR. FINDLAY:  And then I think lump sum -- oh, "for

9   the life of the patent."  "Through the life of the patent,"

10  something to that effect, Your Honor.

11          MR. PUCKETT:  So I -- we don't object to that.

12          The only other thing is just to make clear, you

13  said put the date, and so we want it to say -- not just the

14  date but through March of 2016.  But yes, that --

15          THE COURT:  All right.  I'm changing Part B, Page 3

16  of the verdict form.  The question will read:  "Was this

17  monetary award a running royalty for Apple's infringement

18  through March, 2016, or a lump sum, for the life of the

19  patent?"

20          And then in the blanks below "running royalty

21  through March 2016, lump sum for the life of the patent."

22          Anything objectionable about that from anyone?

23          MR. BELL:  No objection, Your Honor.

24          MR. PUCKETT:  No objection.

25          THE COURT:  Great.  Okay.  Let's talk about
```

1    breaking out invalidity.  Or not.

2          MR. BELL:  So, Your Honor, we -- we don't object to

3    breaking it out.  We agree to a degree that because

4    inventorship is holistic, not claim-by-claim determination,

5    that that would be appropriate.  We would propose -- I

6    apologize, Your Honor.  One moment, please.

7          THE COURT:  Okay.  It would have been very helpful

8    if you-all had tendered me up something.  The most recent

9    verdict form that I had from you-all was August 24th.  I

10   believe that's the most recent one I could find, so I feel

11   like we could have worked out some of this or gotten a little

12   closer if we had started before right now.

13         But where are we?

14         MR. BELL:  Apologies, Your Honor.

15         I think we would -- I think we would propose -- we

16   submitted in the overnight version, which I understand

17   Your Honor did not have a chance to read, we submitted a

18   proposed question for the inventorship verdict form.  And we

19   would propose to go with that.

20         THE COURT:  Let me see if I can find it.

21         MR. BELL:  And I -- I'd be happy to read it for the

22   Court, if you would like.

23         THE COURT:  Okay.  So, I'm on Document 284,

24   Exhibit C, Question No. 3, which is on Page 3.  Is that

25   right?

1      MR. BELL:  That's correct, Your Honor.

2      THE COURT:  Okay.  Do you object to the request to

3  have a blank about the -- you know, asking for who the

4  inventor is?

5      MR. BELL:  Yes, we do, your Honor.  We think we've

6  already covered that.  It's not legally required, and it

7  would be actually legally erroneous to require that, we

8  believe.

9      THE COURT:  Do you have any -- do you have this

10 question that I'm looking at, this in front of you,

11 Defendants' proposed question?

12     MR. PUCKETT:  I will momentarily, Your Honor.

13     Yes, I do, your Honor.

14     THE COURT:  Okay.  Aside from the issue of whether

15 we're going to have the named person, do you have any

16 objection to the format of the question?

17     MR. PUCKETT:  We -- we don't object to the language

18 in our proposed instruction which was on Page 8 of 284-2.

19     We would request adding the language "how to prove

20 that patent is invalid."  And the language we would request

21 to add is "because the patent omits a person who should have

22 been named as an inventor."  We think that that instruction

23 appropriately reflects the facts of the case.

24     MR. BELL:  We would object to adding that language,

25 Your Honor.  The statute only requires that we show that

1    Mr. Sebire was not the true and sole inventor, not that we

2    show that there were others who were.

3                THE COURT:  All right.  I'm going to use Apple's

4    tendered question.

5                What about obviousness now?  Obviously, if we're

6    going to break these out, we've got to figure out how we're

7    going to format the obviousness question as well.  Can we not

8    just say:  Did Apple prove by clear and convincing evidence

9    that any of the asserted claims of the '820 patent are

10   invalid as obvious?  Keeping the Court's same question?

11               MR. BELL:  We have no objection to that, Your

12   Honor.

13               MR. PUCKETT:  I, likewise, have no objection.

14               THE COURT:  Okay.  I'll make that change.

15               What's next?

16               MR. PUCKETT:  So has Your Honor resolved the issue

17   of whether there will be a blank asking the jury to identify

18   the name of an individual?

19               THE COURT:  I am not going to require the jury to

20   name the individual.  I understand your objection.  It is

21   overruled.

22               MR. PUCKETT:  So with that, Your Honor, I think

23   that the only thing that is outstanding from our perspective

24   is our discussions over the proposal with respect to prior

25   art information that allegedly was not considered by the

1   examiner.

2              MR. BELL:  And we do have a proposal.  I would

3   defer Your Honor in whether you want us to confer --

4              THE COURT:  I'm going to go through your

5   objections.  We'll take another break, give you a minute to

6   see if you can come to an agreement.

7              MR. BELL:  I'm confident we can.

8              THE COURT:  Okay.  So starting over.  Great.

9              MR. BELL:  Well, Your Honor, I can report I think

10  we just have a handful, something like two or three

11  objections to walk through.  And we'll try to do that

12  quickly.

13             So if we could turn first to the willful

14  infringement, No. 5.4.  That's on page 15.

15             And this one, we understand Your Honor's already

16  ruled on this, but we would like to preserve our objection to

17  including it all.  We think it should be a question for the

18  Court, not the jury, but we understand Your Honor has already

19  ruled on that.

20             THE COURT:  Thank you.  Your objection is

21  overruled.

22             What's next?

23             MR. BELL:  Thank you, Your Honor.

24             Next, if I could direct the Court's attention to

25  Page 24 and 25.

 1          And these, Your Honor, are the list of

 2     Georgia-Pacific factors to consider.  In light of

 3     Your Honor's rulings, including instructions on standard

 4     essential patents and FRAND obligations, we think under

 5     Ericsson it would be appropriate to instruct the jury that

 6     insofar as they find standard essentiality or FRAND

 7     obligations, then they should disregard certain factors in

 8     the list.

 9          And those factors in particular would be Nos. 4 and

10     5 if there are FRAND obligations, and Nos. 8, 9, 10.  And we

11     would submit 11 if there are standard essentiality.  Those

12     factors, as Ericsson -- the case in Ericsson made clear,

13     don't really apply if you're in that world.  And we

14     understand that the jury may go either way on that.  And so

15     we think some sort of conditional instruction in order to

16     comply with Ericsson, which found error in including those

17     instructions.

18          So in order to account for that, some sort of

19     if-then statement.  We would propose something along the

20     following lines on Page 25.

21          So in the last full paragraph, second sentence

22     starts, "If you agree that," and we would propose inserting

23     somewhere, perhaps, before that, "If you agree that the

24     patent is essential to the LTE standard, you should not

25     consider Factors 8, 9, 10, and 11 above."

1            And then consistent with that, a similar

2    instruction in the FRAND instructions, something along the

3    lines of, "If you agree that the patent is FRAND encumbered,

4    or is licensed on FRAND terms, you should not consider

5    Factors 4 and 5 in Instruction 7.4," something to that effect

6    to account for Ericsson.

7            THE COURT:  Response.

8            MR. PUCKETT:  So theirs was the D-Link case.  It

9    has a general statement saying that the jury should be

10   instructed on factors, grouped set of factors that are proven

11   based on the evidence in the case.  But I'm not aware -- and

12   counsel can point to anything that supports this motion, but

13   I'm not aware of any language in this case or otherwise

14   suggesting that there are particular Georgia-Pacific factors

15   that as a matter of law are irrelevant once there is a

16   finding of either a standard essential patent or FRAND

17   obligations.  So -- so we would object to the instruction.

18           MR. BELL:  So, Your Honor, if I could point the

19   Court to the -- to the Ericsson case.  And it indicates,

20   quote:  Several of the Georgia-Pacific factors would at least

21   need to be adjusted for RAND-encumbered patents.

22           And then it lists also Factors 8, 9 and 10, which

23   the Court calls irrelevant because the standard requires the

24   use of the technology.

25           So those -- those circumstances are no different in

1    that case than in this case.  The LTE standard would require

2    the use of the technology insofar as the standard essential,

3    so the same rationale, I think, would apply to remove those

4    from the jury's consideration if they find it is SEP or

5    FRAND.

6            THE COURT:  So did the Court find in Ericsson that

7    it was error to instruct the jury as to those factors?

8            MR. BELL:  Yes, it did, Your Honor.

9            THE COURT:  Okay.  We're going to -- we're going to

10   take a break right now, ten minutes, so that you-all can talk

11   about prior art before the PTO.  And I'm going to give you a

12   chance to look at this Ericsson case and tell me if he's

13   right.

14           MR. PUCKETT:  Okay.

15           THE COURT:  Ten-minute break.

16           MR. BELL:  Thank you, Your Honor.

17           COURT SECURITY OFFICER:  All rise.

18           (Recess.)

19           THE COURT:  Okay.  What do you think about that

20   Ericsson law?

21           MR. PUCKETT:  So with regards to the Ericsson law,

22   Your Honor, we looked at the citation together.  The citation

23   I was shown by counsel was stating the principle that I

24   referred to, which is that you don't instruct the jury on

25   facts that don't fit the case.

1        But there is no language here that suggests that

2    there are certain Georgia-Pacific factors that must come out

3    as a matter of law.  In fact, Ericsson, I believe, suggests

4    exactly the opposite where -- and apologies now; I've flipped

5    to a different case -- but where it says very specifically

6    that there should not be a new list of Georgia-Pacific

7    factors that apply solely to circumstances where there are

8    FRAND obligations.

9        And, so, I would point the Court to that language

10   as suggestive that while on the facts of a particular case a

11   jury may decide to give more or less weight to certain

12   Georgia-Pacific factors based upon whether or not there are

13   FRAND obligations, that is not supported by this case, that

14   there are certain factors which the jury should be instructed

15   to disregard.

16       And, so, the pinpoint cite for that is at the top

17   of Page 1232 of the opinion.  The court said:  We believe it

18   unwise to create a new set of Georgia-Pacific-like factors

19   for all cases involving RAND-encumbered patents.  Although we

20   recognize the desire for bright-line rules and the need for

21   district courts to start somewhere, courts must consider the

22   facts of the record when instructing a jury and should avoid

23   reference to any particular damages formula.

24       MR. BELL:  Your Honor, I would point the Court to

25   Page 1230 of the Ericsson opinion where the Court walks

1     through and examines Factor 4, Factor 5, Factor 8, Factor 9,

2     Factor 10.  And all of those were, in the circumstances of

3     the case, irrelevant because there were standard essential

4     patents and FRAND obligations at issue and for no other

5     reason, at least that I can discern, than that.

6              Now, the Court goes on to say -- so, it says those

7     are irrelevant because the standard requires the use of the

8     technology.  So all of those dealt with how much does the

9     accused infringer use the technology and so on and so forth.

10             But those, of course, are mooted by

11    standard-essentiality.  And the Court goes on to say:  Other

12    factors besides those may need to be adapted on a

13    case-by-case basis.  But in this case the district court

14    erred by instructing the jury on multiple Georgia-Pacific

15    factors that are not relevant or are misleading on the record

16    before it, including at least Factors 4, 5, 8, 9, and 10.

17             So the record before it was the record of standard

18    essentiality and FRAND obligations.  So we would submit the

19    same considerations would at least warrant a conditional

20    instruction here to the jury.

21             MR. PUCKETT:  Well, this goes back into the problem

22    of we don't have proof in the record of what specific

23    requirements that any alleged FRAND obligations would even

24    impose.  And, so, for example, they are trying to knock out

25    the Georgia-Pacific factor that would allow the jury to

1    consider other licenses.

2         But under the particular 3GPP policies can Rand

3    obligations be set by reference to other licenses?  I don't

4    know.  And I don't believe that there is any proof in the

5    record that answers that question one way or the other.  I

6    don't -- I certainly don't think that Ericsson versus D-Link

7    supports the proposition as a matter of law that the Court

8    should start knocking out Georgia-Pacific factors,

9    particularly in the absence of any evidence specific from the

10   facts of this case, that something about the Rand obligations

11   or the IPR policies would even come close to counseling that

12   result.

13        THE COURT:  All right.  I'm not going to give a

14   conditional instruction.  What's next?

15        MR. PUCKETT:  I think, your Honor, that we are down

16   to a very small disagreement on whether the standard of proof

17   on the i4i-type instruction is preponderance of the evidence

18   or clear and convincing evidence.

19        And, so, if we can -- and I guess counsel, because

20   he has the paper -- but to read essentially our agreed

21   instruction into the record with the exception of this one

22   issue on the burden of proof, and then we can discuss that.

23        THE COURT:  Okay.

24        MR. BELL:  I'd be happy to do that, your Honor.

25        THE COURT:  Read it slowly, please.

1           MR. BELL:  Thank you, your Honor.

2           The proposal would read:  "In deciding the issue of

3    invalidity based on a prior art reference or other

4    information, you may take into account whether the prior art

5    or other information was, or was not, previously considered

6    by the Patent Office when it examined the '820 patent but

7    only if Apple showed" -- and here is the disputed part -- "by

8    clear and convincing evidence" -- end of disputed part --

9    "that the art or other information not considered by the

10   Patent Office was more relevant than the art or other

11   information that was considered by the Patent Office.  You

12   may decide how much weight to assign to this fact based on

13   the totality of the evidence and circumstances."

14          And we would submit, your Honor, that the part that

15   I highlighted, the "by clear and convincing evidence," is not

16   appropriate in this circumstance because what we're talking

17   about here is the consideration of all of the evidence, not

18   any particular piece of evidence.

19          THE COURT:  Response?

20          MR. PUCKETT:  And, so, I would say for the record

21   that CCE agrees to the proposed instruction as read, using

22   the clear and convincing evidence standard.

23          We went carefully through the cases during the

24   break to see whether the cases directly answer this question.

25   There's a little bit of ambiguity in the language, I'll say,

in the sense that the cases refer back to Apple's burden to

prove this and then Apple's general burden to prove

invalidity by clear and convincing evidence.  But, again,

none of the cases say one way or the other as to what the

standard of proof is on proving this underlying fact issue of

the materiality, if you will.

And, so, our position would be, I believe, that

when it comes to sort of all things related to invalidity,

that the party challenging the patent has the burden of proof

by clear and convincing evidence.  I can't think of any

circumstances -- and I'd ask counsel for an example -- of any

instance anywhere where some underlying fact issue related to

the Defendants' burden on invalidity can be proved by

anything less than clear and convincing evidence.

And, so, in the absence of any authority that I

think I've ever seen on that, it would be my assumption that

they have the burden on this by clear and convincing evidence

just like on everything else.

MR. BELL:  One note, your Honor.  To the extent

that it would apply on a piece-of-evidence-by-piece-of-

evidence basis, we would point out that you don't, in other

circumstances involving invalidity, go by the type of

evidence involved and say this requires clear and convincing

evidence, this requires clear -- so, my point is it would be

subsumed within the larger burden; and in any event, we don't

1  need to call it out again here.

2          THE COURT:  I'm going to include the construction

3  without the clear and convincing standard and otherwise

4  agree.

5          Will you-all refresh my memory on what section of

6  the charge this is supposed to go in?

7          MR. BELL:  Yes, your Honor.  I believe it is 6.1.

8          MR. PUCKETT:  That's correct, your Honor.

9          THE COURT:  All right.  And, so, we are basically

10  replacing the second full paragraph in 6.1; is that right?

11          MR. PUCKETT:  That was my understanding, Your

12  Honor, yes.

13          THE COURT:  Is that Defendants' understanding as

14  well?

15          MR. BELL:  Apologies, your Honor.

16          MR. PUCKETT:  With the caveat, your Honor, that we

17  did agree to the first sentence.

18          THE COURT:  Okay.

19          MR. BELL:  I think Defendant would ask to -- and I

20  apologize if I didn't recall what we were discussing.  But I

21  think we would want to include the final sentence as well,

22  "prior art that differs from the prior art or other

23  information considered by the Patent Office."

24          I mean, Counsel, pardon me if I'm wrong.  I don't

25  know if we included that in the discussion.

1          MR. PUCKETT:  So, my read of the i4i case is that,

2    while it does say that this evidence may make it easier for

3    Apple to carry its burden, it also may not; and it is

4    ultimately at the discretion of the jury, which is what the

5    last sentence in the agreed proposal states, is that the jury

6    has the discretion to determine what weight to afford the

7    evidence.

8          MR. BELL:  We would just preserve our objection to

9    not including that last sentence if your Honor is inclined

10   to.

11         THE COURT:  Okay.  I'm not going to include that.

12   So we're going to include the first sentence of the second

13   paragraph starting with "even though the Patent Office"; and

14   then after that we will drop in the agreed portion of the

15   proposed written instruction without the "clear and

16   convincing" bracket.

17         MR. BELL:  Thank you, your Honor.  I think we just

18   have two more small things.

19         THE COURT:  Okay.

20         MR. BELL:  Returning for a moment to the

21   Instruction 7.4, the Georgia-Pacific factors, directing the

22   Court's attention to Factor 11 which carries over from Page

23   24 to 25, we would request that the Court -- and this may

24   have just been a typo -- but to track the language of

25   Factor 11 from Georgia-Pacific, we would ask at the top of

1    Page 25 that the Court include the following phrase.  So

2    where it currently reads "evidence probative of that use," we

3    would ask that it say "evidence probative of the value of

4    that use."  And that tracks exactly the Georgia-Pacific

5    Factor 11.

6              MR. PUCKETT:  No objection.

7              THE COURT:  Okay.  We will make that change.

8              MR. BELL:  And then one final thing, your Honor.

9              In Instruction 5.3 on Page 14 -- this is returning

10   to the instruction we addressed earlier, the discussion we

11   had when counsel was raising objections.  And as I recall, in

12   the middle paragraph, the full paragraph that starts, "In

13   considering whether Apple has induced infringement,"

14   et cetera, et cetera, there was a sentence struck later on

15   that starts, "You may not assume that merely because Apple

16   did not obtain an opinion of counsel" and we reached

17   agreement not to discuss that further in the case.

18             Concomitantly, we would also request that we strike

19   the part of the first sentence that says "including whether

20   or not Apple obtained legal counsel."  The two sort of go

21   hand in hand.

22             THE COURT:  Ah.  I see.  Any objection to that?

23             MR. PUCKETT:  Just so that I understand, so,

24   essentially the entirety of those two sentences involving

25   opinion of counsel would be struck?

```
1              THE COURT:  They are already gone.  But in the
2    first sentence it says, "In considering whether Apple has
3    induced infringement, you may consider all circumstances,
4    including whether or not Apple obtained legal counsel."  And
5    that's what he's moving to strike, correct?
6              MR. BELL:  Correct, your Honor.
7              MR. PUCKETT:  That's correct.  No objection.
8              THE COURT:  Okay.  I'll remove that as well.
9              And, so, just to make that sentence read correctly,
10   the sentence is going say, "You may consider all of the
11   circumstances, including whether or not Apple knew of the
12   patent."  Does anyone -- otherwise, it just doesn't make much
13   sense.
14             MR. PUCKETT:  I agree.  No objection.
15             MR. BELL:  No objection, your Honor.
16             THE COURT:  Okay.  Anything else?
17             MR. BELL:  We have no more objections, your Honor.
18   Thank you.
19             THE COURT:  Well, all right.  Thank you everyone.
20   Ms. Mehta is going to make these changes, and she is going to
21   e-mail you-all copies of the charge and the verdict form
22   tonight, so you can have them to prepare for closing
23   tomorrow.
24             And, so, goodness, if we happen to get a typo in
25   there, you will let us know in the morning as well.  Right?
```

1   Thank you for your hard work.  We will be adjourned.

2            (Court adjourned until September 13, 2016.)

3

4

5                        CERTIFICATION

6

7            IT IS HEREBY CERTIFIED that the foregoing is a

8   true and correct transcript from the stenographic notes of

9   the proceedings in the above-entitled matter to the best of

10  our abilities.

11

12

13  /s/_____
    CHRISTINA BICKHAM, CRR, RMR          September 13, 2016
14  Official Court Reporter

15

16  /s/_____
    SHEA SLOAN, CSR, RPR
17  Official Court Reporter

18

19

20

21

22

23

24

25